UNITED STATES DEPARTMENT OF JUSTICE
OFFICE OF THE UNITED STATES TRUSTEE
ANDREW R. VARA
UNITED STATES TRUSTEE, REGION 3
Benjamin Teich, Esq.
One Newark Center, Suite 2100
Newark, NJ  07102
Telephone: (973) 645-3014
Fax: (973) 645-5993
Benjamin.Teich@usdoj.gov

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

_____
In re:
:
:  Case No. 19-13273 (VFP)
:
Immune Pharmaceuticals, Inc., *et. al.*,
:
:  Chapter 11
:
:  The Honorable Vincent F. Papalia
Debtors.[1]
:
_____:  Hearing Date: March 29, 2019 at 10:00 a.m.

**LIMITED OBJECTION OF THE ACTING UNITED STATES TRUSTEE TO DEBTOR'S MOTION FOR AN ORDER AUTHORIZING THE DEBTOR TO SELL THE CEPLENE® PRODUCT LINE PURUSANT TO 11 U.S.C. §§ 363(b) AND (f), FREE AND CLEAR OF ALL LIENS, CLAIMS, AND INTERESTS; AND ASSUME AND ASSIGN VARIOUS EXECUTORY CONTRACTS PURUSUANT TO 11 U.S.C. § 365(a)**

The Acting United States Trustee objects to the Debtor's Motion for an Order Authorizing the Debtor to sell the Ceplene® product line pursuant to 11 U.S.C. §§ 363(b) and (f), free and clear of all liens, claims, and interests; and assume and assign various executory contracts pursuant to 11 U.S.C. § 365(a) (Docket Entry 46) (the "Sale Motion").  In support of his Limited Objection, the Acting United States Trustee for Region 3 ("U.S. Trustee"), by and through his undersigned counsel, states as follows:

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: Immune Pharmaceuticals, Inc. (1431); Immune Pharmaceuticals, Ltd.; Cytovia, Inc. (7805); Immune Oncology Pharmaceuticals, Inc.; Maxim Pharmaceuticals, Inc. (9983); and Immune Pharmaceuticals USA Corp. (9630).

1. This Court has jurisdiction to hear and determine this Limited Objection.

2. Pursuant to 28 U.S.C. § 586(a)(3), the U.S. Trustee is charged with administrative oversight of the bankruptcy system in this District. Such oversight is part of the U.S. Trustee's overarching responsibility to enforce the laws as written by Congress and interpreted by the courts. *See United States Trustee v. Columbia Gas Systems, Inc. (In re Columbia Gas Systems, Inc.),* 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that U.S. Trustee has "public interest standing" under 11 U.S.C. § 307 which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

3. Under 11 U.S.C. § 307, the U.S. Trustee has standing to be heard on the issues raised by this Limited Objection.

## BACKGROUND AND RELEVANT FACTS

4. On February 17, 2019 (the "Petition Date"), the lead Debtor (Immune Pharmaceuticals, Inc.) filed a voluntary Chapter 11 petition. *See* Docket Entry 1.

5. The affiliated Debtors filed petitions on the following dates: Immune Pharmaceuticals, Ltd. on February 22, 2019 (docket entry 1 in Case No. 19-13710); Cytovia, Inc. on February 26, 2019 (docket entry 1 in Case No. 19-13896); Immune Oncology Pharmaceuticals, Inc. on February 26, 2019 (docket entry 1 in Case No. 19-13989); Maxim Pharmaceuticals, Inc. on February 26, 2019 (docket entry 1 in Case No. 19-13899); and Immune Pharmaceuticals USA Corp. on February 26, 2019 (docket entry 1 in Case No. 19-13902).

6. The U. S. Trustee appointed an Official Committee of Unsecured Creditors on March 15, 2019. *See* Docket Entry 49.

7. The Sale Motion was filed on the same day, March 15, 2019. *See* Docket Entry 46.

8. The Sale Motion seeks to allow the Debtor to sell all of its interests in Ceplene®, a leukemia drug, to Vector Pharmaceuticals ("Vector") via an Asset Purchase Agreement ("APA"). The Sale Motion provides that Ceplene and related assets, the "Ceplene Assets"[2] will be sold to Vector free and clear of all liens, except for certain liens that are being assumed by Vector – the "Assumed Ceplene Liabilities."[3]

9. The Assumed Ceplene Liabilities include a claim of $226,109 owed to Daniel Tepper, a former director of the Debtors.

10. Daniel Tepper has also signed the APA on behalf of Vector.

11. The Sale Motion and accompanying factual certification of Gary Rabin ("Rabin Certification") disclose that the Debtors have been soliciting purchasers for the Ceplene Assets since May, 2018.

12. The Rabin Certification also disclose that the Debtor is providing notice of the Sale Motion to all prior entities the Debtor solicited regarding the sale of the Ceplene Assets.

13. The APA contains a contingency that allows for Vector to abandon the purchase of the Ceplene Assets if Vector cannot come to an agreement with Meda Pharmaceuticals as to the cure amount due under the "Meda Asset Purchase Agreement" – which is the agreement by which the Debtors obtained their interests in the Ceplene Assets.

14. The APA also contains a clause that allows Vector to designate additional contracts to be assumed and assigned. It is unclear if this will trigger additional compensation to be owed to the Debtors and if so, how much.

---

[2] Defined by the APA
[3] Defined by the APA

3

15. The APA further contains a clause that Vector has the right in its sole discretion to elect not to take assignment of certain licenses. It is unclear whether the purchase price will be impacted if Vector elects not to take assignment of those licenses.

16. The APA provides that if the Ceplene Assets are sold to a party other than Vector, then the Debtors will be responsible to reimburse Vector for reasonable expenses incurred in pursuing consummation of the APA. This expense reimbursement is capped at $250,000 by the APA.

17. The U.S. Trustee objects to the Sale Motion on the following basis: (a) insufficient information has been provided about the marketing of the Ceplene Assets; (b) this transaction should be examined using heightened scrutiny because Daniel Tepper, who signed the APA on behalf of Vector, is an insider of the Debtor; and (c) if the Ceplene Assets are sold to a party other than Vector and Vector seeks an expense reimbursement, such reimbursement must be on application to the this Court with an opportunity for interested parties to object to the reasonableness of the reimbursement sought.

## APPLICABLE LAW AND ANALYSIS

*Insufficient Information*

18. Within the Third Circuit, sales of assets outside of the ordinary course of business pursuant to 11 U.S.C. § 363(b) are governed by *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3d Cir. 1986). The Abbotts Dairies decision provides that "when a bankruptcy court authorizes a sale of assets pursuant to section 363(b)(1), it is required to make a finding with respect to the 'good faith' of the purchaser." *See id*. at 149-50.

19. The Third Circuit has stated that a "good faith" purchaser is "one who purchases in 'good faith' and for 'value.'" *See id*. at 147.

20. Part of showing the necessity of a section 363 transaction includes showing appropriate marketing of the assets, as part of the exercise of the debtor-in-possession's fiduciary duties to creditors. Marketing efforts must be designed to maximize the returns to the estate. *See In re WPRV-TV, Inc.*, 983 F.2d 336, 342 (1st Cir. 1983).

21. The Sale Motion does not contain sufficient proof of fair value and good faith.

22. The U.S. Trustee would like the opportunity to question any witnesses provided by the Debtors in support of the Sale Motion.

23. Unless the Debtors can make a full showing under *Abbotts Dairies*, the Sale Motion should be denied.

### *The Proposed Sale Should be Subjected to Heightened Scrutiny*

24. Daniel Tepper is a former director of the Debtors and therefore a former "insider" of the Debtors pursuant to 11 U.S.C. § 101(31)(B).

25. Mr. Tepper is a key player in this proposed sale as he has signed the APA on behalf of Vector.

26. Insider transactions require heightened scrutiny. *In re Summit Global Logistics, Inc.*, 2008 WL 819934 * 9 (Bankr. D.N.J. March 26, 2008); *In re Univ. Heights Ass'n,* 2007 Bankr. LEXIS 2000, at * 13 (Bankr. N.D.N.Y. January 22, 2007) (recognizing the insider nature of a transaction requires heightened scrutiny).

27. The U.S. Trustee submits that the Sale Motion must be subjected to heighted scrutiny due to Mr. Tepper's key role in the sale and his former role as a director of the Debtor.

### *Clarification of the Expense Reimbursement*

28. The APA provides for an expense reimbursement to Vector of up to $250,000 if the Ceplene Assets are sold to another entity.

29.     The U.S. Trustee is requesting that this Court require any such reimbursement of expenses to be done via an application with an opportunity for interested parties to object to the reasonableness of the reimbursement.

## CONCLUSION

30.     For the foregoing reasons, the Court should not approve the Sale Motion unless the Court finds, using heightened scrutiny and with additional information provided at the hearing, that this sale meets the requirements of 11 U.S.C. § 363 and *Abbotts Dairies*.

    Respectfully submitted,

    ANDREW R. VARA
    ACTING STATES TRUSTEE
    REGION 3

    By:     */s/Benjamin Teich*
          Benjamin Teich
          Trial Attorney

Dated: March 25, 2019