| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY<br>**Caption in compliance with D.N.J. LBR 9004-1(b)**<br><br>**NORRIS McLAUGHLIN, P.A.**<br>Morris S. Bauer<br>Melissa A. Pena<br>400 Crossing Boulevard, 8th Floor<br>P.O. Box 5933<br>Bridgewater, New Jersey 08807<br>(908) 722-0700<br>msbauer@norris-law.com<br>mapena@norris-law.com<br>Counsel for the Debtors/Debtors-in-Possession | |
| In re:<br><br>IMMUNE PHARMACEUTICALS INC, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 19-13273 (VFP)<br><br>Hon. Vincent F. Papalia |

**CERTIFICATION OF GARY RABIN IN SUPPORT OF DEBTORS' MOTION FOR ENTRY OF AN ORDER EXTENDING THE PERIOD OF TIME WITHIN WHICH EXCLUSIVELY THE DEBTORS ARE PERMITTED TO FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF PURSUANT TO 11 U.S.C. § 1121(d)**

I, Gary Rabin, of full age, hereby certify as follows:

1.  I am the Interim President and Interim Chief Executive Officer of the debtor, Immune Pharmaceuticals Inc. (the "Immune Debtor") and was appointed to that position on March 6, 2019. I have over twenty years of specialized expertise in advising companies on obtaining financing, in and out of court restructurings, and M&A transactions in a variety of roles including as an investment banker, hedge fund manager, operating executive, public company CEO and crisis manager. I have significant experience in the pharmaceutical industry. I have been an

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: Immune Pharmaceuticals, Inc. (1431); Immune Pharmaceuticals, Ltd.; Cytovia, Inc. (7805); Immune Oncology Pharmaceuticals, Inc.; Maxim Pharmaceuticals, Inc. (9983); and Immune Pharmaceuticals USA Corp. (9630).

investor and executive involved in the biotechnology industry since 2010. I was the Chairman and CEO of Advanced Cell Technology, a publicly traded stem cell therapy company from 2010 to 2014.

2. Prior to my appointment as Interim President and Interim Chief Executive Officer, I served as a financial advisor and consultant for the Immune Debtor. As such, I have knowledge of the facts set forth herein based on my own personal knowledge and/or my review of the Immune Debtor's books and records, which are maintained in the ordinary course of its business.

3. I submit this Certification in support of the Debtors' Motion for Entry of an Order extending the period of time within which exclusively the Debtors are permitted to file a chapter 11 plan and solicit acceptances thereof pursuant to 11 U.S.C. § 1121(d) (the "Motion").

## GENERAL BACKGROUND

4. The factual background relating to the Debtors' commencement of these Chapter 11 Cases is set forth in the Declaration of Anthony ("Tony") Fiorino in Support of First Day Motions filed on February 27, 2019 [Doc. No. 18] and incorporated herein.

5. On February 17, 2019 (the "Petition Date"), the Immune Debtor filed a voluntary petition for relief under the Bankruptcy Code.

6. Subsequent to the Petition Date, certain of the Immune Debtor's affiliates filed their own Chapter 11 bankruptcy cases. On February 22, 2019, Immune Pharmaceuticals, Ltd. ("Ltd.") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code and on February 26, 2019, Cytovia, Inc., Maxim Pharmaceuticals, Inc., Immune Pharmaceuticals USA Corp., and Immune Oncology Pharmaceuticals Inc. (collectively referred to with Ltd. as the "Debtor Subsidiaries" and with the Immune Debtor as the "Debtors") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

7. The Debtors continue to operate their businesses and manage their property as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. An official Committee of Unsecured Creditors (the "Committee") has been appointed. The Committee is represented by Porzio, Bromberg & Newman, P.C. ("Porzio").

8. All of the Debtors are Delaware corporations with a principal place of business located at 1 Bridge Plaza North, Suite 270, Fort Lee, New Jersey 07024, except for Ltd., which is an Israeli corporation with a principal place of business at Hillel Street #24, Jerusalem, Israel 94581. Ltd. maintains assets in the United States. Gary Rabin is the current Interim CEO and Interim President of the Debtors having succeeded to the Debtors' prior Interim CEO and Interim President, Anthony Fiorino, who resigned from the position effective March 6, 2019.

9. The Debtors are a clinical stage biopharmaceutical company specializing in the development of novel targeted therapeutic agents in the fields of inflammation, dermatology and oncology. As of September 30, 2018, the Debtors did not have any self-developed or licensed products that were approved for sale by the United States Food and Drug Administration.

10. On February 8, 2019, Discover Growth Fund, LLC ("Discover") delivered to the Immune Debtor a "Notice of Default and Notice of Sale of Collateral" (the "Notice"). In the Notice, Discover alleged that the Immune Debtor was in default of the terms of a securities purchase agreement dated October 9, 2018 (the "October 2018 Agreement"), and Discover purported to declare all obligations under the October 2018 Agreement to be immediately due and payable and alleged that the amount due and payable was $12.1 million. Discover provided subsequent notice to the Immune Debtor on February 14, 2019 which alleged that the amount due and payable was $14.85 million. Discover scheduled a foreclosure sale of its collateral for 10:00 a.m. on February 18, 2019, a Federal holiday, in St. Thomas, U.S. Virgin Islands.

11. Subsequent to receiving the Notice, the Immune Debtor reached out to Discover to attempt to negotiate a settlement of Discover's claims. The Immune Debtor and Discover were unable to reach a settlement.

12. Based on the foregoing, the Debtors made the difficult decision to seek the protections of Chapter 11 in this Court in order to prevent the sale of the Debtors' assets via the private sale of Discover, while the Debtors continue to pursue and negotiate the sale of Ceplene and the anti-eotaxin antibody with third-party purchasers.

13. On February 25, 2019, Discover filed its Motion for Relief from Stay (the "Stay Relief Motion") (Docket No. 11). In connection with the Stay Relief Motion, on March 8, 2019, the Debtors served Discover with a subpoena requesting documents related to the Stay Relief Motion.

14. On March 5, 2019, Discover served the Debtors with a Rule 2004 Subpoena which required the Debtors to prepare a substantial document production for Discover. The Debtors provided their counsel with over 100,000 documents that were potentially responsive to the Rule 2004 Subpoena. The majority of those documents were reviewed prior to responding to the Rule 2004 Subpoena.

15. On March 15, 2019, the Debtors filed a motion to sell the Ceplene® product line (as defined in the Sale Motion) (the "Sale Motion") (Docket No. 46). The sale hearing was originally scheduled for March 29, 2019 and has since been continued to May 29, 2019. Due to the adjourned hearing dates, the sale of the Ceplene® Product Line has not yet closed.

16. On March 19, 2019, both the Debtors and the Committee filed objections to the Stay Relief Motion. A significant amount of time has been expended addressing the Stay Relief Motion and the discovery issues relating to it.

17. Just recently, the Debtors, the Committee, Discover and the Israeli representative in the Israeli stay proceeding in Israel for Ltd. have begun discussions regarding issues central to the resolution of these cases, including the disposition of all of the Debtors' assets, and possible allocation of sale proceeds to the various creditor constituencies.

18. The Debtors have also been required to spend an inordinate amount of time addressing objections to the retention of their investment banker and financial advisor/interim President/interim CEO.

19. I have been advised that the Bankruptcy Code provides the Debtors an exclusive right to file a chapter 11 plan and solicit acceptances thereof. I have been further advised that the Bankruptcy Code provides a deadline for these exclusive rights of 120 days from the petition date for filing the plan and 180 days from the petition date to solicit acceptances for such plan. I am also advised that these deadlines can be extended for cause.

20. Based on the above, the exclusive period for the Debtors to file their plans expires on June 17, 2019, and the exclusive period to solicit acceptances expires on August 16, 2019.

21. By the within Motion, the Debtors request that the exclusivity deadlines be extended by 90 days to September 15, 2019 for the filing of a plan and to November 14, 2019 for soliciting acceptances thereon.

22. The Debtors have used the initial 120 days to (i) become acclimated to the chapter 11 process; (ii) stabilize their operations and prevent the sale of their assets via a foreclosure sale; (iii) proceed with a sale process of Ceplene (which became more difficult than expected and was unexpectedly delayed), and begin the sale process of the anti-eotaxin antibody; (iv) address unexpected complexities relating to the Stay Relief Motion, retention issues and the Israeli stay proceeding; and (v) work with the Committee to resolve major issues in these cases.

23. At this juncture, the Debtors are in the process of moving the Ceplene sale to the finish line, and are beginning the process of selling the anti-eotaxin antibody. In addition, the Debtors are exploring options regarding the disposition of Amikat and Nanocyclo, two other product lines, addressing issues with respect to the Israeli stay proceeding involving Ltd. and also evaluating the possibility of utilizing its public shell in the future.

24. Further, the Debtors have not begun the process of analyzing the proofs of claim that have been filed in this case. Notably, the bar date for filing proofs of claim is July 16, 2019, and thus, more proofs of claim may be filed.

25. In light of these facts, the Debtors are requesting a 90-day extension of the exclusivity periods to September 15, 2019 for the filing of the plan and to November 14, 2019 for soliciting acceptances thereon.

26. Creditors are not prejudiced by the extension. The Debtors currently have no cash with which to pay any of its claims, and thus are currently unable to propose a plan. The Debtors anticipate that after the sale of Ceplene and the anti-eotaxin, the Debtors will have a better idea of their financial situations in order to propose a plan.

27. The Debtors submit that it is appropriate under the circumstances, and in the best interests of the estates, creditors and other parties-in-interest to extend the exclusivity periods as set forth above.

I certify that the foregoing statements made by me are true. I am aware that if any such statements are willfully false, I am subject to punishment.

Dated: May 21, 2019

/s/ Gary Rabin
Gary Rabin