UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
**Caption in Compliance with D.N.J. LBR 9004-1(b)**

Dale E. Barney, Esq.
David N. Crapo, Esq.
GIBBONS P.C.
One Gateway Center
Newark, New Jersey 07102
Telephone: (973) 596-4500
Facsimile: (973) 596-0545
E-mail: dbarney@gibbonslaw.com
       dcrapo@gibbonslaw.com
*Counsel for Discover Growth Fund, LLC*

**In re:**

IMMUNE PHARMACEUTICALS, INC., *et al.*,[1]

**Debtor.**

Chapter 11

Case No. 19-13273 (VFP)

(Jointly Administered)

**Hearing Date: July 2, 2019 at 10:00 a.m. ET**

**Objection Deadline: June 25, 2019 at 4:00 p.m. ET**

**REPLY TO: (I) THE DEBTORS' OPPOSITION TO MOTION
OF DISCOVER GROWTH FUND, LLC TO CONVERT PURSUANT
TO 11 U.S.C. § 1112(b), (II) OBJECTION OF THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS AND (III) SHAREHOLDERS'S
OBJECTIONS TO MOTION OF DISCOVER GROWTH FUND, LLC
<u>TO CONVERT PURSUANT TO 11 U.S.C. § 1112(b)</u>**

Discover Growth Fund, LLC ("**Discover**"), the senior secured lender to the above-captioned debtors and debtors in possession (collectively, the "Debtors") in these chapter 11 bankruptcy cases (collectively, the "**Chapter 11 Cases**"), by and through its undersigned

---

[1] The "**Debtor**s" in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: Immune Pharmaceutical, Inc. (1431); Immune Pharmaceuticals, Ltd.; Cytovia, Inc. (7805); Immune Oncology Pharmaceuticals, Inc.; Maxim Pharmaceuticals, Inc. (9983); and Immune Pharmaceuticals USA Corp. (9630). The lead debtor is Immune Pharmaceuticals, Inc. ("**IPI**").

-1-

counsel, hereby submits this reply to: (i) the Debtors' Opposition to Motion of Discovery Growth Fund, LLC to Convert Pursuant to 11 U.S.C. § 1112(b) ("Debtors' Objection"); (ii) the Objection of the Official Committee of Unsecured Creditors of the Motion of Discovery Growth Fund, LLC to Convert Pursuant to 11 U.S.C. § 1112(b) ("Committee Objection"); and (iii) objections to said motion filed by certain shareholders of Debtors ("Shareholder Objections", and together with the Debtors' and Committee Objections, the "Objections"), respectfully represents the following:

## PROCEDURAL BACKGROUND

1. Discover filed its Motion of Discovery Growth Fund, LLC to Convert Pursuant to 11 U.S.C. § 1112(b) ("Motion") on June 5, 2019 [Doc 184].

2. Debtors filed the Debtors' Objection on June 25, 2019 [Doc 206] and the Official Committee of Unsecured Creditors ("Committee") in these cases filed the Committee Objection on June 25, 2019 [Doc 208]. The Shareholder Objections were filed by Eric Hughes [Doc 212] and Thomas H. Sutherland [Doc 213], both on June 27, 2019.

## REPLY

3. The Objections are nothing more than futile attempts to muddy the waters in this case to obscure the indisputable, if inconvenient for the above-captioned Debtors and the Committee, fact that this case will inevitably result in a liquidation. In point of fact, both the Debtors and the Committee admit that these cases were filed in response to Discover's notice of its intent to foreclose its lien on the Debtors' assets. [Doc 206-1, p. 3-4; Doc 208, p. ¶¶ 37-38.] These cases were not filed to maximize the value of the Debtors' estate for the benefit of

creditors but as a desperate ploy to prevent the foreclosure of Discover's Collateral and the attachment of Discover's lien to Ceplene.

4. The Committee's contention that the Motion is "riddled" with false statements by Discover [Doc 208, p.2 n.2] ignores the fact that those "statements" are, in fact, legal conclusions supported by indisputable facts. For example, Discover's lien on the Debtors' assets (including Ceplene and the Bertilumubab antibody ("Bert Assets") is grounded in the provisions of documents that speak for themselves. Similarly, no one (including the Debtors) has denied that iCo Therapeutics, Inc. ("iCo") has issued a notice of termination of its license to an integral component of the Bert Assets.

4. Moreover, Daniel Teper attempted, on behalf of Vector[2], to retrade Vector's proposed purchase of Ceplene before this Court at the hearing on March 29, 2019 at which Vector was supposed to have purchased Ceplene. The Debtors have admitted that Vector currently lacks the wherewithal to purchase Ceplene, and, although continuing in discussions with Vector, have been forced to consider alternatives. [Doc 206-1, p. 2]. The Committee admits that Vector has "approached the Debtor about changing the timing of the purchase price payment" for Ceplene [Doc 208 at p. 2, n.2]. The parties have discussed as much with the Court at multiple hearings. In sum, Vector has been obviously attempting to retrade its deal, and no amount of aspersions cast by the Committee can change that fact.

5. That Discover, like any other secured creditor, may have to establish its lien claim in an adversary proceeding or that iCo's termination of its license may be subject to legal

---

[2] Capitalized terms used herein shall have the meaning ascribed in the Motion unless otherwise defined.

challenge does not render Discover's legal conclusions as false statements. Those issues have not been litigated, and are not before the Court on this Motion. In point of fact, by the Committee's own analysis, its statement that the Debtors have no secured creditors, because Discover's claim may be subject to subordination under 11 U.S.C. § 510(b) constitutes a false statement. This Court has not addressed the subordination of Discover's lien [Doc 208 ¶¶31-33.]

6. As an alternative to converting this case, the Committee invites to this Court to wait for sales that "should result in millions' for the Debtors' estate [Doc 208 at ¶ 41] However, neither the Debtors nor the Committee produce any evidence in opposition to the Motion that the Debtors really are on the "brink" of sales or will be in the foreseeable future. Indeed when evaluating the Committee's invitation to wait, the Court should consider first (i) Vector's demonstrated inability to close its purchase of Ceplene, the impact of iCo's issuance of its license termination, and the uncertain impact of Israeli law on the sale of the Bert Assets [see Doc 206-1 at p. 15] and (ii) not, as the Committee suggests [Doc 208 at ¶ 3], the objection Discover interposed to the Ceplene sale to an insider. The Committee attempts to paint Discover's vigorous pursuit of its rights as somehow wrongful, without authority for the propositions that (i) Discover has an obligation to protect any rights other than its own or (ii) Discover's various objections to the Debtors applications have somehow been improper. That attempt thus fails to withstand scrutiny.

7.  The Committee's contention to the contrary notwithstanding[*see, e.g.*, Doc 208 at ¶ 4], these are not complex cases; the Debtors are non-operating entities[3] with some assets to sell.[4] According to the Debtors' Statements of Financial Affairs, those assets have generated no revenue for the Debtors for at least two years. The $100,000 "license" payment the Debtors received for Ceplene is merely a single payment in the Debtors' desperate effort to avoid the attachment of Discover's lien to Ceplene, and not an example of any income stream, much less a robust one. The simplicity of these cases and the inevitable liquidation that awaits them cries out for the appointment of a disinterested fiduciary to monetize any of the Debtors' assets with value to the benefit of creditors.

8.  Although contending that Discover has failed to demonstrate that cause exists to convert these cases, neither the Debtors nor the Committee have demonstrated any justification for incurring the expense and delay inherent in the plan confirmation process, whether the result is a plan of reorganization or a plan of orderly liquidation. The Debtors are not operating, and there is no hint that they intend to resume operations. Notwithstanding that liquidation is the only possible result in these cases, neither the Debtors nor the Committee have demonstrated that current or former insiders of the Debtors must manage the liquidation. Indeed, the inability of the Debtors to close the sale of Ceplene to Vector indicates that they are not the proper parties to preside over a liquidation of the Debtors' assets.

---

[3] Even the Committee is compelled to acknowledge that the Debtors have put their operations "on pause" [Doc 208, ¶¶ 39].

[4] In fact, the Debtors appear to have only four potentially salable assets this point: (i) Ceplene (with respect to which a sale to a related party still has not closed); (ii) the Bert Assets (subject to the complications of iCo's notice of license termination and the uncertainty of potentially applicable Israeli law); Amiket; and perhaps, Nano-Cyclo ("discussions [with an Israeli trustee] are in their infancy"). *See* Doc 206-1 at pp. 14-16.

9. In reply to the more specific objections of the Committee and the Debtors to Discover's demonstration that cause exists to convert these cases, Discover generally relies upon the arguments and the authorities cited in the Motion. Several points raised by the objectors merit a specific response.

10. The Committee takes the position that Discover should not be viewed as a secured creditor [Doc 208, ¶ 33.] The Debtors likewise assert that Discover's claims as disputed. [Doc 206-2, pp. 12-14.] However, Discover has established its status as a secured creditor in it the Kirkland Dec. and Kirkland Dec. II, and recently filed a proof of claim demonstrating its secured status [Claim 37-1, filed June 12, 2019.] "A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed unless a party in interest . . . objects." 11 U.S.C. § 502(a). No objection to Discover's Claim 37-1 has been filed.

11. Moreover, the Committee also argues that the timing of the chapter 11 filing does not indicate bad faith, but fails to point to any other precipitating factor other than Discover's lawful efforts to foreclose its Collateral, claiming the "[n]early every bankruptcy case is prompted by something" [Doc 208, ¶ 38.] While that is a truism – in fact, *every* bankruptcy case has a cause – that does not mean that a case filed to stay a two-party dispute is not suspect as having been filed in bad faith.

12. Further, the Debtors and the Committee argue that the Motion does not pass scrutiny under 11 U.S.C. § 1112(b)(2) [Doc 206-1, pp. 7-8, Doc 208, ¶ 40], but fail to point to any "unusual circumstances" showing that conversion is not in the best interests of creditors and the estate, much less to any evidence that there is a "reasonable likelihood" that the Debtors

will timely confirm a plan. As such, Discover submits that 11 U.S.C. § 1112(b)(2) is inapposite to the Motion.

13. Finally, the Shareholder Objections fail to set forth any specific objection to the merits of the Motion, and are more in the nature of (i) complaints about the misfeasance of the Debtor's former management and (ii) a generalized plea to keep these cases in chapter 11 and a reiteration of the Debtors' prior filings, with accusations aimed at Discover as "an off-shore based fund which regularly exploits small public companies" [Doc 212, p.2] added in a vain attempt to make the Shareholder Objections germane to the Motion. To the extent that Doc 212 asks the Court to "[l]imit Discover's claim to $2 million + applicable interest and fees," the same is procedurally deficient in that (i) it fails to comply with Fed. R. Bankr. P. 3007, (ii) fails to set forth the specific provisions of 11 U.S.C. § 502(b) or any supporting legal authority upon which the objection is grounded, (iii) fails to set forth any supporting evidence beyond Mr. Hughes' rank speculation, and, (iv) to the extent that Doc 212 can be read as an application to subordinate part of Discover's claim, it is not asserted in an adversary proceeding as required by Fed. R. Bankr. P. 7001(8). As such, Mr. Hughes' informal objection to Discover's claims should be rejected out of hand.

14. In point of fact, each of the Debtors' Objection, the Committee Objection and Doc 212 attempt to litigate the merits of Discover's secured claim, which is not an issue before the Court on this Motion.[5] These attempts are made in an effort to distract the Court from the

---

[5] For instance, the Debtors Objection makes oblique reference to a section of the Agreement that the Objection claims constitutes a contractual subordination of Discover's claims to the claims of other creditors. [Doc 206-1, p. 13. That argument is based on a misreading of the section in question. Moreover, both the Debtors and Committee Objections make reference to equitable subordination under 11 U.S.C. § 502(c), which can only be prosecuted in an adversary proceeding which has not been filed. None of these issues are before the Court on the Motion, and should be disregarded.

thin gruel that comprises these chapter 11 cases. This case has been going on too long, and the Bert sale will happen or not without management or the Committee and the attendant costs. A chapter 7 trustee can liquidate these assets more cheaply and efficiently.

15. No matter how many Debtors and creditors there are in these cases, the fact remains that the cases were filed to stave off Discover's rightful efforts to foreclose its Collateral following the Debtors' defaults. The Debtors approached Discover for the loan in question, and not the other way around. The Debtors willingly executed the Debt Documents and took the money, promptly spending the same in an as-yet unsuccessful effort to monetize Ceplene and the Bert Assets. Four months into these chapter 11 cases, the Debtors have not achieved either of those goals, and they are out of any cash save Vector's license fee. These cases cannot afford any more administrative expenses in pursuit of a confirmed plan, and should be converted.

**WHEREFORE**, Discover respectfully requests that this Court enter an order converting the Chapter 11 Cases to cases under Chapter 7 and directing the appointment of a Chapter 7 Trustee to liquidate the Debtors' estates for the benefit of creditors.

Dated: June 28, 2019
        Newark, New Jersey

**GIBBONS P.C.**

By: */s/* Dale E. Barney                              .
    Dale E. Barney, Esq.
    David N. Crapo, Esq.
    One Gateway Center
    Newark, NJ 07102-5310
    Tel.  973-596-4500
    Fax. 973-596-
    E-mail: dbarney@gibbonslaw.com
            dcrapo@gibbonslaw.com

*Counsel for Discover Growth Fund, LLC*