|  |  |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY<br>**Caption in Compliance with D.N.J. LBR 9004-1(b)**<br>**PORZIO, BROMBERG & NEWMAN, P.C.**<br>100 Southgate Parkway<br>P.O. Box 1997<br>Morristown, New Jersey 07962<br>(973) 538-4006<br>(973) 538-5146 Facsimile<br>John S. Mairo, Esq. (jsmairo@pbnlaw.com)<br>Robert M. Schechter, Esq. (rmschechter@pbnlaw.com)<br>Kelly D. Curtin, Esq. (kdcurtin@pbnlaw.com)<br><br>*Counsel for the Official Committee of Unsecured Creditors* |  |
| In re:<br><br>IMMUNE PHARMACEUTICALS INC., *et al.*,[1]<br><br>Debtors. | Chapter: 11<br><br>Case No.: 19-13273 (VFP)<br><br>(Jointly Administered) |

**RESPONSE OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO THE DEBTORS' MOTION FOR THE ENTRY OF AN ORDER APPROVING AND AUTHORIZING (I) BID PROCEDURES AND FORM OF NOTICE IN CONNECTION WITH THE SALE OF THE DEBTORS' ANTI-EOTAXIN ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS, (II) STALKING HORSE AGREEMENT AND STALKING HORSE BID PROTECTIONS, (III) THE SCHEDULING OF A SALE HEARING, (IV) SALE TO THE PURCHASER SUBMITTING THE HIGHEST OR BEST OFFER, (V) PROCEDURES FOR ASSUMING AND ASSIGNING EXECUTORY CONTRACTS, AND (VI) OTHER RELATED RELIEF**

The official committee of unsecured creditors (the "Committee") appointed in the chapter 11 bankruptcy cases (the "U.S. Bankruptcy Cases") of the above-captioned debtors and debtors-in-possession (the "Debtors") hereby submits this response (the "Response") to the Debtors' motion for the entry of an order approving and authorizing (i) bid procedures and form

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: Immune Pharmaceuticals, Inc. (1431); Immune Pharmaceuticals, Ltd.; Cytovia, Inc. (7805); Immune Oncology Pharmaceuticals, Inc.; Maxim Pharmaceuticals, Inc. (9983); and Immune Pharmaceuticals USA Corp. (9630).

4241602

of notice in connection with the sale of the Debtors' anti-eotaxin antibodies, including bertilimumab assets free and clear of all liens, claims, encumbrances, and interests, (ii) stalking horse agreement and bid protections, (iii) the scheduling of a sale hearing, (iv) the sale to the purchaser submitting the highest or best offer, (v) procedures for assuming and assigning executory contracts, and (vi) other related relief [Dkt. No. 219] (the "Motion")[2].  In support of this Response, the Committee respectfully states as follows:

### PRELIMINARY STATEMENT

1. Contradicting all prior dealings, Mr. Baruch Hakim (the "Israeli Trustee"), the trustee appointed in the later-filed and tag-along Israeli "stay" proceeding of Immune Pharmaceuticals Ltd. ("Immune Ltd.") filed an emergency "reconstruction plan, and creditors settlement agreement" ("Settlement Plan") on Sunday, July 7, 2019 seeking to commandeer the Debtors' assets, sell them to Fidelity Risk Capital ("Fidelity")[3] (a disputed "creditor" of Immune Ltd.)[4] through a partial credit bid purchase and pay nearly $1 million in "commission" to himself.  The Israeli Trustee invoked this subversion despite (i) being active in the long negotiated sale to proposed stalking horse purchaser, Alexion Pharma International Operations Unlimited Company (the "Buyer"), (ii) knowing the Motion was filed nearly a week earlier, and (iii) appearing at the July 2, 2019 hearing in the Debtors' U.S. Bankruptcy Cases (the "July 2nd Hearing") wherein the Motion and anticipated sale was discussed with no objection.

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.
[3] Fidelity Risk Capital is the entity identified in Immune Ltd.'s schedules with an unknown claim, but the Committee is advised that a statement of claim was submitted in Israel by "Fidelity Venture Capital Ltd."  Fidelity has received notice of the U.S. Bankruptcy Cases and on May 23, 2019, Fidelity reached out to the Debtors' counsel requesting information about how to file Fidelity's claim.  Fidelity also received notice of the July 16, 2019 bar date in the U.S. Bankruptcy Cases.  As of the date of this Response, Fidelity has not yet filed a claim—despite the fact that on June 27, 2019, Debtors' counsel provided Fidelity with a claim form via email and instructions for filing claims.
[4] The Committee is informed that Fidelity's claim is disputed by the Debtors and would be subject to subordination in the U.S. Bankruptcy Cases in any event.

4241602

2. The Committee seeks to protect the interests of all the Debtors' creditors and believes that the Israeli Trustee's recent action is not in the best interest of creditors. Given the Israeli Trustee's unforeseen action, which conflicts with prior expectations of cooperation, the proposed form of order ("<u>Proposed Order</u>") submitted with the Motion must be modified to reiterate that Immune Ltd. is a chapter 11 debtor whose property is subject to the automatic stay and otherwise clarify that such order shall govern the sale process for Debtors' anti-eotaxin antibodies wherever located and by whomever held, which process shall take place in the United States under the supervision of this Court. Such modification to the Proposed Order is necessary to ensure there is one sale process, encourage bidding, prevent confusion and contradictory outcomes and protect all the Debtors' unsecured creditors and all parties-in-interest in these cases.

3. While the circumstances surrounding Immune Ltd.'s initial filing in Israel are still not entirely clear to the Committee, absent the protection of this Court sought by the Response, all parties in interest are at risk and stand to suffer. To be clear, the Committee welcomes the participation of competing bidders, but such bids must be submitted and vetted through a single process without threat of sabotage. The rogue action of a representative of one of the Debtors must not threaten the Debtors' first-filed U.S. Bankruptcy Cases, including the sale process for the Debtors' anti-eotaxin antibodies. Accordingly, for these and other reasons set forth herein, the Committee submits this Response to ensure that appropriate protective and clarifying language is added to the Proposed Order.

4. The Committee is also filing a separate motion (the "<u>Stay and Procedures Motion</u>"), which seeks similar relief extending beyond the instant Motion to Debtors' other assets and to any future activity in these cases, including any sales, claims reconciliation and

distributions.[5]  The Committee is compelled to file the Stay and Procedures Motion because it appears the Israeli Trustee's Settlement Plan seeks to sell all the Debtors' assets (even though only Immune Ltd. filed a "stay" proceeding in Israel, and the extent to which Immune Ltd. holds any assets is unclear) and because clarification of the process is necessary to reduce costs, ensure cooperation and achieve the best result for the Debtors' creditors.

## BACKGROUND

**U.S. Bankruptcy Cases**

5.  On February 17, 2019 (the "Inc. Petition Date"), Immune Pharmaceuticals, Inc. "Immune Inc.") filed a voluntary petition under chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code"), commencing its chapter 11 case.  After the Inc. Petition Date, certain of its subsidiaries commenced their own chapter 11 cases.

6.  On February 22, 2019 (the "Ltd. Petition Date"), Immune Pharmaceuticals, Ltd. ("Immune Ltd.") filed a voluntary petition under chapter 11 of the Bankruptcy Code, commencing its chapter 11 case.[6]

7.  On February 26, 2019 (the "Subsidiaries Petition Date"), Cytovia, Inc., Maxim Pharmaceuticals, Inc., Immune Pharmaceuticals USA Corp., and Immune Oncology Pharmaceuticals, Inc. (collectively, the "Subsidiaries"), each filed a voluntary petition under chapter 11 of the Bankruptcy Code, commencing their chapter 11 cases.

---

[5] To the extent applicable, facts and arguments asserted in the Stay and Procedures Motion are incorporated herein.
[6] Immune Inc., formerly known as EpiCept Corporation, was incorporated in September 1993.  Pursuant to a November 7, 2012 merger agreement, EpiCept Israel Ltd. (a subsidiary of EpiCept Corporation created solely for purposes of the merger) merged with and into Immune Ltd. (an Israeli company incorporated in July 2010) on August 25, 2013) such that EpiCept Corporation became the parent of Immune Ltd.  Thereafter, EpiCept Corporation, amended its Certificate of Incorporation to change its name to Immune Pharmaceuticals Inc. *See* https://www.sec.gov/Archives/edgar/data/1208261/000110465913049975/a13-12404_3def14a.htm. (last visited July 11, 2010).

8. The Debtors continue to operate their business and manage their property as debtors-in-possession in these cases (the "U.S. Bankruptcy Cases") under sections 1107 and 1108 of the Bankruptcy Code.

9. Neither a trustee nor an examiner has been appointed in the Debtors' U.S. Bankruptcy Cases.

10. The Committee was appointed for the Debtors' unsecured creditors on March 14, 2019.

11. The Committee is comprised of Pearl Cohen Zedek Latzer Baratz ("Pearl Cohen"), Meda Pharma SARL / Meda AB and TDR Services LLC.

12. Notably, Pearl Cohen is the largest non-insider and undisputed creditor of Immune Ltd. It is listed in Immune Ltd.'s schedule F as holding a claim in the amount of $489,683.00.[7]

**Immune Ltd.'s Israeli Stay Proceeding**

13. The Committee has been advised that on or about March 28, 2019, Immune Ltd. filed a motion in the District Court of Jerusalem, Israel ("Israeli Court") for a "stay of proceedings" under section 350 of The Companies Act, 1999 of the State of Israel.

14. Immune Ltd.'s filing in the Israeli Court was made without notice to the Committee or its counsel and without this Court's approval.[8]

---

[7] In its schedules, Immune Ltd. lists forty (40) creditors totaling $21,622,562.22 (excluding "unknown" claims). The largest claims are held by Debtor Immune Inc. at $18,230,854.89, followed by Debtor Immune Pharmaceuticals USA Corporation at $2,385,144.33 and then Pearl Cohen at $489,683.00. Of Immune Ltd.'s total forty (40) creditors, there are twenty-one (21) listed with an Israeli address and their claims total $248,027.00 (excluding "unknown" claims).

[8] Whether and the extent to which the Debtors' representatives in the U.S. Bankruptcy Cases were aware of (or otherwise involved in) Immune Ltd.'s filing in Israel has not yet been fully examined by the Committee. The Committee reserves its rights with respect to any and all investigations and related claims.

4241602

15. The Committee has been advised that on April 1, 2019, Immune Ltd. was granted a "stay of proceedings" by the Israeli Court and on April 4, 2019 the Israeli Trustee was appointed by the Israeli Court as trustee for Immune Ltd.

**Israeli Trustee Meeting**

16. On May 13, 2019, a meeting occurred in New York City with the Debtors' counsel, the Debtors' representative (Mr. Gary Rabin), the Committee's counsel, the Debtors' retained investment bankers (Armory Securities, LLC) and the Israeli Trustee in attendance (the "May 13th Meeting").

17. A main point of discussion at the May 13th Meeting was the anticipated sale of the Debtors' anti-eotaxin antibodies, including bertilimumab, to the Buyer as contemplated in the Motion.

18. Following the May 13th Meeting, Debtors' counsel sent an email to the Israeli Trustee and other attendees, which stated in relevant part:

> The following is what I believe to be a summary of our meeting, how we jointly intend on proceeding as well as a response to your below email:
>
> The Sale process for the anti-eaotaxin [*sic*] and the associated time-line:
>
> 1. The Debtors will continue with their efforts in arriving at a term sheet with Alexion and then an asset purchase agreement, which we hope to complete within the next 7 to 10 days (hopefully, no later than May 24, 2019). . . .
>
> 2. Once we have an executed asset purchase agreement, we will immediately file a motion in the United States Bankruptcy Court requesting that the court approve bidding procedures for third parties to submit offers that could be higher and better than that set forth in the Alexion asset purchase agreement. The hearing on the bidding procedures motion would be scheduled approximately 10 days after its filing (hopefully, no later than June 4, 2019). At that hearing, the bankruptcy court will set an auction date. The auction date that would be requested by the debtors will be in part driven by the request of Alexion and set forth in the Alexion asset purchase agreement.

> 3. <u>Simultaneous with our submission of the Alexion asset purchase agreement to the United States Bankruptcy Court, we would expect that you would present same to your Israeli court and outline the time frames set forth in our motion and in the Alexion asset purchase agreement (hopefully, an auction or [*sic*] about the week of June 24 or July 8 – in all likelihood the latter). You will also be able to solicit prospective purchasers and steer them in the direction of Armory Securities (Jeff Davis and Jon Brownstein), who will be overseeing the auction process.</u>
>
> 4. At the auction, the Debtors will select the highest and best offer, and then present same to the bankruptcy court on a date that is fixed by the bankruptcy court to conduct a hearing to approve the sale. We would anticipate that this hearing will take place approximately 25 to 30 days after the court hearing on the bidding procedures (hopefully, the week of July 8, if the auction takes place at the front end of the week).
>
> 5. Subsequent to approval by the United States Bankruptcy Court of the successful bidder, you will present same to the Israeli court to affirm the successful purchaser.

It was generally understood by the Committee that the parties would work together and cooperate to maximize value based on the summary outlined above.

19. Based on discussions at the May 13th Meeting, the Committee's counsel sent a letter to the Israeli Trustee on May 14, 2019 to confirm that the claims submission deadline for Immune Ltd.'s creditors in Israel would be extended from May 16, 2019 to July 16, 2019, which is the claims submission deadline for Immune Ltd.'s creditors in the U.S. Bankruptcy Cases (the "<u>Bar Date Letter</u>"). The Bar Date Letter states, among other things "To avoid the confusion that would inevitably be caused by have two different claim submission deadlines for the same group of creditors, you agreed to extend the claims submission deadline in the Israel proceeding to July 16, 2019. . . We look forward to your cooperation and working with you regarding the claims review and administration process."

20. On July 1, 2019, the Debtors filed the Motion.

4241602

21. As set forth in the Motion, Buyer's asset purchase agreement ("APA") requires approvals from the Israeli Court. *See* Proposed Order, Ex. A.

22. Among other things, the APA provides for termination by Buyer if "either Seller closes a Competing Transaction," "there is an auction in the Israeli Bankruptcy Case for any of the Acquired Assets or the Israeli Bankruptcy Court enters an Order materially adverse to Buyer from the Bidding Procedures for the sale, transfer or other disposition of any of the Acquired Assets," or "either the Bankruptcy Court or the Israeli Bankruptcy Court denies its respective Sale Motion or fails to enter the Sale Order or the Israeli Sale Order, as applicable, or if either the Sale Order or the Israeli Sale Order fails to become a Final Order or an Israeli Final Order, as applicable." *See* APA, ¶ 11.2(e), (i), (j).

23. The Proposed Order also approves certain stalking horse protections, including but not limited to payment of the expense reimbursement to Buyer if the APA is terminated by the Buyer because "there is an auction of the Acquired Assets in Ltd.'s Israeli bankruptcy case" or "the Israeli Bankruptcy Court enters an Order materially adverse to the Stalking Horse Bidder from the Bidding Procedures for the sale, transfer or other disposition of any of the Acquired Assets." *See* Proposed Order, ¶5.

**Israeli Trustee Appears in U.S. Bankruptcy Cases**

24. On July 1, 2019, which is the same date that the instant Motion was filed, the Israeli Trustee filed in this Court an objection [Dkt. No. 217] to a motion filed by iCo Therapeutics Inc. ("iCo") to (i) compel rejection of iCo's sublicense with Immune Ltd. ("Sublicense") and (ii) obtain relief from the automatic stay to allow the termination of the Sublicense [Dkt. No. 185] (the "iCo Motion").

4241602

25. Immune Ltd. is party to the Sublicense, but it is unclear whether additional assets are in the name of Immune Ltd.

26. On July 2, 2019, this Court held a hearing ("July 2nd Hearing") on (A) the iCo Motion, (B) a motion filed by Discover Growth Fund, LLC ("Discover Growth") to convert these cases to chapter 7 pursuant to 11 U.S.C. § 1112(b) [Dkt. No. 184] (the "Conversion Motion"), (C) the Debtors' motion for entry of an order extending the time within which exclusively the Debtors may file a Chapter 11 Plan and solicit acceptances thereof pursuant to 11 U.S.C. § 1121(d)[Dkt. No. 178] ("Exclusivity Motion"), and (C) scheduling of the Debtors' Motion.

27. The Israeli Trustee appeared telephonically at the July 2nd Hearing.

28. At the July 2nd Hearing, the Exclusivity Motion, the iCo Motion and the Conversion Motion were adjourned until two weeks after the sale hearing contemplated in the Motion, with September 24, 2019 established as the sale hearing holding date. An order was entered extending the Debtors' exclusive right to file a plan is extended through the September 24, 2019, and the Debtors' exclusive right to solicit acceptances through November 25, 2019, or from any further adjourned date. *See* Dkt. No. 226.

29. During the July 2nd Hearing, the Court also addressed the scheduling of the Motion.

**Israeli Trustee Attempts to Seize Control of the Debtors' Assets**

30. Notwithstanding discussions with the Israeli Trustee at the May 13th Meeting and the July 2nd Hearing, and knowing that the Motion had been filed, the Committee was informed that the Israeli Trustee filed the emergency competing Settlement Plan in Israel on Sunday, July

4241602

7, 2019, to sell not only the Debtors' anti-eotaxin antibodies subject to the Motion, but all the Debtors' assets including "Immune Inc.'s shell" to a purported (and disputed) creditor of Ltd.[9]

31. The Committee is in the process of retaining Israeli counsel.

## ARGUMENT

I. **The Proposed Order Must Be Modified To Ensure A Single Sale Process.**

32. Comity, "in the legal sense, is neither a matter of absolute obligation . . . nor of mere courtesy and good will . . . but is the recognition which one nation allows within its territory to the . . . acts of another nation . . . ." *Hilton v. Guyot*, 159 U.S. 113, 163-64 (1895). It is best understood "as a guide where the issues to be resolved are entangled in international relations." *In re Maxwell Communication Corp.*, 93 F.3d 1036, 1047 (2d Cir. 1996). Comity is important where simultaneous proceedings are ongoing in different countries, "especially in multi-party cases like bankruptcies, [that] can naturally lead to inconsistencies and conflicts." *In re Maxwell Communication Corp.*, 93 F.3d at 1041.

33. In response to such naturally occurring inconsistencies, the United Nations Commission on International Trade Law ("UNCITRAL") promulgated the Model Law on Cross-Border Insolvency, which has been adopted by 44 nations in a total of 46 jurisdictions,[10] and provides a comprehensive scheme for recognizing and giving effect to foreign insolvency proceedings. *In re Toft*, 453 B.R. 186, 189 (Bankr. S.D.N.Y. 2011). In the United States, the Model Law on Cross-Border Insolvency has been codified under chapter 15 of title 11 of the United States Code ("Chapter 15"), which provides instructions and a path designating a foreign

---

[9] The Committee has not yet received a translated version of the Israeli Trustee's Settlement Plan, but Debtors' counsel has informally advised that it describes a $9 million offer by Fidelity that is comprised of a $2.9 million credit bid and cash, a break-up fee of $2 million, and a commission payment to the Israeli Trustee of $810,000. The Committee welcomes Fidelity's participation in the auction process outlined in the Motion, but there can only be one process.

[10] One such state is Israel. However, although Israel adopted UNCITRAL's model law in March 2018, it does not go into effect until September 2019.

proceeding a "main proceeding" or a "non-main proceeding," ensuring the equitable distribution of domestic and foreign assets to domestic and foreign creditors, and protecting the assets of a foreign debtor that within the United States. Because UNCITRAL is pending effectiveness in Israel, and the Israeli Trustee's actions threaten to extinguish the heavily negotiated and complex APA achieved with the Buyer (which has the support of the Committee) and destabilize these cases, the Committee requests that this Court clarify that the Proposed Order will be the document governing the Debtors' sale of their anti-eotaxin assets.

34. The U.S. Bankruptcy Cases were filed before Immune Ltd.'s stay proceeding in Israel. Section 362(a) of the Bankruptcy Code provides that the filing of a bankruptcy petition under section 301, 302, or 303 operates as a stay, "applicable to all entities" of, among other things: (i) the commencement or continuation of any judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced prior to the petition date; and (ii) any act to obtain possession of property of the debtor's bankruptcy estate or to exercise control over property of the estate. *See* 11 U.S.C. § 362(a). Section 541 of the Bankruptcy Code defines "estate property" to include a broad range of property belonging to the debtor as of the petition date, "wherever located and by whomever held." *See* 11 U.S.C. § 541. Similarly, the general jurisdictional mandate statutorily conferred upon U.S. district courts (of which bankruptcy courts are units) extends to "all of the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate" pursuant to 28 U.S.C. § 1334(e)(1).

35. By attempting to sell assets of the Debtors, the Israeli Trustee clearly violates the laws of the United States (including 11 U.S.C. § 549) because the assets the Israeli Trustee seeks to sell are assets of the Debtors' estates and such a sale is not authorized under the Bankruptcy

4241602

Code or by this Court. The Israeli Trustee's actions (if condoned in any way) will decrease the public's faith in the Chapter 11 process, and encourage creditors and debtors with a presence in other jurisdictions to file pleadings there if dissatisfied with the U.S. process. Such a "race to the courthouse" is manifestly contrary to the policies underlying the bankruptcy process in the United States.

36. Most importantly, there is already a motion to establish bidding procedures and sell the assets of the Debtors pending before this Court—a motion filed before the Israeli Trustee's Settlement Plan. Allowing two motions that seek substantially the same relief to coexist under different regimes of law will confuse bidders and creditors alike. Creditors of the Debtors and bidders should be able to look to a single process. *See, e.g., In re Maxwell Communication Corp.*, 93 F.3d 1036, 1042 (2d Cir. 1996) (where the joint efforts of English and American courts resolved many of the procedural differences between the two and "resulted in what has been described as a remarkable sequence of events leading to perhaps the first world-wide plan of orderly liquidation ever achieved).

37. For these reasons, the Committee requests that the Court add the following before decretal paragraph 1 of the Proposed Order:

> ***The Bidding & Sale Process for Debtors' Anti-Eotaxin Assets***
>
> *1.     As of February 26, 2019 (at latest), Immune Pharmaceuticals, Inc., Immune Pharmaceuticals, Ltd., Cytovia, Inc., Immune Oncology Pharmaceuticals, Inc., Maxim Pharmaceuticals, Inc., and Immune Pharmaceuticals USA Corp. became debtors-in-possession under chapter 11 of the United States Bankruptcy Code and the automatic stay came into effect to stay, among other things, any act to obtain possession of property of the Debtors' bankruptcy estates or to exercise control over property of the estates wherever located and by whomever held.*
>
> *2.     This Order governs the bidding procedures and sale process for the Debtors' anti-eotaxin assets, including bertilimumab assets, whether such assets are owned by Immune Pharmaceuticals, Inc.,*

> *Immune Pharmaceuticals, Ltd., Cytovia, Inc., Immune Oncology Pharmaceuticals, Inc., Maxim Pharmaceuticals, Inc., and Immune Pharmaceuticals USA Corp. and regardless of whether such assets exist in Israel, the United States or elsewhere.*
>
> *3.    Any and all parties interested in bidding on or purchasing the Debtors' anti-eotaxin assets, including but not limited to Fidelity Risk Capital or Fidelity Venture Capital Ltd., must comply with this Order.*
>
> *4.    The Debtors and the Committee are authorized and directed to present this Order to the Israeli Court and Baruch Hakim, the Trustee of the Immune Pharmaceutical Ltd. in Israel, and to take any steps necessary to enforce this Order in Israel or elsewhere.*

Including such language will assist in ensuring that there is a single cohesive process by which bids may be submitted, analyzed and ultimately approved.

38.    Finally, to the extent necessary, and in the spirit of comity and the harmonization of the proceedings, the Committee has no objection with this Court communicating directly with the Israeli Court to discuss the ongoing sale process in the U.S. Bankruptcy Cases.

39.    The Committee reserves its rights to make any sale-related objections at any future sale hearing.

## **CONCLUSION**

**WHEREFORE**, the Committee respectfully requests that the Court modify the Proposed Order as set forth herein, and grant the Committee such other and further relief as the Court deems just and appropriate.

Dated:  July 12, 2019                    **PORZIO, BROMBERG & NEWMAN, P.C.**

By:    */s/ John S. Mairo*
      John S. Mairo, Esq.
      Robert M. Schechter, Esq.
      Kelly D. Curtin, Esq.
      100 Southgate Parkway
      Morristown, New Jersey 07962
      Email: jsmairo@pbnlaw.com
           rmschechter@pbnlaw.com
           kdcurtin@pbnlaw.com

4241602