UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**PORZIO, BROMBERG & NEWMAN, P.C.**
100 Southgate Parkway
P.O. Box 1997
Morristown, New Jersey 07962
(973) 538-4006
(973) 538-5146 Facsimile
John S. Mairo, Esq. (jsmairo@pbnlaw.com)
Robert M. Schechter, Esq. (rmschechter@pbnlaw.com)
Kelly D. Curtin, Esq. (kdcurtin@pbnlaw.com)

*Counsel for the Official Committee of Unsecured
Creditors*

| | |
|---|---|
| In re: | Chapter: 11 |
| IMMUNE PHARMACEUTICALS INC., *et al.*,[1] | Case No.: 19-13273 (VFP) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date and Time: TBD** |
| | **Objection deadline: TBD** |

**MEMORANDUM OF LAW IN SUPPORT OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' MOTION TO (I) CONFIRM THE AUTOMATIC STAY APPLIES TO ASSETS OF THE DEBTORS WHEREVER LOCATED, (II) DIRECT THE ISRAELI TRUSTEE TO COMPLY WITH THE AUTOMATIC STAY AND ANY ORDERS OF THIS COURT RELATING TO ANY SALE PROCESS FOR THE DEBTORS' ASSETS, (III) DIRECT ALL PARTIES TO COOPERATE TO ESTABLISH UNIFORM PROCEDURES TO GOVERN A SINGLE, CENTRALIZED SALE PROCESS IN THE UNITED STATES, AND (IV) GRANT RELATED RELIEF**

The Official Committee of Unsecured Creditors (the "Committee") appointed in the

chapter 11 bankruptcy cases of the Debtors (the "Chapter 11 Cases") hereby submits this

memorandum of law in support of the Committee's Motion (the "Motion") for an Order,

---

[1] The debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: Immune Pharmaceuticals, Inc. (1431); Immune Pharmaceuticals, Ltd.; Cytovia, Inc. (7805); Immune Oncology Pharmaceuticals, Inc.; Maxim Pharmaceuticals, Inc. (9983); and Immune Pharmaceuticals USA Corp. (9630) (the "Debtors").

substantially in the form submitted herewith (the "Proposed Order"), (i) confirming the

automatic stay applies to assets of the Debtors wherever located, (ii) directing the Israeli Trustee

to comply with the automatic stay and any orders of this Court relating to any sale process for the

Debtors' assets, (iii) directing all parties to cooperate to establish uniform procedures to govern a

single, centralized sale process in the United States, and (iv) granting related relief.  In support of

the Motion, the Committee submits the Certification of Kelly D. Curtin ("Curtin Certification")

and respectfully states as follows:

## PRELIMINARY STATEMENT

1.      The Committee seeks to protect the interests of all the Debtors' creditors and

believes that the recent actions of the Israeli Trustee (defined below) regarding the Debtors'

assets are not in the best interest of all creditors.  Moreover, the Committee believes the actions

of the Israeli Trustee are in violation of the automatic stay, as well as potentially being improper

post-petition transfers of assets of the Debtors' estates pursuant to section 549 of the Bankruptcy

Code.  The Committee requests that this Court make clear that the automatic stay protects all

assets of the Debtors, wherever located and by whomever held.

2.      While the circumstances surrounding Immune Ltd.'s initial filing in Israel are still

not entirely clear to the Committee, absent the protections of this Court sought by this Motion,

all parties in interest are at risk and stand to suffer.  To be clear, the Committee welcomes the

participation of competing bidders, but such bids must be submitted and vetted through a single

process without threat of sabotage.  The rogue and intentionally subversive action of a

representative of one of the Debtors must not threaten the Debtors' first-filed Chapter 11 Cases,

including the sale process for the Debtors' anti-eotaxin antibodies.  To that end, for these and

other reasons set forth herein, the Committee submits this Motion to make clear this Court's

4244162

jurisdiction over the Debtors' assets in any sale process, and facilitate the cooperation of the parties in creating a single, centralized process before this Court.

## JURISDICTION

3.      This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334.

4.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

5.      This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

6.      The statutory predicate for the relief sought is sections 105, 362, 541, and 549 of the United States Bankruptcy Code (the "Bankruptcy Code").

## BACKGROUND

### U.S. Bankruptcy Cases

7.      On February 17, 2019 (the "Inc. Petition Date"), Immune Pharmaceuticals, Inc. ("Immune Inc.") filed a voluntary petition under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court"), commencing its chapter 11 case.  After the Inc. Petition Date, certain of its subsidiaries commenced their own chapter 11 cases.

8.      On February 22, 2019 (the "Ltd. Petition Date"), Immune Ltd. filed a voluntary petition under chapter 11 of the Bankruptcy Code, commencing its chapter 11 case.[2]

9.      On February 26, 2019 (the "Subsidiaries Petition Date"), Cytovia, Inc., Maxim Pharmaceuticals, Inc., Immune Pharmaceuticals USA Corp., and Immune Oncology

---

[2] Immune Inc., formerly known as EpiCept Corporation, was incorporated in September 1993.  Pursuant to a November 7, 2012 merger agreement, EpiCept Israel Ltd. (a subsidiary of EpiCept Corporation created solely for purposes of the merger) merged with and into Immune Ltd. (an Israeli company incorporated in July 2010) on August 25, 2013) such that EpiCept Corporation became the parent of Immune Ltd.  Thereafter, EpiCept Corporation, amended its Certificate of Incorporation to change its name to Immune Pharmaceuticals Inc.  *See* https://www.sec.gov/Archives/edgar/data/1208261/000110465913049975/a13-12404_3def14a.htm. (last visited July 13, 2019).

4244162

Pharmaceuticals, Inc. (collectively, the "Subsidiaries"), each filed a voluntary petition under chapter 11 of the Bankruptcy Code, commencing their chapter 11 cases.

10.    The Debtors continue to operate their businesses and manage their property as debtors-in-possession in these Chapter 11 Cases under sections 1107 and 1108 of the Bankruptcy Code.

11.    Neither a trustee nor an examiner has been appointed in these Chapter 11 Cases.

12.    The Committee was appointed for the Debtors' unsecured creditors on March 14, 2019.  The Committee is comprised of Pearl Cohen Zedek Latzer Baratz ("Pearl Cohen"), Meda Pharma SARL / Meda AB, and TDR Services LLC.

13.    Notably, Pearl Cohen is the largest non-insider and undisputed creditor of Immune Ltd.  It is listed in Immune Ltd.'s schedule F as holding a claim in the amount of $489,683.00.[3]

**Immune Ltd.'s Israeli Stay Proceeding**

14.    The Committee has been advised that on or about March 28, 2019, Immune Ltd. filed a motion in the District Court of Jerusalem, Israel ("Israeli Court") for a "stay of proceedings" under section 350 of The Companies Law 5759-1999 of the State of Israel.

15.    Immune Ltd.'s filing in the Israeli Court was made with no notice to the Committee or its counsel and without this Court's approval.[4]

---

[3] In its schedules, Immune Ltd. lists forty (40) creditors totaling $21,622,562.22 (excluding "unknown" claims). The largest claims are held by Debtor Immune Inc. at $18,230,854.89, followed by Debtor Immune Pharmaceuticals USA Corporation at $2,385,144.33 and then Pearl Cohen at $489,683.00.  Of Immune Ltd.'s total forty (40) creditors, there are twenty-one (21) listed with an Israeli address and their claims total $248,027.00 (excluding "unknown" claims).

[4] Whether and the extent to which the Debtors' representatives in these Chapter 11 Cases were aware of (or otherwise involved in) Immune Ltd.'s filing in Israel has not yet been fully examined by the Committee.  The Committee reserves its rights with respect to any and all investigations and related claims.

4

16.     The Committee has been advised that on April 1, 2019, Immune Ltd. was granted a "stay of proceedings" by the Israeli Court and on April 4, 2019, the Israeli Court appointed the Israeli Trustee as trustee for Immune Ltd.

**Meeting To Discuss Bert Sale Status and Process Moving Forward**

17.     On May 13, 2019, a meeting occurred in New York City with the Debtors' counsel, the Debtors' representative (Mr. Gary Rabin), the Committee's counsel, the Debtors' retained investment bankers (Armory Securities, LLC), and the Israeli Trustee in attendance (the "May 13th Meeting").

18.     A main point of discussion at the May 13th Meeting was the anticipated sale of the Debtors' anti-eotaxin antibodies, including bertilimumab, to Alexion Pharma International Operations Unlimited Company ("Alexion").

19.     Following the May 13th Meeting, Debtors' counsel sent an email to the Israeli Trustee and other attendees, which stated in relevant part:

> The following is what I believe to be a summary of our meeting, how we jointly intend on proceeding as well as a response to your below email:
>
> The Sale process for the anti-eaotaxin [*sic*] and the associated time-line:
>
> 1.     The Debtors will continue with their efforts in arriving at a term sheet with Alexion and then an asset purchase agreement, which we hope to complete within the next 7 to 10 days (hopefully, no later than May 24, 2019). . . .
>
> 2.     Once we have an executed asset purchase agreement, we will immediately file a motion in the United States Bankruptcy Court requesting that the court approve bidding procedures for third parties to submit offers that could be higher and better than that set forth in the Alexion asset purchase agreement. The hearing on the bidding procedures motion would be scheduled approximately 10 days after its filing (hopefully, no later than June 4, 2019). At that hearing, the bankruptcy court will set an auction date. The auction date that would be requested by the debtors will

5

4244162

be in part driven by the request of Alexion and set forth in the Alexion asset purchase agreement.

3.    Simultaneous with our submission of the Alexion asset purchase agreement to the United States Bankruptcy Court, we would expect that you would present same to your Israeli court and outline the time frames set forth in our motion and in the Alexion asset purchase agreement (hopefully, an auction [*sic*] or about the week of June 24 or July 8 – in all likelihood the latter). You will also be able to solicit prospective purchasers and steer them in the direction of Armory Securities (Jeff Davis and Jon Brownstein), who will be overseeing the auction process.

4.    At the auction, the Debtors will select the highest and best offer, and then present same to the bankruptcy court on a date that is fixed by the bankruptcy court to conduct a hearing to approve the sale. We would anticipate that this hearing will take place approximately 25 to 30 days after the court hearing on the bidding procedures (hopefully, the week of July 8, if the auction takes place at the front end of the week).

5.    Subsequent to approval by the United States Bankruptcy Court of the successful bidder, you will present same to the Israeli court to affirm the successful purchaser.

*See* Curtin Certification, ¶ 7 (emphasis added). It was generally understood by the Committee that the parties would work together and cooperate to maximize value based on the summary outlined above.

20.    Based on discussions at the May 13th Meeting, the Committee's counsel sent a letter to the Israeli Trustee on May 14, 2019 to confirm that the claims submission deadline for Immune Ltd.'s creditors in Israel would be extended from May 16, 2019 to July 16, 2019, which is the claims submission deadline for Immune Ltd.'s creditors in these Chapter 11 Cases (the "Bar Date Letter"). A copy of the Bar Date Letter is attached as **Exhibit A** to the Curtin Certification. The Bar Date Letter states, among other things "[t]o avoid the confusion that would inevitably be caused by having two different claim submission deadlines for the same group of creditors, you agreed to extend the claims submission deadline in the Israel proceeding

6

to July 16, 2019. . . We look forward to your cooperation and working with you regarding the claims review and administration process." *See* Curtin Certification, Ex. A.

21.    On July 1, 2019, the Debtors filed a motion for the entry of an order approving and authorizing (i) bid procedures and form of notice in connection with the sale of the Debtors' anti-eotaxin antibodies, including bertilimumab assets free and clear of all liens, claims, encumbrances, and interests, (ii) the stalking horse agreement with Alexion and bid protections, (iii) the scheduling of a sale hearing, (iv) the sale to the purchaser submitting the highest or best offer, (v) procedures for assuming and assigning executory contracts, and (vi) other related relief [Dkt. No. 219] (the "Bidding Procedures Motion").

22.    As set forth in the Bidding Procedures Motion, the asset purchase agreement with Alexion ("APA") requires approvals from the Israeli Court.  *See* Dkt. No. 219-5, Ex. A.

23.    Among other things, the APA provides for termination by Alexion if "either Seller closes a Competing Transaction," "there is an auction in the Israeli Bankruptcy Case for any of the Acquired Assets or the Israeli Bankruptcy Court enters an Order materially adverse to [Alexion] from the Bidding Procedures for the sale, transfer or other disposition of any of the Acquired Assets" or "either the Bankruptcy Court or the Israeli Bankruptcy Court denies its respective Sale Motion or fails to enter the Sale Order or the Israeli Sale Order, as applicable, or if either the Sale Order or the Israeli Sale Order fails to become a Final Order or an Israeli Final Order, as applicable." *See* APA, ¶ 11.2(e), (i), (j).

24.    The proposed order submitted in connection with the Bidding Procedures Motion also approves certain stalking horse protections, including, but not limited to, payment of the expense reimbursement to Alexion if the APA is terminated by Alexion because "there is an auction of the Acquired Assets in Ltd.'s Israeli bankruptcy case" or "the Israeli Bankruptcy Court

7

enters an Order materially adverse to the Stalking Horse Bidder from the Bidding Procedures for the sale, transfer or other disposition of any of the Acquired Assets." *See* Dkt. No. 215-9, ¶5.

25.     On July 12, 2019, the Committee filed a response to the Bidding Procedures Motion seeking to modify the proposed form of order submitted with the Bidding Procedures Motion to reiterate that Immune Ltd. is a Chapter 11 debtor whose property is subject to the automatic stay and otherwise clarify that such order shall govern the sale process for Debtors' anti-eotaxin antibodies wherever located and by whomever held, which process shall take place in the United States under the supervision of this Court. *See* Dkt. No. 231.

26.     In its response to the Bidding Procedures Motion, the Committee also noted that it would be filing this Motion.  *See id.*

**Israeli Trustee Appears in U.S. Bankruptcy Cases**

27.     On July 1, 2019, which is the same date that the Bidding Procedures Motion was filed, the Israeli Trustee filed in this Court an objection [Dkt. No. 217] to a motion filed by iCo Therapeutics Inc. ("iCo") to (i) compel rejection of iCo's sublicense with Immune Ltd. ("Sublicense") and (ii) obtain relief from the automatic stay to allow the termination of the Sublicense [Dkt. No. 185] (the "iCo Motion").

28.     Immune Ltd. is party to the Sublicense.  It is unclear whether additional assets are in the name of Immune Ltd.

29.     On July, 2, 2019, this Court held a hearing (the "July 2nd Hearing") on (A) the iCo Motion, (B) a motion filed by Discover Growth Fund, LLC to convert these cases to chapter 7 pursuant to 11 U.S.C. § 1112(b) [Dkt. No. 184] (the "Conversion Motion"), (C) the Debtors' motion for entry of an order extending the time within which exclusively the Debtors may file a

8

Chapter 11 plan and solicit acceptances thereof pursuant to 11 U.S.C. § 1121(d)[Dkt. No. 178]

("Exclusivity Motion"), and (D) scheduling of the Debtors' Bidding Procedures Motion.

30.    The Israeli Trustee appeared telephonically at the July 2nd Hearing.

31.    At the July 2nd Hearing, the Exclusivity Motion, the iCo Motion, and the

Conversion Motion were adjourned until two weeks after the sale hearing contemplated in the

Bidding Procedures Motion, with September 24, 2019 established as the sale hearing holding

date.    An order was entered extending the Debtors' exclusive right to file a plan through

September 24, 2019, and the Debtors' exclusive right to solicit acceptances through November

25, 2019, or from any further adjourned date.  *See* Dkt. No. 226.

32.    During the July 2nd Hearing, the Court also addressed the scheduling of the

hearing for the Bidding Procedures Motion.

**Israeli Trustee Attempts to Seize Control of the Debtors' Assets**

33.    Contradicting all prior dealings, Mr. Baruch Hakim (the "Israeli Trustee"), the

trustee appointed in the later-filed Israeli "stay" proceeding of Immune Ltd. filed an emergency

"reconstruction plan, and creditors settlement agreement" (the "Settlement Plan") on Sunday,

July 7, 2019 seeking to commandeer the Debtors' assets, sell them to Fidelity Venture Capital

Ltd. ("Fidelity") (a disputed "creditor" of Immune Ltd.).    The Israeli Trustee invoked this

subversion despite (i) being active in the long negotiated sale to proposed stalking horse

purchaser – Alexion, (ii) knowing the Bidding Procedures Motion was filed nearly a week

earlier, and (iii) appearing at the July 2nd Hearing wherein the Bidding Procedures Motion and

anticipated sale were discussed with no objection.

34.    The Committee was later informed that the Israeli Trustee filed the "emergency"

Settlement Plan in Israel to sell, not only the Debtors' anti-eotaxin antibodies subject to the

Bidding Procedures Motion, but all the Debtors' assets including "Immune Inc.'s shell" to Fidelity, a purported (and disputed) creditor of Ltd.[5]

35.     The Committee has received a translated version of Fidelity's offer that allegedly forms part of the Settlement Plan (the "Fidelity Offer").  The Fidelity Offer equates to $9,000,000, comprised of a $2,900,000 credit bid and a secured claim of $5,400,000 should the Israeli Trustee accept an offer other than the Fidelity Offer.[6]  Additionally, the Fidelity Offer provides for an immediate $50,000 payment to the Israeli Trustee "to facilitate the [Israeli] Trustee's ability to manage the Stay of Proceedings process in this case . . . ."  A copy of the translated version of the Fidelity Offer is attached as **Exhibit B** to the Curtin Certification.  The Committee has yet to receive a full, translated copy of the Settlement Plan.

36.     A copy of the Israeli Trustee's email forwarding an untranslated copy of the full purported Settlement Plan to Immune Ltd. creditor and Committee member Pearl Cohen is attached as **Exhibit C** to the Curtin Certification.[7]

37.     On July 12, 2019, United States counsel to the Israeli Trustee filed a Notice of Appearance and Request for Notice and an objection to the Bidding Procedures Motion on behalf of the Israeli Trustee [Dkt. No. 233] (the "Israeli Trustee's Objection").

38.     The Israeli Trustee's Objection asserts that "most or all of the valuable assets of [Immune Ltd.], including the assets that have been identified for potential sale via the [Bidding Procedures Motion] are the exclusive property of [Immune Ltd.] and subject to the jurisdiction of

---

[5] The Committee welcomes Fidelity's participation in the auction process outlined in the Bidding Procedures Motion, but there can only be one process.

[6] Additionally, Debtors' counsel has informally advised the Committee that the Fidelity Offer includes a commission payment to the Israeli Trustee of $810,000.

[7] The Committee questions the propriety of the Israeli Trustee's email to Immune Ltd.'s creditors that states (without any analysis or explanation), "[b]ased on this plan, and upon Due Diligence process, the creditors of the above company, suppose be paid of all (100%) their current debts . . . For those creditors who cannot read Hebrew it is suggested either to translate the request / motion or to be represented by an Israeli lawyer."  *See* Curtin Certification, Ex. C.

the Israeli Bankruptcy Proceeding," which is contrary to the Committee's understanding.  *See*
Dkt. No. 233, ¶ 3.

39.    The Israel Trustee's Objection also states that Fidelity has offered to purchase
"100% of the stock of [Immune Ltd.] and that of another of the Debtors (Immune
Pharmaceuticals Inc.) in exchange for a cash payment in excess of $9,000,000 USD"  and that a
hearing in Israel to approve the offer has been scheduled for July 22, 2019.  *Id.* at ¶¶ 5 & 6.

40.    Tellingly, the Israeli Trustee's Objection makes no reference to Fidelity's
purported $2.9 million credit bid (which the Committee understands reduces the cash
consideration to $6.1 million), the $810,000 commission sought by the Israeli Trustee, or that
Fidelity's bid is for all of the Debtors' assets (as opposed to the Alexion bid, which is only for the
anti-eotaxin antibodies assets).  *See generally, id.*

**Israeli Trustee, Through His U.S. Counsel, Submitted A Request To Adjourn the Bidding**
**Procedures Motion Without Material Information And Has Continued, Throughout this**
**Past Weekend, To Interfere With the U.S. Sale Process**

41.    Continuing to apparently be less than forthright with this Court and the parties
before this Court, which have been attempting in good faith to establish a sale process that would
be beneficial to all creditors, the Israeli Trustee at 5:43 PM (EST) on Friday July 12, 2019
submitted a request to adjourn the Bidding Procedures Motion.  Attached as **Exhibit D** to the
Curtin Certification is the Israeli Trustee's U.S. Counsel's email and filled out adjournment
request form (the "Adjournment Request").

42.    Incredibly, the Israeli Trustee sought to adjourn the Bidding Procedures Motion to
July 30, 2019 without disclosing to the Court that the Israeli Trustee's Settlement Plan is
scheduled to be heard by the Israeli Court on July 22, 2019.  The Israeli Trustee waited to

disclose that material information until it filed the Israeli Trustee's Objection hours later, when the Israeli Trustee probably realized his adjournment request was not being granted.

43.     Over this past weekend (specifically, on Saturday, July 13, 2019), the Israeli Trustee directly contacted iCo and represented to iCo that the Settlement Plan will be approved by the Israeli Court on July 22, 2019, and that any motion or papers asserting otherwise in this Court "have no relevance what so ever."  A copy of the Israeli Trustee's email to the CEO of iCo is attached as **Exhibit E** to the Curtin Certification.[8]

## RELIEF REQUESTED

44.     The Committee respectfully requests that this Court enter an order, substantially in the form of the attached Proposed Order that (i) confirms the automatic stay applies to all assets and property of the Debtors, wherever located and by whomever held; (ii) directs the Israeli Trustee to comply with the automatic stay and any orders of this Court relating to any sale process for the Debtors' assets; (iii) directs all parties to these Chapter 11 Cases to work together in the spirit of cooperation to establish uniform, consensual procedures so that a single, harmonized sale process occurs in the United States to the benefit of all creditors; and (iv) grants related relief.

## BASIS FOR RELIEF

**I.    The Automatic Stay Applies to the Assets Subject to the Settlement Plan**

45.     Upon the filing of a Chapter 11 petition, an estate comprised of all the debtor's assets, wherever they may be located, is created.  Section 541(a) of the Bankruptcy Code states:

> The commencement of a case under section 301, 302, or 303 of
> this title creates an estate.  Such estate is comprised of all the
> following property, *wherever located and by whomever held*:

---

[8] The Israeli Trustee's continuing actions to subvert the sale process in the United States confirm that time is indeed of the essence.  Concurrently with the filing of this Motion, the Committee is filing an Application Shortening Time so that the Motion may be heard prior to the purported July 22, 2019 "approval date" of the Settlement Plan.

4244162

> (1)    Except as provided in subsection (b) and (c)(2) of
> this section, all legal and equitable interests of the debtor in
> property as of the commencement of the case.

11 U.S.C. § 541(a) (emphasis added); *see also* H.R. Rep. No. 82-2320, at 15 (1952), *reprinted*

*in* 1952 U.S.C.C.A.N. 1960, 1976 (Congress inserted the phrase "wherever located" into a

predecessor of the current Bankruptcy Code "to make clear that a trustee in bankruptcy is vested

with the title of the bankrupt in property which is located without, as well as within, the United

States.").

46.    Furthermore, 28 U.S.C. § 1334(e) confers on the United States District Court for

the District of New Jersey and, by jurisdictional grant pursuant to 28 U.S.C. § 157(a) as well as

the Standing Order of Referral of Cases to Bankruptcy Judges dated July 23, 1984, confers on

the Bankruptcy Court, "exclusive jurisdiction of all of the property, *wherever located*, of the

debtor as of the commencement of such case, and of property of the estate." 28 U.S.C. § 1334(e)

(emphasis added); *see also In re Nakash*, 190 B.R. 763, 768 (Bankr. S.D.N.Y. 1996)(referring to

legislative history and collecting cases); *In re Gucci*, 309 B.R. 679, 681-82 (Bankr. S.D.N.Y.

2004).

47.    Additionally, the filing of a bankruptcy petition automatically operates as a stay

applicable to all entities, of, *inter alia*, the

> (1) commencement or continuation, including the issuance or
> employment of process, of a judicial, administrative, or other
> action or proceeding against the debtor that was or could have been
> commenced before the commencement of the case under this title,
> or to recover a claim against the debtor that arose before the
> commencement of the case under this title . . . .

11 U.S.C. § 362(a)(1).

13

48.    By "including property of the debtor 'wherever located' in the bankruptcy estate, Congress explicitly indicated its intent for property located outside the territory of the United States to be considered property of the estate and thus protected by the automatic stay."  *In re Elcoteq, Inc.*, 521 B.R. 189, 198-99 (Bankr. N.D. Tex. 2014); *see also In re Nakash*, 190 B.R. at 768; *In re Gold and Honey, Ltd.*, 410 B.R. 357, 368-69 (Bankr. E.D.N.Y. 2009) (stating it "is axiomatic that when the Chapter 11 cases were filed, the automatic stay went into effect" and automatically enjoined the continuation of receivership proceedings in Israel).

49.    The automatic stay, applicable to all property of the debtor, wherever located, is "one of the fundamental debtor protections provided by the bankruptcy laws."  *Midlantic Nat. Bank v. N.J. Dep't of Envtl. Prot.*, 474 U.S. 494, 503 (1986).  Importantly, the automatic stay is also a creditor protection because it (i) prevents a race to the courthouse and piecemeal dismembering of the debtors' estates and (ii) enables the debtors' assets to be protected and distributed equitably for the benefit of all creditors.  *See In re Gold & Honey, Ltd.*, 410 B.R. at 372.  Consequently, as of the commencement of these Chapter 11 Cases by the filing of the applicable bankruptcy petitions, the automatic stay pursuant to Bankruptcy Code section 362 became effective against all property, both foreign and domestic, of the Debtors, this Court was granted exclusive jurisdiction over the property, and any act that would dispose of or otherwise interfere with such property of the estate is a violation of the automatic stay.

50.    The Committee was advised that assets to be disposed of pursuant to the Settlement Plan filed in Israel include not only the same assets that the Debtors seek to sell in the Bidding Procedures Motion, but all the Debtors' assets—assets that are properly considered property of the estates of the Debtors that are currently before this Court.  *See* Curtin Certification, Exhibit B.

14

51.    Notably, in a similar case where an Israeli receivership was instituted after the filing of Chapter 11 petitions in the United States, the Tel-Aviv District Court of Israel succinctly stated, "[t]here is indeed no doubt that the Court in the United States is competent to make an order concerning a stay of proceedings, which applies to all the assets of the debtor wherever they are situated." *In re Gold & Honey, Ltd.*, 410 B.R. at 364.

52.    Accordingly, the Committee respectfully requests that this Court enter an order making clear that the Debtors' estates are comprised of assets wherever located and by whomever held, including assets of the Debtors located in Israel, and that the automatic stay is in full force and effect as to said assets, and any actions taken contrary to section 362(a) of the Bankruptcy Code will be considered a violation of the automatic stay.

**II.    The Actions of the Israeli Trustee Are a Violation of the Automatic Stay, are Invalid as a Matter of Law, and This Court Should Direct the Israeli Trustee to Comply With the Automatic Stay and Any Orders of this Court Relating to Any Sale Process for the Debtors' Assets.**

a.    *The Israeli Trustee is Subject to the Personal Jurisdiction of the Bankruptcy Court*

53.    Although the Bankruptcy Court has *in rem* jurisdiction over the Debtors' property, wherever located and by whomever held, *in personam* jurisdiction is required before the court may restrain a party from interfering with that property. *See Fotochrome, Inc. v. Copal Co., Ltd.* 517 F.2d 512, 516 (2d Cir. 1975)(holding that automatic stay "cannot be effective . . . without *in personam* jurisdiction over the [party] who has begun an action in a foreign tribunal that is not within the jurisdiction of the United States"); *In re Travelstead*, 227 B.R. 638, 655 (D. Md. 1998).

54.    A party that otherwise would not be within the jurisdiction of the court may waive any *in personam* jurisdictional challenge it may have, or may consent to the exercise of such

jurisdiction. *See Omni Capital Intern., Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987). Most significantly, it has been held that "a foreign party who participates in a bankruptcy case through pleadings filed has also consented to jurisdiction." *In re Paques, Inc.*, 277, B.R. 615, 625 (Bankr. E.D. Pa. 2000) (citing *In re Nakash*, 190 B.R. at 767-68 (holding that Israeli receiver, subject to personal jurisdiction of U.S. court, violated automatic stay by instituting involuntary insolvency proceedings against debtor in Israel)); *see also In re McLean Indus.*, 68 B.R. 690, 694 (S.D.N.Y. 1986) (foreign creditor, over whom bankruptcy court had jurisdiction, violated automatic stay by arresting debtor's vessels in Hong Kong).   In *In re Nakash*, the bankruptcy court found the actions of the Israeli receiver made him subject to the court's *in personam* jurisdiction.   There, the receiver submitted himself to the courts of the United States by, *inter alia*, seeking attachment in the Eastern District of New York, appearing through New York counsel as a party in interest before the court, filing pleadings, and participating in a discovery exchange program. *In re Nakash*, 190 B.R. at 767-68.

55.    Here, the Israeli Trustee is subject to the *in personam* jurisdiction of this Court. The Israeli Trustee filed an objection to the iCo Motion with this Court; appeared telephonically at the July 2nd Hearing; and has hired Satterlee Stephens LLP as his United States bankruptcy counsel, through which the Israeli Trustee made the Adjournment Request and filed the Israeli Trustee's Objection (to the Bidding Procedures Motion) and a Notice of Appearance in this Court.   Accordingly, the actions of the Israeli Trustee in these Chapter 11 Cases are more than sufficient to subject him to the *in personam* jurisdiction of the Bankruptcy Court.

    b.    *The Israeli Trustee's Attempt to Sell the Debtors' Assets Is Invalid as a Matter*

56.    Acts in violation of the stay are invalid when committed, regardless of the actor's knowledge of the stay and without court action to make them so. *In re Elcoteq, Inc.*, 521 B.R. at

199 (citing *In re Cueva*, 371 F.3d 232, 236 (5th Cir. 2004)); *see also Constitution Bank v. Tubbs*, 68 F.3d 685, 692 (3d Cir. 1995).

57.     The Israeli Trustee seeks to sell assets of the Debtors through the Settlement Plan, without the permission this Court.  Such acts are not only a violation of the automatic stay, but also should be considered invalid by this Court.

58.     Unless and until the Israeli Trustee requests and receives permission from this Court to proceed with the sale of assets of the Debtors' estates, all actions to further the ends of selling the Debtors' assets abroad and distributing proceeds therefrom are invalid.

59.     Accordingly, the Committee respectfully requests this Court enter an order finding all actions taken to sell assets of the Debtors that have not been sanctioned by this Court are a violation of the automatic stay, are invalid as a matter of law, and direct that any sale process should unfold before this Court.

c.     *The Court Should Direct the Israeli Trustee to Cease Violating the Automatic Stay and Participate in the Asset Sale Process in the United States*

60.     The Bankruptcy Court has personal jurisdiction over the Israeli Trustee, as shown, *supra*, and may restrain him from interfering with property of the Debtors' estates.

61.     The proper venue of a sale of the Debtors' assets, without violating the automatic stay or being an unlawful transfer of property of the estate pursuant to section 549 of the Bankruptcy Code, is the United States.

62.     The pending Bidding Procedures Motion provides for, *inter alia*, the submission of higher and better offers than the Stalking Horse offer.  If the Israeli Trustee believes he has secured such an offer, it should be presented to the Debtors pursuant to bidding procedures

4244162

approved through the Bidding Procedures Motion.[9]   In this way, a fair, orderly, and non-duplicative process to sell assets of the Debtors will be possible, all bidders will operate on a "level playing field," and the rights of all the Debtors' creditors will be protected.

63.    Where, as here, there is already a sale process underway:

> "recognizing a foreign seizure of a debtor's assets post-petition would severely hinder United States bankruptcy court's abilities to carry out two of the most fundamental policies and purposes of the automatic stay—namely, preventing one creditor from obtaining an advantage over other creditors, and providing for the efficient and orderly distribution of a debtor's assets to all creditors in accordance with their relative priorities."

*In re Gold & Honey, Ltd.*, 410 B.R. at 372.

64.    Moreover, condoning the Israeli's Trustee's actions of attempting to sell assets of the Debtors could result in bad policy where any future creditor could seek alternative relief through a non-U.S. process, such as the Israeli process, and violate the stay in order to procure assets that were outside the United States.   *See id.* (noting that recognition of a foreign proceeding in such instance would carry "serious ramifications that would ensue in derogation of fundamental United States policies").

65.    Accordingly, the Committee respectfully requests that the Court not condone the extraterritorial sale and dispersal of the Debtors' assets and to direct the Israeli Trustee to comply with the automatic stay and any orders of this Court relating to any sale process for the Debtors' assets.

---

[9] This should not prove controversial, as the Israeli Trustee's United States counsel submitted an objection to the Bidding Procedures Motion stating, among other things, "[t]he Israeli investment fund is willing to serve as the stalking horse bidder in the New Jersey cases."  *See* Dkt. No. 233, ¶6.

**III.     The Parties Should Work Together in the United States to Maximize the Value of the Debtors' Assets and Have a Single, Centralized Sale Process**

66.     Comity, "in the legal sense, is neither a matter of absolute obligation . . . nor of mere courtesy and good will . . . but is the recognition which one nation allows within its territory to the . . . acts of another nation . . . ." *Hilton v. Guyot*, 159 U.S. 113, 163-64 (1895).  It is best understood "as a guide where the issues to be resolved are entangled in international relations." *In re Maxwell Communication Corp.*, 93 F.3d 1036, 1047 (2d Cir. 1996).

67.     Comity is particularly important in cases where simultaneous proceedings are ongoing in different countries, "especially in multi-party cases like bankruptcies, [that] can naturally lead to inconsistencies and conflicts." *In re Maxwell Communication Corp.*, 93 F.3d at 1041.

68.     In response to such naturally occurring inconsistencies, the United Nations Commission on International Trade Law ("UNCITRAL") promulgated the Model Law on Cross-Border Insolvency, which has been adopted by 44 nations in a total of 46 jurisdictions,[10] and provides a comprehensive scheme for recognizing and giving effect to foreign insolvency proceedings.  *In re Toft*, 453 B.R. 186, 189 (Bankr. S.D.N.Y. 2011).

69.     In the United States, the Model Law on Cross-Border Insolvency has been codified under chapter 15 of title 11 of the United States Code ("Chapter 15").  Chapter 15 provides cooperation among proceedings, including the designation of a foreign proceeding as a "main proceeding" or a "non-main proceeding."

70.     While the facts presented here are not typical, this Court can take some guidance from UNCITRAL and Chapter 15 and view the Chapter 11 Cases as akin to the "main proceeding." Consistent with the purposes of UNCITRAL and Chapter 15, this Court can direct

---

[10] One such state is Israel.  Although Israel adopted UNCITRAL's model law in March 2018, it does not go into effect until September 15, 2019.

all parties, foreign and domestic, to work together in cooperative fashion here in the United States.

71.    This is appropriate since these Chapter 11 Cases were filed prior to the initiation of insolvency proceedings in Israel.  As noted earlier, upon the respective petition dates of the six (6) Chapter 11 debtors (including Immune Ltd.), an automatic stay took effect and created estates of the Debtors comprised of all of the Debtors' property, wherever located and by whomever held.[11]

72.    Moreover, allowing two motions that seek substantially the same relief to coexist under different regimes of law will cause considerable confusion to the creditors of the estates, cloud the title of assets that are subject to both sale procedures, and cause the distribution of proceeds to creditors to be shrouded in ambiguity.[12]

73.    Consistent with having an orderly, cooperative process in the United States, the Committee has no objection with this Court communicating with the District Court of Jerusalem about the process to sell assets in the United States to benefit all of the Debtors' creditors.

## **NOTICE**

Notice of this Motion will be given to the following parties: (i) the Debtors' counsel, (ii) the Office of the United States Trustee; (iii) the U.S. Counsel for the Israeli Trustee of Immune Pharmaceutical, Ltd.; and (iv) all parties requesting notice under Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, the Committee respectfully submit that such notice is sufficient under the circumstances and that no other or further notice of this Motion is required.

---

[11] *See* Section I, *supra*.

[12] While the focus of this Motion is on having the sale process for the Debtors' assets flow through this Court, there will also need to be a centralized process for assessing claims and distributing proceeds from asset sales.

4244162

## <u>CONCLUSION</u>

**WHEREFORE**, the Committee respectfully requests that the Court enter the Proposed

Order and award the Committee such other and further relief as the Court deems just and

appropriate.

Dated:  July 15, 2019                          **PORZIO, BROMBERG & NEWMAN, P.C.**

By:    */s/ John S. Mairo*
       John S. Mairo, Esq.
       Robert M. Schechter, Esq.
       Kelly D. Curtin, Esq.
       100 Southgate Parkway
       Morristown, New Jersey 07962
       Telephone: (973) 538-4006
       Email: jsmairo@pbnlaw.com
             rmschechter@pbnlaw.com
             kdcurtin@pbnlaw.com

4244162