UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
Caption in Compliance with D.N.J. LBR 9004-1(b)

Dale E. Barney, Esq.
David N. Crapo, Esq.
GIBBONS P.C.
One Gateway Center
Newark, New Jersey 07102
Telephone: (973) 596-4500
Facsimile: (973) 596-0545
E-mail: dbarney@gibbonslaw.com
    dcrapo@gibbonslaw.com
*Counsel for Discover Growth Fund, LLC*

| | |
|---|---|
| **In re:** | Chapter 11 |
| IMMUNE PHARMACEUTICALS, INC., *et al.*,[1] | Case No. 19-13273 (VFP) |
| | (Jointly Administered) |
| **Debtors.** | Hearing Date: March 12, 2020 at 11:00 a.m. ET<br>Objection Deadline: March 6, 2020 |

## DISCOVER GROWTH FUND, LLC'S OBJECTION TO DEBTORS' MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTORS TO RETAIN MATTHEW SCHWARTZ AND BEDERSON LLP AS CHIEF RESTRUCTURING OFFICER AND GRANTING RELATED RELIEF

Discover Growth Fund, LLC ("Discover"), the senior secured lender to the above-captioned debtors and debtors in possession (collectively, the "Debtors") in these chapter 11 bankruptcy cases (collectively, the "Chapter 11 Cases"), by and through its undersigned counsel, hereby submits this Objection (the "Objection") to Debtors' Motion For Entry of an Order Authorizing the Debtors to Retain Matthew Schwartz and Bederson LLP as Chief Restructuring

---

[1] The "Debtors" in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: Immune Pharmaceutical, Inc. (1431); Immune Pharmaceuticals, Ltd.; Cytovia, Inc. (7805); Immune Oncology Pharmaceuticals, Inc.; Maxim Pharmaceuticals, Inc. (9983); and Immune Pharmaceuticals USA Corp. (9630).

Officer and Granting Other Related Relief [Doc 369] (the "Motion"). In support of this Objection, Discover respectfully represents the following:

## PRELIMINARY STATEMENT

1. On June 12, 2019, Discover filed its Proof of Claim in the Chapter 11 Cases as Claim 37-1 in the amount of $14,848,569, and amended that Proof of Claim on July 16, 2019 as Claim 37-2, and on September 27, 2019 as Claim 37-3 ("Proof of Claim"). Discover's Proof of claim "constitute[s] prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(e). As discussed below, Discover is entitled to adequate protection of its secured claim, pursuant to 11 U.S.C. §363(e), notwithstanding the Debtors' and the Committee's[2] pending adversary proceeding which disputes the Proof of Claim.

2. Once again, as Discover predicted in objecting to the Debtors' Sales Proceeds Motion[3], the Debtors ask the Court to ignore Discover's valid and perfected first priority lien on cash collateral and permit the further use of that cash to now retain and pay Matthew Schwarz and Bederson LLP (together, "Bederson") as Chief Restructuring Officer ("CRO") without adequately protecting Discover's secured interest, or demonstrating that the Debtors need the services of a CRO. For the reasons set forth herein, the Debtors' Motion should be denied.

3. It is undisputed that Discover provided the last $2 million in debt financing to the Debtors that allowed the Debtors to avoid shuttering their sputtering businesses in October 2018. It is indisputable that Discover has a perfected first lien on its collateral, which includes the proceeds of the recent asset sale. The adversary proceeding that disputes Discover's liens was filed as leverage, but the Debtors and the Committee are going to be put to their proofs at trial,

---

[2] The Official Committee of Unsecured Creditors of Immune Pharmaceuticals, Inc., et al. ("Committee")
[3] Debtors' Motion For Entry of an Order Approving Immune Pharmaceuticals, Inc.'s Limited Use of Sale Proceeds from Alexion Transaction Held in the United States in Escrow with Debtors Counsel for Specified Purposes Pursuant to Section 363 of the Bankruptcy Code [Doc 354] (the "Sale Proceeds Motion").

their specious pending summary judgment motions notwithstanding. Discover is confident that, once the facts are aired at a plenary hearing, the Court will determine that Discover's debt claim and lien are valid and enforceable.

4. Discover has a perfected, first-priority security interest and lien on all of the assets of lead Debtor Immune Pharmaceuticals Inc. ("Immune Debtor"), including the $2.930 million remaining cash proceeds of the Immune Debtor's sale of the Anti-Eotaxin Assets to Alexion Pharma International Operations Unlimited Company ("Alexion"). Under that certain "Grant of Security Interest Agreement in United States Patents and Trademarks (IP Security Agreement)" entered into by and between the Immune Debtor and Discover as of October 9, 2018 ("IP Security Agreement") and the other Debt Documents identified below, all of the Anti-Eotaxin Assets were Discover's collateral. A copy of the IP Security Agreement is attached as Exhibit A to the Declaration of John C. Kirkland dated October 10, 2019 and filed in support of Discover's objection to the Anti-Eotaxin Asset sale ("Kirkland Dec. III")[Doc 329-3]. *See also* the Court's Order dated October 21, 2019 authorizing the sale of the Anti-Eotaxin Assets to Alexion, Doc 343 ("Sale Order"), pp. 62-66 for schedule of the Anti-Eotaxin Assets sold.

5. The Sale Order specifically provides that the sale was free and clear of claims and liens

> **with all Claims, Encumbrances, Interests, Liabilities and Liens that represent interests in property, inclusive of those of Discover Growth Fund LLC, to attach to the net proceeds of the Sale Transaction**, in the same amount and order of their priority, with the same validity (or invalidity), force, and effect that they have against the Acquired Assets immediately prior to the Sale Transaction, and subject to any rights, claims, defenses and objections, if any, the Debtors and any other interested parties may possess with respect thereto, in each case immediately before the Closing. For the avoidance of doubt, the Acquired Assets are sold to the Buyer free and clear of any Claims, Encumbrances, Interests, Liabilities and Liens of those of Discover Growth Fund LLC. **Discover Growth Fund LLC may assert any of its Claims, Encumbrances, Interests, Liabilities and Liens against the proceeds of the Sale Transaction wherever located, deposited, escrowed or otherwise held or transferred.**

Sale Order, pp. 17-18 (Emphasis supplied).

6. Discover has asserted and hereby again asserts that its first priority lien on the Immune Debtor's assets attaches to the proceeds of the sale of the Anti-Eotaxin Assets to Alexion, which constitute the "proceeds of the Sale Transaction" referenced in the Sale Order.

7. The Motion is, in essence, another motion to use cash collateral, again with no legitimate proposal or regard for the Debtors' indisputable obligation to provide adequate protection to Discover for that proposed use. The Motion's vague supposition that Bederson's retention will accrete value to the estates and thus provide adequate protection to Discover is pure speculation that does not withstand the slightest scrutiny.

8. While Discover's secured claim is disputed by the Debtors and the Committee by way of adversary proceeding, that dispute is far from resolved. Moreover, that dispute notwithstanding, Discover is entitled to adequate protection of its secured interest in the sale proceeds, pursuant to 11 U.S.C. § 363(e). As Discover already has a lien on the sale proceeds, the Immune Debtor has no other assets with which to provide Discover a replacement lien for the $5,000 per month that the Debtors propose to pay to Bederson.

9. As Discover does not consent to the proposed use of its cash collateral, and the Immune Debtor has no means of providing adequate protection, the Court cannot order this proposed use of cash over Discover's objection. As such, the Motion must be denied.

## JURISDICTION AND VENUE

10. The United States Bankruptcy Court for the District of New Jersey (the "Court") has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* (D.N.J. Sept. 18, 2012). This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

11. The legal bases for the relief requested herein are 11 U.S.C. § 363; Fed. R. Bankr. P. 6004; and Rule 9016-1 of the Local Bankruptcy Rules.

**FACTUAL BACKGROUND**

A. **Procedural Background**

12. On February 17, 2019 (the "Petition Date"), the Immune Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, commencing the above-captioned Chapter 11 Case. The other Debtors filed the balance of the Chapter 11 Cases thereafter. The Debtor is operating its business and/or managing its properties as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

13. No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases. The United States Trustee for Region 3 appointed the Committee effective March 14, 2019.

14. The Debtor is a New Jersey-based clinical stage biopharmaceutical company specializing in the development of "novel targeted therapeutic agents" in the fields of inflammation, dermatology and oncology.

15. Discover is the Debtor's senior secured lender, pursuant to the terms of a $5,500,000.00 face amount Senior Secured Redeemable Convertible Debenture (the "Debenture") issued to Discover on October 9, 2018 and the Securities Purchase Agreement dated October 9, 2018 (the "Agreement"), pursuant to which it was issued (the Debenture, the Agreement and the IP Security Agreement, together with related documents, the "Debt Documents").

B. **Pertinent Provisions of the Debt Documents**

16. Discover respectfully refers the Court to the Declaration of John C. Kirkland in Support of Motion of Discover Growth Fund, LLC for Relief from the Automatic Stay dated

5

February 25, 2019 ("Kirkland Dec.")[4] and filed in the Chapter 11 Cases as Doc 11-3 in support of this Objection. The Debenture is attached to the Kirkland Dec. as Exhibit A, and the Agreement is attached to the Kirkland Dec. as Exhibit B. Kirkland Dec., ¶ 3. The Kirkland Dec. describes the terms of the Debt Documents, the genesis of the transaction between the parties, amounts due under the Debt Documents, and the Debtor's defaults thereunder. Those factual recitations are incorporated herein and supplemented below and in the Declaration of John C. Kirkland dated March 22, 2019 filed in the Chapter 11 Cases as Doc 77-1 ("Kirkland Dec. II").

17. Exhibit 1 to the Agreement defines Discover's Collateral, in part, as follows: "'Collateral' means all assets of the Company, including without limitation all personal property wherever located, both now owned and hereafter acquired, including, but not limited to, all … general intangibles, … license agreements …, patents, … ***and all proceeds*** … of the foregoing…. Discover's liens were perfected by the filing of UCC-1 statements in New Jersey and Delaware, where the Immune Debtor represented it had its principal place of business and was incorporated, respectively. Discover also filed the IP Security Agreement with the United States Patent and Trademark Office. Kirkland Dec., ¶ 18, Exhibits J, K and L.

18. The IP Security Agreement lists certain of the patents and related assets that the Immune Debtor pledged to Discover to secure the debt under the Debenture. Kirkland Dec. III, Exhibit A, pp. 3-9.

19. Section V.C(d) of the Agreement provides, in part, as follows:

Representations and Warranties. Company represents, warrants and covenants to Investor that: (a) Company has good, marketable and indefeasible title to the Collateral, except as disclosed in the Disclosure Schedules, has not made any prior sale, pledge, encumbrance, assignment or other disposition of any of the Collateral, and except as disclosed in the Disclosure Schedules, the Collateral is free from all encumbrances and rights of setoff of any kind except the lien in favor of Investor created by this Agreement; . . . and (d) Exhibit 9 [IP Security Agreement] attached hereto contains a true, complete, and

---

[4] Capitalized terms used herein shall have the meaning ascribed in the Kirkland Dec. unless otherwise defined.

current listing of all patents, trademarks, tradestyles, copyrights, and other intellectual property rights (including all registrations and applications therefor) owned by Company as of the date hereof that are registered with any governmental authority. . . .

20. A comparison of the Intellectual Property assets sold under the Sale Order to the list of Collateral pledged under the IP Security Agreement demonstrates that all but one of the assets that were sold to Alexion, identified as "PC Ref No. P-F&W Ref No: 35171-40996/US – Patent Application Filed by Fenwick and West for Immune and Medimmune," ("Fenwick West Asset") Doc 343, pp. 62-66, was pledged by the Immune Debtor to Discover under the IP Security Agreement as the "Bertilimumab Patent Family." Kirkland Dec. III, Exhibit A, pp. 5-7.[5] The Fenwick West Asset was pledged as Collateral under the Agreement: "'Collateral' means all assets of the Company . . . ." The Immune Debtor pledged all of the Collateral to Discover under the foregoing representation that the Immune Debtor had good and indefeasible title to the assets.

### C. Calculation of Discover's Claim

21. As a result of the Debtor's Events of Default and Discover's acceleration of all amounts due under the Debt Documents, the Debtor is indebted to Discover in the principal amount or Face Amount of $5,499,470. Kirkland Dec., ¶ 39, ¶ 50. Through February 25, 2019, accrued interest is $670,182, for total principal and interest of $6,169,652 before additional interest.

22. The Debenture provides a mechanism whereby Discover will immediately receive the full amount of principal and interest due for the five-year term of the Debenture upon the occurrence of any contractually-defined Deemed Liquidation Event. Kirkland Dec., ¶ 51. Accordingly, under the "Mandatory Redemption" provision of the Debenture, Discover is immediately entitled to be paid the "Early Redemption Price" in cash. Debenture, Exhibit A to

---

[5] The IP Security Agreement lists additional Collateral.

Kirkland Dec., p. 4, Section I.F. The Early Redemption Price is $14,848,569. *See* Kirkland Dec. II, ¶ 11.

23. While the Debtors and the Committee have initiated an adversary proceeding objecting to Discover's secured claim, Discover is unquestionably a party in interest entitled to (i) object to the proposed use of cash collateral and (ii) adequate protection.

### RELIEF REQUESTED AND REASONS THEREFOR

### DISCOVER'S OBJECTION TO THE MOTION – APPLICABLE STANDARD AND ARGUMENT

A.   **Introduction.**

24. Discover submits that the Immune Debtor cannot provide adequate protection for the diminution in the value of Discover's cash collateral that will be occasioned by the proposed payments to Bederson. Thus, the Immune Debtor cannot satisfy the requirements of 11 U.S.C. § 363(e), and has not demonstrated a true need for the retention of yet another estate professional in a case where administrative expenses have exploded far beyond what is merited by the husks of these Chapter 11 Cases, so that the Motion should be denied.

25. The Motion acknowledges a debtor's obligation to propose adequate protection to a secured creditor such as Discover, but then fails to actually propose any adequate protection. *See* Motion, Doc 369-1, pp. 6-7. The reason for this failure is plain: the Immune Debtor has no unencumbered assets with which to provide protection for the proposed diminution of Discover's cash collateral. The Motion claims obliquely that "the value of the services to be provided by the CRO to the estates adequately protects Discover's interest, citing *In re Swedeland Development Group, Inc.,* 16 F. 3d 553,564 (3d Cir. 1994), but does not specify what that value is beyond a boilerplate recitation of routing tasks of CROs. Motion, Doc 369-1, pp. 6-7. The reason is clear: the Debtors cannot articulate what the claimed value is.

8

26. As demonstrated above, Discover holds a perfected, first-priority security interest and lien on, *inter alia*, all of proceeds of the Anti-Eotaxin Asset sale. On June 19, 2019, July 16, 2019 and September 27, 2019, respectively, Discover filed an initial and two amended proofs of claim against the Immune Debtor, i.e. the Proof of Claim. *See* Claims No. 37-1, 37-2 and 37-3 filed against the Immune Debtor. By doing so, Discover presented *prima facie* evidence as to the validity and amount of its secured claim against the Immune Debtor. Fed. R. Bankr. P. 3001(f). Discover's Proof of Claim has not been disallowed, reduced or expunged.

**B.    The Motion's False Allegations On Subordination and Lien Limitation.**

27. The Debtors tacitly acknowledges Discover's lien on the Anti-Eotaxin Asset sale proceeds by acknowledging that Discover is entitled to adequate protection. Motion, Doc 369-1, pp. 6-7  The Debtors contend that the lien is subject to a *bona fide* dispute. On July 1, 2019, the Debtors and the Committee filed a complaint against Discover seeking, *inter alia*, to determine the validity and extent of Discover's liens in the adversary proceeding entitled *Immune Pharmaceuticals, Inc. et al. v. Discover Growth Fund, LLC* and numbered 19-02033-VFP ("Adversary Proceeding"). Adv. Proc. No. 19-02033 Docket No. 1. Discover has answered the complaint, vigorously contesting the claims made in the Adversary Proceeding.

28. As to the alleged subordination clause and lien limitation clause referenced in ¶ 17 of the Motion, Doc 369-1, p. 61, those provisions, when read fully and fairly, do not effect the subordination or limitation claimed by the Debtors and the Committee. First, the Debtors' references to those provisions misrepresent the provisions by omission, as set forth at length in the Declaration of John C. Kirkland, etc. dated February 12, 2020 [Doc9-3 in Adv. Pro. No. 19-02033] ("Kirkland SJ Dec.") and filed in support of Discover's opposition to the first of the Debtors' and the Committee's two pending summary judgment motions.

9

29. The quoted part of the supposed subordination provision, which is in Section I.E.1 of the Debenture, is immediately followed by: "prior to any distribution or payment made to any other creditors or the holders of any Preferred Stock or Common Stock by reason of their ownership thereof, the Holders of this Debenture [i.e. Discover] will be entitled to be paid out of the assets of the Corporation."

30. This provision does not provide that Discover's claim is subordinate to other debts as the Debtors and the Committee misstate. Rather, it is at most internally inconsistent, providing both that Discover's claims will be paid before and after claims of other creditors. That inconsistency can only be resolved by looking to the entirety of the Debt Documents, taken as a whole.[6] Provisions of contracts must be "read as a whole, without artificial emphasis on one section, with a consequent disregard for others." *Borough of Princeton v. Bd. of Chosen Freeholders of Mercer*, 333 N.J. Super. 310, 325 (App. Div. 2000), aff'd, 169 N.J. 135 (2001). "Literalism must give way to context." *Id.* Contract interpretation must take into account "the contractual scheme as a whole," *Republic Bus. Credit Corp. v. Camhe-Marcille*, 381 N.J. Super. 563, 569 (App. Div. 2005) (quoting *Newark Publishers' Ass'n v. Newark Typographical Union*, 22 N.J. 419, 426 (1956)). The Court must determine "the objects the parties were striving to attain." *Celanese Ltd. v. Essex Cnty. Imp. Auth.*, 404 N.J. Super. 514, 528 (App. Div. 2009). The District

---

[6] A September 19, 2018 email from Kirkland to Anthony Fiorino (Exhibit 7 to the Kirkland SJ Dec.,), attached a redline of the Agreement (which includes the Debenture and other documents). Kirkland SJ Dec., ¶ 57. The changes make clear that Discover, as Holder of the Debenture, will be paid "prior to" any payment to "any other creditors", and the Debtors' and the Committee's interpretation requires the Court to disregard the entire security structure and priority scheme set forth in the Debt Documents. Any ambiguity requires a review of the contracts taken as a whole. Kirkland SJ Dec., ¶ 58-62. The Debt Documents expressly and repeatedly evidence a mutual intent to grant to Discover a first-priority security interest and lien to secure repayment of Immune's obligations prior to claims of other creditors. Kirkland SJ Dec., ¶ 61. "The contractual scheme as a whole" makes clear that the parties' object was to make Discover the Immune Debtor's senior secured lender. *Republic Bus. Credit Corp. v. Camhe-Marcille*, 381 N.J. Super. at 569. Why would this secured creditor provide that its claims would be subordinate to other creditors when it took pains to obtain a first lien on all assets of its borrower? The answer is simple – it would not, and did not. Kirkland SJ Dec., ¶ 63.

Court of the U.S. Virgin Islands is in accord. "A cardinal principle governing the construction of contracts is that the entire contract must be considered and, as between possible interpretations of ambiguous provisions, that will be chosen which best accords with the sense of the remainder of the contract. A written contract is to be construed so as to give effect to all its parts, and any construction which would render the agreement meaningless should be avoided." *Pan Am. Realty Trust v. Twenty One Kings, Inc.*, 6 V.I. 332, 343 (D.V.I. 1968)(citations omitted)(applying New York law).

31. The Debtors' and the Committee's arguments that the Debt Documents somehow limit Discover's lien to $250,00 are even more ludicrous and are so disingenuous as to smack of bad faith.

32. The provision in issue is set forth in the Agreement's Section III, entitled "Representations and Warranties," and its subsection A.3, which provides in pertinent part:

> A. **Representations Regarding Transaction**. Except as set forth under the corresponding section of the Disclosure Schedules, if any, Company [Immune] hereby represents and warrants to, and as applicable covenants with, Investor [Discover] as of the Closing: . . .
>
> 3. **No Conflicts**. The execution, delivery and performance of the Transaction Documents [Debt Documents] by Company, the issuance and sale of the Securities and the consummation by the Company of the other transactions contemplated thereby do not and will not . . . (b) after giving effect to the Waiver Agreements, conflict with, or constitute a default (or an event that with notice or lapse of time or both would become a default) under, result in the creation of any Lien upon any of the properties or assets of Company or any Subsidiary, or give **to others** any rights of termination, amendment, acceleration or cancellation (with or without notice, lapse of time or both) of, any material agreement, credit facility, debt or other instrument (evidencing Company or Subsidiary debt or otherwise) or other understanding to which Company or any Subsidiary is a party or by which any property or asset of Company or any Subsidiary is bound or affected . . . .

Kirkland SJ Dec., ¶ 68.[7]

---

1. [7] The Agreement's Exhibit 1, entitled "Glossary of Defined Terms", p. 5 ("Glossary"), defines "Waiver Agreements" as "the Waiver and Amendment Agreements, dated October 5, 2018, by and between Company

11

33. Immune never delivered copies of the Waiver Agreements, but Kirkland understood from conversations with Fiorino that he obtained the same from the holders of the May Debentures, which Kirkland understood to be the Original Issuance Discount Debentures identified in the Glossary. Fiorino advised Kirkland that Immune's entry into the Debt Documents would constitute a default under the May Debentures, so that Immune needed the Waiver Agreements, which were to provide that Immune's entry into the Debt Documents would not be a default under the May Debentures. Kirkland SJ Dec., ¶ 70.

34. As such, the alleged lien limitation was intended to provide that, once the Waiver Agreements were executed by the holders of the May Debentures, Immune's execution of the Debt Documents would not result in a default under or create any liens in favor of the holders of the May Debentures, or any other third parties. Kirkland SJ Dec., ¶ 71.

35. In any event, these issues are not before the Court on the Motion – the issue of subordination is a central theses of the Adversary Proceeding, and can only be resolved in that context under Fed. R. Bankr. P. 7001 (2) and (8), and the inclusion of the alleged subordination language in the Motion is purely gratuitous.[8]

36. The Debtors' and the Committee's claims disputing Discover's liens are far from resolved. This Court is not required to resolve this dispute concerning Discover's perfected liens in the context of the Motion. *In re Gaylord Grain, LLC*, 306 B.R. 624, 627 (8th Cir. B.A.P. 2004). Those claims can only be resolved through the Adversary Proceeding. *See* Fed. R. Bankr. P. 7001(1), (2) and (8) of the (actions to (i) recover money or property; (ii) determine the validity,

---

and the required number of holders of Company's Original Issuance Discount Debentures." The Glossary defines "Liens" as "a lien, charge, security interest or encumbrance in excess of $250,000, or a right of first refusal, preemptive right or other restriction." Kirkland SJ Dec., ¶ 69.

[8] Discover reserves all claims and defenses with respect to this issue in the Adversary Proceeding or otherwise.

12

extent or priority of a lien; or (iii) subordinate a claim must be resolved via adversary proceeding). Absent an adverse ruling in the Adversary Proceeding, Discover remains a secured creditor of the Immune Debtor. *See, e.g., In re Heritage Highgate, Inc.*, 679 F.3d 132, 140 (3d Cir. 2012) (recognizing that a secured creditor's proof of claim establishes prima facie evidence of the validity and amount of the secured claim).

        **C.**        **The Debtors' Cannot Provide Adequate Protection, and Do Not Need – Nor Can Afford – Another Professional.**

        37.        Upon request by a secured creditor like Discover "at any time", a bankruptcy court "***shall*** prohibit or condition" the sale of property of the bankruptcy estate "as is necessary to provide adequate protection of [the secured creditor's] interest" in that property. 11 U.S.C. § 363(e) (emphasis added). That requirement exists "[n]otwithstanding any other provision of this section," such as a bona fide dispute of Discover's claim such as alleged by the Immune Debtor here. 11 U.S.C. §§ 363(e) and (f)(4). In connection with the sale of assets of a bankruptcy estate, the Bankruptcy Code authorizes three forms of adequate protection:

        (i)        periodic payments to the extent that the proposed sale results in a decrease in the value of the secured creditor's interest in its collateral;

        (ii)        additional or replacement liens; and

        (iii)        such other relief that will provide the secured creditor with the indubitable equivalent of its interest in its collateral.

11 U.S.C. § 361.

        38.        It cannot be disputed that the value of Discover's security interest in the Anti-Eotaxin Asset proceeds will be eroded if the proposed payments to Bederson are made. Given the posture of this case, with the Teper/Vector group failing to close on the Ceplene transaction and the Debtors being forced to expatriate 50% of the Alexion sale proceeds to Israel, the $2.930 million held by the Immune Debtor may be the only asset from which to satisfy Discover's secured

claim once it is allowed by this Court. The Motion proposes to use cash collateral for payment of the fees of Bederson, without adequately protecting Discover's interest, which is impermissible.

39. In the context of DIP financing, the Third Circuit has made clear that adequate protection "should as nearly as possible under the circumstances of the case provide the creditor with the value of his bargained for rights. ... In other words, the proposal should provide the pre-petition secured creditor with the same level of protection it would have had if there had not been post-petition superpriority financing." *In re Swedeland Development Group, Inc.*, 16 F.3d 552, 564 (3d Cir. 1994) (en banc) (internal quotations omitted). The Immune Debtor has no ability to provide Discover "with the same level of protection" of its secured interest that the $25,000 cash that is proposed to be disbursed provides.

40. *In re Nice*, 355 B.R. 554, 563 (Bankr. N.D. Va. 2006), underscores Discover's crucial need for adequate protection in this case. In *Nice,* the court held that "adequate protection is solely a function of preserving the value of the creditor's secured claim as of the petition date due to the debtor's continued use of the collateral." *Id.*, at 563. Here, the Debtor proposes to use the proceeds of the Alexion sale to pay Bederson's fees. However, the Debtor has no other funds in the estate that are not already Discover's cash collateral, and has failed to demonstrate the value of its remaining assets. Indeed, the Debtor still has been unable to close the sale of the Ceplene® assets.

41. Discover's claim greatly exceeds the $3 million in cash the Debtor has on hand. It is indisputable that the Debtor's proposed use of the proceeds of the Alexion sale will significantly erode Discover's interest in those proceeds. Moreover, as Discover stated in its opposition to the Debtors' motion to use its cash collateral to pay Gary Rabin's salary, the Motion's proposal to use cash collateral without adequate protection proves out Discover's fears

2767760.1 115785-100485

that the motion to pay Mr. Rabin's salary was only the beginning of the death of Discover's cash collateral by 1,000 cuts.

42. The Motion speculates that the proposed use of cash will "generate additional value that inures the benefit [sic] of the estate as a whole (including the secured creditor, or protect against the destruction of value, which would be harmful to the secured creditor." Motion, Doc 369-1, ¶ 20, quoting *In re Mt. Olive Hosp., LLC*, No CIV. 13-3395 RBK, 2014 WL 130933, at *4 (D.N.J. Mar. 31, 2014). However, the Debtor utterly fails to identify any value that will accrete as a result of Bederson's retention.

43. The Debtors' latest far-fetched scheme appears to be a plan to trade the Debtor's remaining illiquid assets to one or more likewise illiquid "Newcos" in exchange for penny stocks in what may well become the next debtors in this ongoing saga. How Bederson is instrumental in that process is left unaddressed in the Motion. This chapter 11 case is at a dead end and should be converted, and should have never been a chapter 11 in the first place. A chapter 7 trustee can efficiently resolve the remaining issues in this case, inclusive of resolving Discover's legitimate secured claim, at far less expense than the current regime. The last thing that these Debtors need is another professional.

44. Finally, the Motion argues that the Debtor needs a CRO to prepare monthly operating reports, monetize remaining assets, analyze creditor recoveries, and propose a chapter 11 plan. Motion, Doc 369-1, ¶ 21. The Debtors' MORs do not need to be prepared by a CPA, as they are exactly the same from month to month, showing no activity other than Norris McLaughlin's escrow of the remaining Alexion proceeds.

45. As discussed above, the Debtors' "plan" for "monetizing remaining assets" appears to be a desperate ploy to donate the same to as-yet unidentified entities in exchange for

15

illiquid and likely worthless stock. The Immune Debtors claim to have been marketing its remaining assets, which are Discover's collateral, for over a year, and have yet to receive any purchase offers. Bederson is an accounting firm and a financial advisor, but the Motion provides no evidence that Bederson has expertise in marketing assets to the specialized niche of microcap pharmaceutical companies. Piling on additional administrative expenses does nothing to accrete value to these estates.

46. As to creditor recoveries, after payment of Discover's secured claim, there will be none, so the Debtor does not need a CPA to perform an analysis. Finally, the proposition that the Debtors are going to propose a chapter 11 plan is ludicrous. These cases are dead in the water and should be converted.

47. It is undisputed that Discover is entitled to adequate protection of its security interest. 11 U.S.C. §§ 361, 363(e). However, outside of the sale proceeds on which Discover already has a lien by operation of the Sale Order, the Debtors lack any other assets which are not already Discover's Collateral with which to provide a replacement lien or from which to make any payments to Discover pursuant to 11 U.S.C. §§ 361(1), to compensate Discover for the anticipated erosion to its collateral. Similarly, because Discover holds a lien on all of its assets, the Immune Debtor lacks free assets with which to provide Discover substitute collateral as provided by 11 U.S.C. § 361(2).

48. The Debtors must, therefore, provide some other form of adequate protection to compensate Discover for the erosion of its Collateral. They must provide Discover with the indubitable equivalent of its liens. 11 U.S.C. § 361(3). Under the circumstances of this case, there is no source from which such an indubitable equivalent can come. As the Immune Debtor is

2767760.1 115785-100485

incapable of adequately protecting Discover's interests, and the Debtors neither need nor can afford another professional, the Motion must be denied.

## MEMORANDUM OF LAW

49. The rules and statutory provisions that constitute the basis for this Objection, the legal authorities that support the relief requested, and the factual grounds for the relief requested are all included and/or cited herein. Accordingly, Discover submits that no separate memorandum of law is necessary or required.

## NOTICE

50. Notice of this Objection is being provided to counsel for the Debtor, the Committee and other parties in interest entitled to receive notice in connection with these Chapter 11 Cases. Discover submits that no other or further notice is required under the circumstances.

## NO PRIOR REQUEST

51. No prior motion for the relief requested herein has been made to this or any other court.

## CONCLUSION

**WHEREFORE**, Discover respectfully requests that this Court enter an order (i) denying the Motion and (ii) granting such other further relief as is just and proper under the circumstances.

Dated: March 5, 2020                                Respectfully submitted,

                                                                            **GIBBONS P.C.**

                                                                            By: /s/ Dale E. Barney
                                                                            Dale E. Barney
                                                                            David N. Crapo
                                                                            One Gateway Center

17

2767760.1 115785-100485

Newark, New Jersey 07102-5310
Tel:	(973) 596-7474
Fax:	(973) 639-6244
dbarney@gibbonslaw.com
dcrapo@gibbonslaw.com

*Counsel for Discover Growth Fund, LLC*

18