| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY<br>**Caption in Compliance with D.N.J. LBR 9004-1(b)**<br>**PORZIO, BROMBERG & NEWMAN, P.C.**<br>100 Southgate Parkway<br>P.O. Box 1997<br>Morristown, New Jersey 07962<br>(973) 538-4006<br>(973) 538-5146 Facsimile<br>John S. Mairo, Esq. (jsmairo@pbnlaw.com)<br>Robert M. Schechter, Esq. (rmschechter@pbnlaw.com)<br>Kelly D. Curtin, Esq. (kdcurtin@pbnlaw.com)<br><br>*Counsel for the Official Committee of Unsecured Creditors* | |
| In re:<br><br>IMMUNE PHARMACEUTICALS INC., *et al.*,[1]<br><br>Debtors. | Chapter: 11<br><br>Case No.: 19-13273 (VFP)<br><br>(Jointly Administered) |

**SUPPLEMENTAL OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO THE MOTION OF DISCOVER GROWTH FUND, LLC TO CONVERT PURSUANT TO 11 U.S.C. § 1112(b) AND STATEMENT IN SUPPORT OF CONTINUING THE DEBTORS' EXCLUSIVITY PERIODS**

The official committee of unsecured creditors (the "Committee") appointed in the chapter 11 bankruptcy cases (the "Chapter 11 Cases") of the above-captioned debtors and debtors-in-possession (the "Debtors") hereby submits this: (1) supplemental objection (the "Supplemental Objection") to the motion [Dkt. No. 184] (the "Motion") by Discover Growth Fund, LLC ("Discover Growth") to convert these cases to chapter 7 pursuant to 11 U.S.C. § 1112(b);[2] and (2) statement in support of continuing the Debtors' exclusivity periods (the "Exclusivity

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: Immune Pharmaceuticals, Inc. (1431); Immune Pharmaceuticals, Ltd.; Cytovia, Inc. (7805); Immune Oncology Pharmaceuticals, Inc.; Maxim Pharmaceuticals, Inc. (9983); and Immune Pharmaceuticals USA Corp. (9630).
[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

4438022

Statement", together with the Supplemental Objection, the "Committee's Supplemental Pleading"). In support of the Committee's Supplemental Pleading, the Committee incorporates in full its initial objection (the "Initial Objection") dated June 25, 2019 [Dkt. No. 208] and respectfully states as follows:

**PRELIMINARY STATEMENT**

1. Between battling Discover Growth, managing crises in Israel (including rogue actions by the initial trustee) and other unfortunate and tragic occurrences in this case, including the passing of the Debtors' Chief Executive Officer, Mr. Gary Rabin, the Debtors, the Committee and the estates' professionals have been through the gauntlet in these cases. All the while, Discover Growth, an equity investor whose claims arise from a Securities Purchase Agreement, has continued to utilize the threat of conversion as a litigation tactic in its attempt to pelt the Debtors and the Committee into submission. The Debtors and the Committee resist those efforts and persevere because the relief sought in the Motion hurts all parties in interest, including the Debtors' administrative and unsecured creditors.[3] These cases cannot be converted for the benefit of Discover Growth, which represented in the document (Securities Purchase Agreement) giving rise to its claims that it was an experienced investor which understood the economic risk it was taking on with its "Securities" investment and that it could afford a "complete loss" of its "Securities" investment:

> **Experience of Investor**. Investor, either alone or together with its representatives, has such knowledge, sophistication, and experience in business and financial matters so as to be capable of evaluating the merits and risks of the prospective investment in the Securities, and has so evaluated the merits and risks of such investment. **Investor is able**

---

[3] Indeed, at this point, the estates' professionals' investment in the Debtors' cases likely exceeds Discover Growth's purported $2 million investment in the Debtors, which as this Court is aware, the Debtors and the Committee assert is an equity investment in the first instance, and subject to subordination in any event. *See* Dkt. Nos. 380 & 381 (fee applications on account of some of the Debtors' professionals totaling $921,648.98); *See* Dkt. Nos. 382 & 383 (fee applications on account of some of the Committee's professionals totaling $906,838.17).

4438022

**to bear the economic risk of an investment in the Securities and, at the present time, is able to afford a complete loss of such investment.**

Securities Purchase Agreement, III.C.3. (emphasis added).

2.   As this Court is aware, the Debtors, with the assistance of the Committee, have successfully achieved the herculean task of gaining sufficient cooperation in Israel to sell the Debtors' anti-eotaxin assets, which has resulted in $6 million for the benefit of the Debtors' estates that did not exist when Discover Growth's Motion was filed. It must not be forgotten that Discover Growth did nothing positive to advance the anti-eotaxin assets sale or encourage competitive bidding; instead, Discover Growth tried to destroy these cases by filing the Motion and supporting the notion that the Debtors' license with iCo had been terminated. *See* Motion, ¶ 34 (Discover Growth alleging that "Debtors have lost the [iCo] license for an integral component of their other potentially valuable asset, the Bertilimumab antibody"); note: the "lost" iCo license was assumed and assigned to Alexion in connection with the sale. So, despite Discover Growth's destructive actions, the Debtors and the Committee were able to close the anti-eotaxin assets sale and continue to work diligently together to extract value from the Debtors' remaining assets, including Ceplene, Azixn, Amiket, and Lidopain. Options to monetize the Debtors' net operating losses and/or the Immune Pharmaceutical, Inc.'s public shell have also been explored. As is more thoroughly set forth in the Debtors' supplemental opposition to Discover Growth's motion to convert, the Debtors and the Committee have recently been engaged in discussions regarding the sale of these assets for cash consideration as well as shares. Given the cross-border, pharma-regulatory and public company issues present in these cases, monetization of these assets have proven complex. And while it is abundantly apparent that Discover Growth, the experienced equity investor that understood the risk of its "Securities" investment and represented it could afford a "complete loss" of its "Securities" investment, views conversion as its opportunity to

abscond with the hard-fought value created in these cases by the Debtors and the Committee, a trustee that is unfamiliar with the Debtors' assets and Discover Growth's bad acts, will only serve to prevent (and not encourage) further monetization of the Debtors' assets.

3. The more appropriate course is to permit the Debtors' chapter 11 cases to continue and to extend the Debtors' exclusive periods. This will allow the discussions with potential purchasers and partners, which are more apt to, and may only be able to, purchase assets and/or the public shell in a chapter 11 proceeding. More importantly, it will allow for a disclosure statement and plan process that provides a pathway for recovery for the Debtors' creditors through the creation of a creditors' trust to pursue and administer (i) avoidance actions, (ii) actions against directors and officers, (iii) sale proceeds (including from the money held by Israel) and (iv) shares to potentially be distributed in a reorganized, new or merged entity.

4. Finally, as was stated in the Initial Objection, Discover Growth's allegations of bad faith are completely meritless. The Debtors have multiple assets and unsecured creditors. This is not a two party dispute that may be resolved through a pending foreclosure. The timing of the bankruptcy filings reveals only that the Debtors were acting to preserve value for all parties-in-interest in the face of an imminent foreclosure by Discover Growth (with only ten days' notice). As to cash flow, the Debtors, like all developmental stage pharmaceutical companies, do not generate income insofar as the products are in trials and not yet approved and the Debtors' operations remain effectively paused pending these cases.

5. For these and other reasons set forth herein and in the Initial Objection, the Court should deny Discover Growth's Motion and extend the Debtors' exclusivity periods.

## JURISDICTION

6. This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

7. The statutory predicate for the relief sought is section 1112(b) of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*. (the "Bankruptcy Code").

## BACKGROUND

**Case Background**

8. On February 17, 2019 (the "Inc. Petition Date"), Immune Pharmaceuticals, Inc. "Immune Inc.") filed a voluntary petition under chapter 11 of the Bankruptcy Code, commencing its chapter 11 case.

9. On February 22, 2019 (the "Ltd. Petition Date"), Immune Pharmaceuticals, Ltd. ("Immune Ltd.") filed a voluntary petition under chapter 11 of the Bankruptcy Code, commencing its chapter 11 case.

10. On February 26, 2019 (the "Subsidiaries Petition Date"), Cytovia, Inc., Maxim Pharmaceuticals, Inc., Immune Pharmaceuticals USA Corp., and Immune Oncology Pharmaceuticals, Inc. (collectively, the "Subsidiaries"), each filed a voluntary petition under chapter 11 of the Bankruptcy Code, commencing their chapter 11 cases.

11. The Debtors continue to operate their business and manage their property as debtors-in-possession under sections 1107 and 1108 of the Bankruptcy Code.

12. The Committee was appointed for the Debtors' unsecured creditors on March 14, 2019. Neither a trustee nor an examiner has been appointed.

4438022

**Discover Growth's Claim Arising from a Securities Purchase Agreement**

13. On June 12, 2019, and further amended on July 16, 2019 and September 27, 2019, Discover Growth filed a proof of claim, Claim No. 37 in the amount of $14,848,569.00 against Immune Pharmaceuticals Inc., *et al.* alleging damages arising out of a Securities Purchase Agreement (defined below).[4]

14. On October 9, 2018, Discover Growth entered into a Securities Purchase Agreement (the "Securities Purchase Agreement") with Immune Inc., pursuant to which Discover Growth was issued a $5,500,000.00 face amount Senior Secured Redeemable Convertible Debenture (the "Debenture") in exchange for $2 million in cash and a $3 million promissory note (the "Note").

15. Discover Growth has only paid $2 million and has not satisfied the $3 million Note.

16. Throughout the Securities Purchase Agreement, Discover Growth was referred to as "Investor." *See* Stay Relief Motion at Kirkland Declaration, Exhibit B. In the Securities Purchase Agreement, Discover Growth represented:

> **Experience of Investor**. Investor, either alone or together with its representatives, has such knowledge, sophistication, and experience in business and financial matters so as to be capable of evaluating the merits and risks of the prospective investment in the Securities, and has so evaluated the merits and risks of such investment. Investor is able to bear the economic risk of an investment in the Securities and, at the present time, is able to afford a complete loss of such investment.

*See* Stay Relief Motion at Kirkland Declaration, Exhibit B, §III.C.3. The Securities Purchase Agreement defined the term "Securities" as including "the Debenture, the Warrant, the

---

[4] Discover Growth is listed in the Immune Inc.'s schedules of liabilities as having a disputed, unliquidated and contingent claim against Immune Inc. See Immune Inc. Schedules, Case No. 19-13272 [Dkt. No. 62], Schedule D (listing Discover Growth as holding a disputed, unliquidated and contingent claim in the amount of $0.00).

Conversion Shares and the Warrant Shares." *See* Stay Relief Motion, at Kirkland Declaration, Exhibit B at Exhibit 1.

**Discover Growth's Stay Relief Motion**

17. On February 25, 2019, eight days after the Inc. Petition Date, Discover Growth filed a motion for relief from the automatic stay [Dkt. No. 11] (the "Stay Relief Motion") asserting, among other things, that the Debtors had breached their obligations under the Securities Purchase Agreement and that Discover Growth was owed (i) over $6 million for the face amount due on the Debenture, (ii) nearly $15 million for the "Early Redemption Price" and (iii) nearly $325 million for monetary damages for the Debtors' purported breaches. *See* Stay Relief Motion, Exhibit 2.

18. The Stay Relief Motion was opposed by the Debtors and the Committee, which argued, among other things, that the extent, nature and validity of any of Discover Growth's claims (if any) have not been determined, and that even if Discover Growth can prove its claim, any such claim must be subordinated. *See* Dkt. Nos. 67 & 68.

**Adversary Proceeding Against Discover Growth**

19. On July 1, 2019, the Debtors and the Committed filed an adversary complaint against Discover [Case No. 19-02033 (VFP), Dkt. No. 1] (the "Complaint").

20. On August 2, 2019, Discover filed an answer to the Complaint [Case No. 19-02033 (FP), Dkt. No. 4].

21. On January 29, 2020, the Debtors and Committee filed a motion for summary judgment [Dkt. No. 7], such motion was denied.

22. On February 27, 2020, the Debtors and the Committee filed a second motion for summary judgment [Dkt. No. 13], which is set to be heard on April 1, 2020.

4438022

23. Fact discovery is scheduled to close on March 31, 2020 [Dkt. No. 14].

**The Motion**

24. On June 5, 2019, less than four months after the Petition Date, Discover Growth filed the Motion.

25. The Committee's Initial Objection and the Debtors' initial objection to the Motion were filed on June 25, 2020 [Dkt. Nos. 206 & 208].

26. The Motion was adjourned multiple times and no dates for supplemental briefing were scheduled.

27. In the meantime, on October 21, 2019, this Court entered an order (i) authorizing the sale of the Debtors' anti-eotaxin assets to Alexion Pharma International Operations Unlimited Company ("Alexion") free and clear of all liens, claims, encumbrances and interests, (ii) approving the Alexion asset purchase agreement, and (iii) authorizing the Debtors to assume and assign certain executory contracts and unexpired leases and other related relief [Dkt. No. 343].

28. Shortly prior to the most recent date on which the Motion was set to be heard, the Debtors' counsel wrote to the Court on March 18, 2020 indicating, among other things, that the parties have not submitted any other pleadings on the Motion since the Motion was filed on June 5, 2020 and that no additional briefing schedule was provided, and asking how the Court would like to address the matter.

29. The next day, on March 19, 2020, the Court ordered that any supplemental opposition to the Motion be due on March 24, 2020 and that any reply in support of the Motion be due by March 27 or 30, 2020 (at Discover Growth's option).

4438022

**ARGUMENT**

**I.     Discover Growth Has Not Established That There Is Cause To Convert The Cases.**

30.     Pursuant to 11 U.S.C. § 1112(b)(1), "on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause . . . ."  As for "cause," the Motion argues that the Debtors' bankruptcy cases were filed in bad faith.  Citing *C—TC 9th Ave*, 113 F.3d 1304 (2d Cir. 1997), Discover Growth reviews a variety of factors that it alleges compel the conclusion that the Debtors' petitions were filed in bad faith.  Specifically, Discover Growth alleges in the Motion that:

> (1) the debtor has only one asset; (2) the debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors; (3) the debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt; (4) the debtor's financial condition is, in essence, a two party dispute between the debtor and secured creditors which can be resolved in a pending state foreclosure action; (5) the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights; (6) the debtor has little or no cash flow; (7) the debtor can't meet current expenses including the payment of personal property and real estate taxes; and (8) the debtor has no employees.

*See* Motion at ¶ 30; *see also C—TC 9th Ave.*, 113 F.3d at 1311.  Contrary to Discover Growth's assertions, and irrespective of the passage of time since the filing of the Motion, a review of these factors makes it abundantly clear that the Debtors' filing was not a bad faith filing.

i.     *The Debtors Have Multiple Assets.*

31.     One factor that would suggest a bad faith filing is if the Debtors had only one asset.  *See C—TC 9th Ave.*, 113 F.3d at 1311.  Discover Growth admits in the Motion that the Debtors have multiple assets.  *See* Motion, ¶¶ 32 & 33 ("the Debtor's sole potentially income-producing assets appear to be the Ceplene and Bert assets").  Indeed, even though the Debtors

9

have sold their anti-eotaxin assets to Alexion (despite Discover Growth's attempts to sabotage the sale by attempting to convert the cases and claiming the iCo license was terminated), the Debtors are still in possession of numerous asset lines, including the Ceplene assets, a preclinical nano-encapsulated topical formation of cyclosporine-A for the treatment of atopic dermatitis and psoriasis, and own a clinical-stage topical formulation of amitriptyline and ketamine (Amiket) for the treatment of neuropathic pain. *See* Declaration of Anthony Fiorino in Support of the Debtors' Opposition to the Motion of Discover Growth Fund, LLC for Relief From the Automatic Stay, dated March 13, 2019 ("Fiorino Declaration") [Dkt. No. 67], ¶¶ 13 & 15. Therefore, this factor does not weigh in favor of conversion.

      ii.    *The Debtors Are Multiple Entities With Numerous Unsecured Creditors And No Secured Creditor.*

32. Another factor that may suggest a bad faith filing is where a debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors. *See C—TC 9th Ave.*, 113 F.3d at 1311. The Debtors' schedules list nearly 200 non priority unsecured creditors in Schedule E/F—140 for Immune Inc., 34 for Immune Ltd.[5], 11 for Cytovia, 3 for Immune Pharmaceuticals USA Corporation. *See* Case No. 19-13273 [Dkt. No. 62], Case No. 19-13710 [Dkt. No. 18], Case No. 19-13896 [Dkt. No. 13], Case No. 19-13902 [Dkt. No. 15]. In addition, proofs of claim were filed by 69 creditors. Moreover, for the reasons more thoroughly explained in numerous pleadings before this Court, both in these joint administered bankruptcy cases and in the adversary proceeding pending against Discover Growth, Discover Growth should not be viewed as secured creditor due to, among other things, the subordination provisions of the Bankruptcy Code and its representation in the document giving rise to its claims that it was an experienced investor which understood the economic risk it was taking on

---

[5] In the near term, the Committee will be filing motions in this Court regarding the Immune Ltd. Chapter 11 case, which motions the Committee views as aiding the formulation of a Chapter 11 plan in these cases.

with its "Securities" investment and that it could afford a "complete loss" of its "Securities" investment. *See* Securities Purchase Agreement, III.C.3. Accordingly, this factor does not weigh in favor of conversion.

### iii. *The Debtors Do Not Have Only One Asset That Is Subject To Foreclosure.*

33. The Debtors have more than one asset and none are the subject of a foreclosure action as a result of arrearages or default on the debt. Rather, Discover Growth invested $2 million into Immune Inc. pursuant to a Securities Purchase Agreement and then attempted a fire sale in St. Thomas, U.S. Virgin Islands on President's Day (a federal holiday) ten days after purported alleged default notice (*see* Fiorino Declaration, ¶ 49). Therefore, this factor does not weigh in favor of conversion.

### iv. *The Debtors' Bankruptcy Cases Are Not A Two Party Dispute.*

34. Courts have looked to whether "the debtor's financial condition is, in essence, a two party dispute between the debtor and secured creditors which can be resolved in the pending state foreclosure action." *See C—TC 9th Ave.*, 113 F.3d at 1311. Although Discover Growth's endless self-centered, nonsensical[6], and aggressive actions in these cases may lead one to think otherwise, approximately 200 creditors are relying on the efforts of the Debtors and the three-member Committee to maximize value. Further, any purported lien of Discover Growth would be limited to only certain of Immune Inc.'s assets, subordinated, and transferred to the estates pursuant to section 510(c)(2) of the Bankruptcy Code such that any "foreclosure action" by

---

[6] One would think Discover Growth would have been supportive of the Debtors' efforts to obtain value for the benefit of all creditors. Unfortunately, as has been true throughout these cases, Discover Growth has done nothing to help these estates and instead has taken actions in its attempt to destroy these estates. For example, Discover Growth supported the argument that the Debtors could not pursue a sale of the anti-eotaxin assets because of the iCo license termination. In addition to its nonsensical position regarding the iCo license, it should not be forgotten that the Court had to overrule Discover Growth's objection that it would not be beneficial for the estates to enter into the license agreement for the Ceplene assets, which transaction brought $100,000.00 into the estates and enabled the estates to preserve those assets.

Discover Growth will not present a resolution here.[7]  Moreover, "Chapter 11 filings arising out of a two-party dispute or triggered by state courts proceedings do not *per se* constitute bad faith filings." *See In re Allen*, 2013 WL 1952338 at *10 (Bankr. D.N.J. May 10, 2013).  Thus, this factor does not weigh in favor of conversion.

   v. *The Timing of the Bankruptcy Filing Does Not Indicate Bad Faith.*

35. As previously detailed, the Committee disagrees that Discover Growth is a secured creditor and disputes any contention that Discover Growth's efforts in attempting the sale were legitimate.  The Debtors' petitions were filed to preserve assets rightfully belonging to the estates.  *See* Fiorino Declaration, ¶¶ 49-51; *see, e.g., In re MGN Co., III*, 116 B.R. 654, 658 (Bankr. S.D. Ind. 1989) (debtors often file on the eve of foreclosure on a major asset).  Therefore, this factor does not weigh in favor of conversion.

   vi. *The Debtors' Operations Are Paused To Preserve Assets For The Estates.*

36. Discover Growth attempts to argue that the cash flow and number of employees is also an indicia of bad faith, but the Debtors purposely paused operations to preserve their assets, and the sale proceeds resulting from the Alexion sale and from prospective sales of the Ceplene and other assets may garner sufficient funds to cover administrative expenses and provide a dividend to unsecured creditors.  Therefore, these items are not indicative of a bad faith filing and do not support conversion.

---

[7] The Debtors and the Committee contest Discover Growth's purported claim and lien and believe that, among other things, any such claim must be subordinated under section 510(b) of the Bankruptcy Code and any lien related to that subordinated claim should be transferred to the estates consistent with section 510(c)(2) of the Bankruptcy Code.  Congress contemplated that a lien may be associated with a subordinated claim and thus, section 510(c)(2) provides a vehicle for the lien to be transferred to the estates.  11 U.S.C. § 510(c)(2) (stating, "Notwithstanding subsections (a) and (b) of this section, after notice and a hearing, the court may . . . order that any *lien securing such a subordinated claim be transferred to the estate*.") (emphasis added).

## II.  Conversion Is Not In The Best Interests Of The Debtors' Creditors And The Estates.

37. In addition to failing to provide sufficient cause for conversion, Discover Growth fails to address section 1112(b)(2) of the Bankruptcy Code, which states:

> The court may <u>not convert</u> a case under this chapter to a case under chapter 7 or dismiss a case under this chapter if the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate, and the debtor or any other party in interest establishes that—
> (A) there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and
> (B) the grounds for converting or dismissing the case include an act or omission of the debtor other than under paragraph 4(A)—
> (i) for which there exists a reasonable justification for the act or omission; and
> (ii) that will be cured within a reasonable period of time fixed by the court.

11 U.S.C. § 1112(b)(2) (emphasis added).

38. Discover Growth's Motion chiefly complained that the Debtors' assets had not yet been sold and questioned whether they ever would be sold (all the while objecting to nearly every attempt at a sale transaction). Despite Discover Growth's skepticism and constant counterproductive actions, the Debtors, with the assistance of the Committee, achieved a sale to Alexion. Moreover, it bears mentioning that much of what was contained in the Motion turned out to be false. For example, contrary to Discover Growth's insistence that its asserted liens are indisputable (*see* Motion, ¶¶ 2 & 34), an adversary proceeding was commenced seeking to among other things, subordinate Discover Growth's purported liens and seek damages from Discover Growth. It is anticipated that Discover Growth will once again "cry wolf" that the Debtors and Committee cannot complete a transaction for the Debtors' remaining product lines,

similar to how Discover Growth mistakenly contended that the Debtors "lost" the iCo license and could not complete a sale of the anti-eotaxin assets. The Court should reject the position of equity investor Discover Growth and give the Debtors/Committee a further opportunity to complete a transaction (and Chapter 11 plan) for the benefit of all creditors of these estates.

39.  While these cases are uniquely challenging given the complex, scientific and technical expertise surrounding and necessary for any disposition of the Debtors' assets, the Debtors' exclusivity periods should be extended so they can continue working toward an additional sale (or sales) and a disclosure statement and plan that will establish a liquidating trust as a vehicle for a Committee appointed trustee to (i) pursue avoidance actions, (ii) pursue actions against the Debtors' directors and officers, which were preserved for the benefit of the estates thanks to the Committee's appropriate objection [Dkt. No. 165] to the *Motion for an Order Granting First Insurance Funding Relief from the Automatic Stay to Terminate Premium Finance Agreement Nunc Pro Tunc To Petition Date And Granting Related* and the Committee's timely notice of claim to the insurers, (iii) collect any remaining Alexion sale proceeds that are currently held in Israel by the Official Receiver after the administration of Immune Ltd.'s estate in Israel, and (iv) potentially make distributions of cash and/or shares to general unsecured creditors pursuant to the terms of any further transaction regarding the Debtors' remaining assets.

40.  Moreover, to fight the obstinance of Discover Growth and achieve justice for creditors, the Debtors and the Committee have been diligently prosecuting the adversary proceeding against Discover Growth. Following a failed attempt at mediation, the Debtors and the Committee have filed two summary judgment motions.

41. Discover Growth's impatience is simply not sufficient basis to argue that a plan will not be confirmed within a reasonable period of time. Accordingly, conversion is inappropriate and the Debtors' exclusivity periods should be extended.

## CONCLUSION

**WHEREFORE**, the Committee respectfully requests that the Court deny the Motion, extend the Debtors' exclusivity periods, and award the Committee such other and further relief as the Court deems just and appropriate.

Dated: March 24, 2020                **PORZIO, BROMBERG & NEWMAN, P.C.**
*Counsel to the Official Committee of Unsecured Creditors*

By:   */s/ John S. Mairo*
       John S. Mairo, Esq.
       Kelly D. Curtin, Esq.
       100 Southgate Parkway
       Morristown, New Jersey 07962
       Telephone: (973) 538-4006
       Email: jsmairo@pbnlaw.com
                kdcurtin@pbnlaw.com

4438022