| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY<br>**Caption in Compliance with D.N.J. LBR 9004-1(b)**<br>**PORZIO, BROMBERG & NEWMAN, P.C.**<br>100 Southgate Parkway<br>P.O. Box 1997<br>Morristown, New Jersey 07962<br>(973) 538-4006<br>(973) 538-5146 Facsimile<br>John S. Mairo, Esq. (jsmairo@pbnlaw.com)<br>Robert M. Schechter, Esq. (rmschechter@pbnlaw.com)<br>Kelly D. Curtin, Esq. (kdcurtin@pbnlaw.com)<br><br>*Counsel for the Official Committee of Unsecured Creditors* | |
| In re:<br><br>IMMUNE PHARMACEUTICALS INC., *et al.*,[1]<br><br>Debtors. | Chapter: 11<br><br>Case No.: 19-13273 (VFP)<br><br>(Jointly Administered)<br><br>Hearing date and time: **April 28, 2020 at 10:00 a.m. (Eastern Time)**<br>Objection deadline: **April 21, 2020** |

**MEMORANDUM OF LAW IN SUPPORT OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' MOTION TO ESTABLISH PROTOCOL FOR THE FILING OF CLAIMS AGAINST IMMUNE PHARMACEUTICALS, LTD. AND SUSPEND THE IMMUNE PHARMACEUTICALS, LTD. PROCEEDINGS**

The Official Committee of Unsecured Creditors (the "Committee") appointed in the Chapter 11 bankruptcy cases of the Debtors (the "Chapter 11 Cases") hereby submits this memorandum of law in support of the motion (the "Motion") for an order, substantially in the form submitted herewith (the "Proposed Order"), establishing a protocol for the filing of claims against Immune Pharmaceuticals, Ltd. ("Immune Ltd.") and suspending the Immune Ltd.

---

[1] The debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: Immune Pharmaceuticals, Inc. (1431); Immune Pharmaceuticals, Ltd.; Cytovia, Inc. (7805); Immune Oncology Pharmaceuticals, Inc.; Maxim Pharmaceuticals, Inc. (9983); and Immune Pharmaceuticals USA Corp. (9630) (the "Debtors").

4427784

proceedings. In support of the Motion, the Committee submits the Certification of Kelly D. Curtin ("Curtin Certification") and respectfully states as follows:

## PRELIMINARY STATEMENT

1. This Motion seeks to: (i) clarify and direct that all creditors of Immune Ltd. (including those creditors that are included in Immune Ltd.'s schedules) must submit any and all claims against Immune Ltd. to the Israeli Trustee, Mr. Eitan Erez, on or before September 5, 2020; and (ii) suspend the Immune Ltd. proceedings in this Court for a limited period of time so as to allow the claim and distribution process for Immune Ltd. to play out in Israel.

2. Although a debtor-in-possession in these Chapter 11 Cases first, Immune Ltd. is an Israeli company that also commenced an insolvency proceeding in Israel. This Court is well aware of the initial struggles the Debtors and the Committee had in attempting to gain cooperation in Israel. Unfortunately, efforts to apply the Model Law on Cross-Border Insolvency, which was codified under chapter 15 of title 11 of the United States Code ("Chapter 15") to the instant case and to have the Israeli Court recognize the United States Bankruptcy Court as the "main" proceeding have not been fruitful.[2] Instead, both the Israeli Court and the United States Bankruptcy Court have been overseeing parallel proceedings. Accordingly, to avoid the confusion that would inevitably be caused by having two different claim procedures for the same group of creditors, the relief sought by this Motion is necessary to explain where and how to file claims against Immune Ltd.

3. Moreover, as this Court is aware, the memorandum of understanding ("MOU") agreed to by the Israeli Trustee, Eitan Erez, provided that fifty percent (50%) of the gross sale proceeds from the sale of the anti-eotaxin assets including bertilimumab (the "Anti-Eotaxin Assets") to Alexion Pharma International Operations Unlimited Company ("Alexion") will be

---

[2] Although Israel adopted the model law in March 2018, it did not go into effect until September 15, 2019.

2

held in trust by the Official Receiver in Israel and fifty percent (50%) will be held in trust with Debtors' counsel. *See Order Approving Immune Pharmaceuticals Inc. and Immune Pharmaceuticals, Ltd. Memorandum of Understanding with the Committee and the Israeli Trustee Relating to the Allocation of Sale Proceeds from the Sale of the Anti-Eotaxin Asset*s, which contains a copy of the MOU at Exhibit A (the "MOU Order") [Dkt. No. 345]. Consistent with that MOU, the Official Receiver in Israel and Mr. Erez are overseeing the proceeds being held by the Official Receiver and are slated to begin a claims reconciliation process shortly.

4. Finally, the procedures and notice proposed herein are sufficient to provide all creditors of Immune Ltd. with direction as to where and how to file claims. For these and other reasons set forth herein, the Motion should be granted.

## JURISDICTION

5. This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334.

6. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

7. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

8. The predicates for the relief sought is sections 105, 305, 1501 and 1529 of the United States Bankruptcy Code (the "Bankruptcy Code") and rules 1017 and 3003(c)(3) of the Federal Rules of Bankruptcy Procedure.

## BACKGROUND

**The U.S. Bankruptcy Cases**

9. On February 17, 2019 (the "Inc. Petition Date"), Immune Pharmaceuticals, Inc. ("Immune Inc.") filed a voluntary petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court"),

3

4427784

commencing its Chapter 11 case. After the Inc. Petition Date, certain of its subsidiaries commenced their own Chapter 11 Cases.

10. On February 22, 2019 (the "Ltd. Petition Date"), Immune Ltd., which is an Israeli company, filed a voluntary petition under Chapter 11 of the Bankruptcy Code, commencing its Chapter 11 case.

11. On February 26, 2019 (the "Subsidiaries Petition Date"), Cytovia, Inc., Maxim Pharmaceuticals, Inc., Immune Pharmaceuticals USA Corp., and Immune Oncology Pharmaceuticals, Inc. (collectively, the "Subsidiaries"), each filed a voluntary petition under Chapter 11 of the Bankruptcy Code, commencing their Chapter 11 Cases.

12. The Debtors continue to operate their businesses and manage their property as debtors-in-possession in these Chapter 11 Cases under sections 1107 and 1108 of the Bankruptcy Code.

13. Neither a trustee nor an examiner has been appointed in these Chapter 11 Cases.

14. The Committee, comprised of Pearl Cohen Zedek Latzer Baratz, Meda Pharma SARL / Meda AB, and TDR Services LLC, was appointed for the Debtors' unsecured creditors on March 14, 2019.

**Immune Ltd.'s U.S. Bankruptcy Schedules**

15. Immune Ltd.'s Schedule E/F [Dkt. Nos. 18, 22 & 27] lists thirty-eight claims. Curtin Certification, ¶2. None are listed as disputed, contingent or unliquidated. Curtin Certification, ¶2. Of the thirty-eight claims, twenty-three are listed with an Israeli address,[3] only

---

[3] Brenda Kolatch at "Unknown;" Galit Yadid at "Unknown;" Agam Leaderim (Israel) Insurance Agency at $239; AllZol at $410; American Medical Laboratories (Israel) at $17,340; Bezeq at $96; Harel Insurance $1,885; Howeden US Group Ltd at $1,000; IMP Clinical Supply Services Ltd. (LTD) at $15,986; Inpack at $2,366; Israel Innovation Authority $10,395; MedicPrint at $2,764; Mor Research Applications Ltd. (LTD) $60,295; PeproTech Asia Ltd. at $13,800; Q-Core Medical Ltd. at $261; Rambam Health at $410; Technostat Ltd. at $20,006; The Hebrew University at $4,265; Unihead Biopark Ltd. at $2,107; Veidan Conferencing at $481; World Courier Israel Ltd. $14,628; Yissum at $81,178; and Fidelity Risk Capital at "Unknown."

4

4427784

ten are listed with an United States address,[4] and the remaining five list addresses in countries other than the United States and Israel.[5] Curtin Certification, ¶2.

16. Per the Notice of Chapter 11 Bankruptcy Case [Dkt. No. 45], the deadline for the filings of proofs of claim with the United States Bankruptcy Court was July 16, 2019.

17. A review of the claims register indicates that only three creditors filed claims against Immune Ltd. with the United States Bankruptcy Court:

    a. Pearl Cohen in the amount of $560,215.93;

    b. Tergus Pharma, LLC in the amount of $50,023.90; and

    c. Fidelity in the amount of $14,357,386.00.

Curtin Certification, ¶3. Pearl Cohen and Fidelity have also both filed claims against Immune Ltd. in Israel. Fidelity even withdrew its claim against Immune Ltd. that it filed here in the United States Bankruptcy Court via a letter dated July 17, 2019, and continues instead to pursue its claim against Immune Ltd. in Israel. Curtin Certification, ¶3.

**Immune Ltd.'s Israeli Stay Proceeding**

18. On or about March 28, 2019, Immune Ltd. filed a motion in the District Court of Jerusalem, Israel ("Israeli Court") for a "stay of proceedings" under section 350 of The Companies Law 5759-1999 of the State of Israel.[6] Curtin Certification, ¶4.

19. On April 1, 2019, Immune Ltd. was granted a "stay of proceedings" by the Israeli Court. Curtin Certification, ¶5.

---

[4] A&G Pharmaceutical at $4,935; Biologics Consulting Group at $13,793; Bioteknolwedge Inc. at $40,992; G. John Mohr c/o BioAsset Advisors at "Unknown;" GenScript (Hong Kong) Limited (LTD) at $41,619; Greenberg Traurig at $102,203; Pearl Cohen Zedek Latzer Baratz at $489,683.30; Roberts Clinical Trials, Inc. at $24,001. In addition to the foregoing, Immune Pharmaceuticals, Inc. is listed with a U.S. address at $18,230,854.89 and Immune Pharmaceuticals USA Corporation is listed with a U.S. address at $2,385,144.33.

[5] World Patent & Trademark Service at $2,356 (Czech Republic); Tibell S.L. at $10,000 (Andorra); Shimizu Patent Office at $610 (Japan); ProBiogen at $3,130 (Germany); and EGYP Ernest Gutmann Yves Plasseraud SAS at $17,368 (France).

[6] Immune Ltd.'s filing in the Israeli Court was made with no notice to the Committee or its counsel and without this Court's approval.

5

20. On April 4, 2019, the Israeli Court appointed Baruch Hakim as trustee for Immune Ltd. Curtin Certification, ¶6.

**Cross-Border Difficulties and Cooperation**

21. During the period from early June through September 2019, the relationship between the Debtors, the Committee and Mr. Hakim began to deteriorate due to, among other things, Mr. Hakim taking certain actions that undermined the Debtors' attempts to sell the Debtors' Anti-Eotaxin Assets, such as Mr. Hakim's attempt to stop the sale proceedings in the United States while simultaneously promoting Fidelity's competing offer in Israel.[7] Curtin Certification, ¶7.

22. On July 15, 2019, the Committee filed a motion to (i) confirm the automatic stay applies to assets of the debtors wherever located, (ii) direct the Israeli Trustee to comply with the automatic stay and any orders of this Court relating to any sale process for the Debtors' assets, (iii) direct all parties to cooperate to establish uniform procedures to govern a single, centralized sale process in the United States, and (iv) grant related relief [Dkt. No. 242] (the "Stay Motion").

23. On July 31, 2019, this Court entered an order approving the Stay Motion [Dkt. No. 287] (the "Stay Order"), which contained, among other things, the following decretal paragraphs:

> 8. The sale process with respect to the Debtors' assets shall in the first instance be subject to the jurisdiction and authority of this Court; provided, however, that with respect to the assets of Immune Ltd., the jurisdiction and authority of this Court shall, to the extent consistent with principles of comity and any agreement of sale approved by this Court, be exercised in conjunction with the jurisdiction and authority of the Israeli Court.

---

[7] The Court may recall that these actions also include, Mr. Hakim's removal of certain access to the sale dataroom, and Mr. Hakim's filing of an emergency "reconstruction plan, and creditors settlement agreement" in Israel seeking to commandeer *all* of the Debtors' assets and sell them to Fidelity.

4427784

> 9. In the interests of comity, efficiency and in an effort to attempt to avoid any inconsistences or conflicts between this Court and the Israeli Court:
>
>> (i) the involved parties are directed to reasonably cooperate with each other and coordinate their efforts with respect to any matters that require, or are in good faith alleged to require, the involvement of this Court and the Israeli Court; and
>>
>> (ii) this Court and the Israeli Court may conduct joint hearings, conferences and other proceedings with respect to any matters that require, or are in good faith alleged to require, the involvement of this Court and the Israeli Court.
>
> 10. Any interested party is invited to file an appropriate motion or application seeking approval of a Stipulation establishing a protocol and/or procedures with respect to any matters that require, or are in good faith alleged to require, the involvement of this Court and the Israeli Court.

Stay Order, ¶¶8-10.

24. On July 16, 2019, the United States Bankruptcy Court entered an Order approving and authorizing (i) bid procedures and form of notice in connection with the sale of the Debtors' Anti-Eotaxin Assets, including Bertilimumab assets free and clear of all liens, claims, encumbrances, and interests, (ii) the stalking horse agreement with Alexion Pharma International Operations Unlimited Company ("Alexion") and bid protections, (iii) the scheduling of a sale hearing, (iv) the sale to the purchaser submitting the highest or best offer, (v) procedures for assuming and assigning executory contracts, and (vi) other related relief [Dkt. No. 247] (the "Bidding Procedures Order").

25. Recognition of the Bidding Procedures Order in Israel was delayed in part due to continued challenges raised by Mr. Hakim. Curtin Certification, ¶8.

26. On or about September 12, 2019, the Israeli Court appointed Eitan Erez as trustee for Immune Ltd. alongside Mr. Hakim. Curtin Certification, ¶9.

27. On September 16, 2019, the Israeli Court conducted a hearing whereby Mr. Erez expressed his agreement to adopt the Bidding Procedures Order on certain conditions that were later embodied in the MOU. Curtin Certification, ¶10.

28. On September 26, 2019, Mr. Hakim was released by the Israeli Court from his post, making Mr. Erez the sole trustee for Immune Ltd. Curtin Certification, ¶11.

29. On or about October 3, 2019, the Mr. Erez, Debtors' counsel and the Committee's counsel executed the MOU, which provided that fifty percent (50%) of the gross sale proceeds of the Alexion sale ("Sale Proceeds") without any deduction will be held in trust by the Official Receiver in Israel to be disbursed by authorization from the Israeli Court and fifty percent (50%) will be held in trust with Debtors' counsel to be disbursed by authorization from the United States Bankruptcy Court. Curtin Certification, ¶12.

30. On October 21, 2019, this Court entered an order (i) authorizing the sale of the Debtors' Anti-Eotaxin Assets free and clear of all liens, claims, encumbrances and interests, (ii) approving the Alexion asset purchase agreement, and (iii) authorizing the Debtors to assume and assign certain executory contracts and unexpired leases and other related relief [Dkt. No. 343].

31. On October 23, 2020, this Court entered the MOU Order approving the MOU.

**Recent Activity in Immune Ltd. Israeli Proceeding**

32. On or about March 5, 2020, Immune Ltd.'s stay of proceedings was converted to a liquidation and Mr. Erez was appointed liquidator. Curtin Certification, ¶13.

33. As a result of the liquidation, Immune Ltd. creditors shall have until six months from the date the liquidation order was granted to file claims with the Official Receiver in Israel and Mr. Erez (the "Bar Date"). Given that the liquidation was granted on March 5, 2020, the Bar Date should be September 5, 2020. Curtin Certification, ¶14.

4427784

**BASIS FOR RELIEF**

34. The Committee respectfully requests that this Court enter an order, substantially in the form of the attached Proposed Order, establishing a protocol for the filing of claims against Immune Ltd. and suspending the Immune Ltd. bankruptcy case pending in the United States Bankruptcy Court for thirty (30) days from the Bar Date (without prejudice to further extending the suspension) while leaving the automatic stay in place. Such relief best serves the Immune Ltd. debtor and its creditors and is necessary in light of the unique cross-border facts of this case.

35. Among other things, entry of the Proposed Order will support principles of comity. Comity, "in the legal sense, is neither a matter of absolute obligation . . . nor of mere courtesy and good will . . . but is the recognition which one nation allows within its territory to the . . . acts of another nation . . . ." *Hilton v. Guyot*, 159 U.S. 113, 163-64 (1895). It is best understood "as a guide where the issues to be resolved are entangled in international relations." *In re Maxwell Communication Corp.*, 93 F.3d 1036, 1047 (2d Cir. 1996). Comity is particularly important in cases where simultaneous proceedings are ongoing in different countries, "especially in multi-party cases like bankruptcies, [that] can naturally lead to inconsistencies and conflicts." *In re Maxwell Communication Corp.*, 93 F.3d at 1041. As already discussed, efforts to apply Chapter 15 to the instant case have not been successful. Thus, the parties are in a unique position of attempting to reconcile the differences between the United States and Israel when it comes to insolvency proceedings, jurisdiction and claim reconciliation. Separating these functions by Debtor entity and their relevant claims reconciliation process makes sense here and is the most efficient way to employ comity in this situation.

36. Moreover, the relief sought is consistent with several Bankruptcy Code provisions. Section 1501 of the Bankruptcy Code encourages cooperation among courts when

there are proceedings involving the same debtor pending concurrently. Section 105(a) provides, in relevant part, that, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. §105(a). Further, Section 305 of the Bankruptcy Code gives the Court the power to suspend the Immune Ltd. proceedings when "the interests of creditors and the debtor would be better served by such…suspension." 11 U.S.C. § 305(a)(1);[8] *see, e.g.*, *In re Rookery Bay, Ltd.*, 190 B.R. 949, 951 (Bankr. M.D.Fl. 1995) (suspending bankruptcy case pending resolution of an appeal). In considering section 305 of the Bankruptcy Code, courts generally consider factors that include:

> (1) economy and efficiency of administration; (2) whether another forum is available to protect the interests of both parties or there is already a pending proceeding in a state court; (3) whether federal proceedings are necessary to reach a just and equitable solution; (4) whether there is an alternative means of achieving the equitable distribution of assets; (5) whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case; (6) whether a non-federal insolvency has proceeded so far in those proceedings that it would be costly and time consuming to start afresh with the federal bankruptcy process; and (7) the purpose for which bankruptcy jurisdiction has been sought.

*In re Fax Station, Inc.*, 118 B.R. 176, 177 (Bankr. D.R.I. 1990).

37. Here, nearly all of the factors militate in favor of a temporary suspension. The Immune Ltd. creditors would be better served by a suspension[9] of the Chapter 11 proceeding of Immune Ltd. so that those creditors can focus on asserting claims and obtaining a distribution in Israel. On a related note, the creditors of the other Debtors are better served by the suspension of

---

[8] While not directly on point, Bankruptcy Code section 1529(4) provides that "[i]n achieving cooperation and coordination under sections 1528 and 1529, the court may grant any of the relief authorized under section 305." 11 U.S.C. § 1529(4).

[9] A suspension will also allow the Court (and the parties in this case) to retain oversight and monitor the happenings in Israel, which is appropriate given the prior difficulties in this case. Moreover, a suspension allows the Court to preserve the automatic stay and provides for the possible future use of the special voiding powers found in chapter 5 of the Bankruptcy Code, which may create funds for the general unsecured creditors which otherwise cannot be achieved.

10

the Immune Ltd. proceedings because it allows for: (1) a Chapter 11 plan to be filed addressing the claims and distributions for creditors of the Debtors other than Immune Ltd.; and (2) a Chapter 11 plan to provide a mechanism, such as a liquidating trust, to collect and distribute to the Debtors' creditors (other than Immune Ltd.) any funds which Mr. Erez has after administering the Immune Ltd. estate in Israel. In this way, the temporary suspension serves economy and efficiency of administration.

38. The Proposed Order provides that claims against Immune Inc., Cytovia, Inc., Immune Oncology Pharmaceuticals, Inc., Maxim Pharmaceuticals, Inc. and Immune Pharmaceuticals USA Corp. will be adjudicated in and by the United States Bankruptcy Court and any distributions on account of such claims will be made through the United States Bankruptcy Court. Claims against Immune Ltd. will be adjudicated in and by the Israeli Court and any distributions on account of such will be made through the Israeli Court. In this way, the Proposed Order is consistent with the MOU. Mr. Erez is currently holding approximately $2.5 million in sale proceeds for purposes of administering Immune Ltd.'s estate.[10] Creditors of Immune Ltd. must look to the funds held in Israel for any distribution. Subject to the claims reconciliation process in Israel, Immune Ltd. claims may be satisfied in full. Thus, having those creditors file claims in Israel streamlines the otherwise burdensome process of having the claim adjudicated here in the United States then recognized in Israel in accordance with the applicable tests under Israeli law to effect a foreign judgment, which would prolong the proceedings and add additional costs for all parties involved.

39. Establishing the procedures requested herein is not only consistent with the MOU, but it will enable the Debtors to administer these Chapter 11 Cases as efficiently and

---

[10] While Mr. Erez was initially holding $3 million in sale proceeds, it is the Committee's understanding that approximately $500,000 of that amount was paid to the Israel Innovation Authority.

11

expeditiously as possible. In addition to the foregoing efficiencies, Immune Ltd. is an Israeli company, Mr. Erez has access to Immune Ltd.'s records, and many of Immune Ltd.'s creditors are based in Israel and are therefore familiar with the claims filing and reconciliation process in Israel.

40. Finally, as more thoroughly set forth below, the proposed notice procedures set forth below will provide creditors with sufficient time to prepare and timely file claims.

*(A) The Proposed Procedures for Providing Notice*

41. Within one week of the Court's entry of the Proposed Order, the Committee proposes that it will work with the Debtors to mail a copy of the entered order indicating that the procedural requirements for filing debt claims in Israel are subject to Israeli law and confirmation by the Israeli Trustee, as well as an informal copy of the Israeli proof of claim form (the "Israeli Form") translated in English that is attached to the Proposed Order as **Exhibit A**,[11] to:

    i. the Office of the United States Trustee;

    ii. all governmental units (federal, state and local) – including without limitation, all applicable taxing authorities (including the Internal Revenue Service ("IRS") – having jurisdiction over the Debtors;

    iii. all persons known to the Debtors as the holder of a claim or potential claim against Immune Ltd., including those parties listed in Immune Ltd.'s schedules;

---

[11] Exhibit A is an informal translation of the Hebrew form to English that was prepared by the Committee's Israeli Counsel and is provided solely for convenience purposes. Such translated form was provided to Mr. Erez by the Committee's Israeli Counsel. Mr. Erez did not officially approve the form; instead, Mr. Erez advised that so long as the form represents a sufficient translation from Hebrew to English and includes an affidavit confirmed as required by Israeli law he is interested in the substance.

12

4427784

    iv.    all persons and entities requesting notice pursuant to Bankruptcy Rule 2002 as of the entry of the Proposed Order;

    v.    all parties to executory contracts and unexpired leases of Immune Ltd.; and

    vi.    all parties to any litigation with Immune Ltd.

*(B) <u>Parties Required to File a Claims</u>*

42. The Proposed Order requires that, regardless of whether its claims against Immune Ltd. were listed on the Debtors' schedules, each person or entity (including, without limitation, each individual, partnership, joint venture, corporation, limited liability company or partnership, estate, trust, or governmental unit) that asserts any claim (as defined in section 101(5) of the Bankruptcy Code), including but not limited to all claims of setoff or recoupment and claims arising under section 503(b)(9) of the Bankruptcy Code, against Immune Ltd. that arose prior to or after the Petition Date, must file a proof of claim in accordance with Israeli law, so that it is actually received by Mr. Erez and the Debtors, on or before the Bar Date at the address below:

> Mr. Eitan Erez
> 23 Menachem Begin Rd.
> Levinstein Tower, 13th floor
> Tel Aviv 66184
> Israel

With copy to Committee Counsel at the address below:

> John S. Mairo, Esq.
> Porzio, Bromberg & Newman, P.C.
> 100 Southgate Parkway
> Morristown, NJ 07962

With copy to the Debtors' Counsel at the address below:

13

Morris Bauer, Esq.
Norris McLaughlin, P.A.
400 Crossing Boulevard
8th Floor
Bridgewater, NJ 08807

43. The proof of claim must also be filed on the Official Receiver's website:

https://forms.gov.il/globaldata/getsequence/getHtmlForm.aspx?formType=apc2_hasava@justice.gov.il.

44. Furthermore, each proof of claim must (i) comply with Israeli law; (ii) be signed;[12] and (iii) include supporting documentation or an explanation as to why documentation is not available.

45. All parties that have claims against Immune Ltd. must file a claim including, but not limited to:

    i. Any person or entity that has already filed a proof of claim in the Chapter 11 Cases with the Clerk of the Bankruptcy Court for the District of New Jersey in a form substantially similar to the Proof of Claim Form or Official Bankruptcy Form 410;

    ii. Any person or entity whose claim is listed on any of the Debtors' schedules of assets and liabilities and statements of financial affairs;

    iii. Any person or entity whose claim is based on an equity interest; and

    iv. Any holder of a claim allowable under sections 503(b) and 507(a)(2) of the Bankruptcy Code as an expense of administration of the Debtors' estates.

    *(C) Failure to File a Claim Consequences*

46. A person, entity or governmental unit that is required to file a claim against Immune Ltd. and that fails to do so on or before the Bar Date (i) may not receive or be entitled to receive any payment or distribution of property from the Debtors, their estates, or their

---

[12] Any affidavits signed outside of Israel may be required to comply with the Hague Convention Abolishing the Requirement of Legalization for Foreign Public Documents, which may require confirmation of a local notary by an apostille.

successors or assigns with respect to such alleged claim against Immune Ltd., and (ii) may be forever barred from asserting such alleged claim against Immune Ltd., against the Debtors, their estates, or their successors or assigns, unless otherwise ordered by the Court.

### (D) *Objection to Claims*

47.     All claims against Immune Ltd. shall be adjudicated in and by the Israeli Court or its court appointed officials, and any distributions on account of the Immune Ltd. claims will be made through the Israeli Court.  Notwithstanding the Debtor having scheduled a claim as allowed, the failure to file a claim against Immune Ltd. in Israel shall result in no distribution on account of such claim.  Any claims against Immune Ltd. that are scheduled or filed here in the United States Bankruptcy Court will not receive a distribution absent such claims being filed in Israel pursuant to the Proposed Order.  The Committee and the Debtors reserve the right to object to any claims (whether filed or scheduled) on any grounds.  The Debtors and the Committee may dispute or to assert offsets or defenses to any claim reflected on the schedules or any amendments thereto, as to amount, liability, classification or otherwise and to subsequently designate any claim as disputed, contingent or unliquidated.

## **NOTICE**

Notice of this Motion will be given to the following parties: (i) the Debtors' counsel, (ii) the Office of the United States Trustee; (iii) Eitan Erez; (iv) all parties requesting notice under Bankruptcy Rule 2002; and (v) known creditors of the Debtors.  In light of the nature of the relief requested herein, the Committee respectfully submit that such notice is sufficient under the circumstances and that no other or further notice of this Motion is required.

4427784

## CONCLUSION

**WHEREFORE**, the Committee respectfully requests that the Court enter the Proposed Order and award the Committee such other and further relief as the Court deems just and appropriate.

Dated: March 26, 2020 **PORZIO, BROMBERG & NEWMAN, P.C.**

By: */s/ John S. Mairo*
John S. Mairo, Esq.
Robert M. Schechter, Esq.
Kelly D. Curtin, Esq.
100 Southgate Parkway
Morristown, New Jersey 07962
Telephone: (973) 538-4006
Email: jsmairo@pbnlaw.com
rmschechter@pbnlaw.com
kdcurtin@pbnlaw.com

4427784