**RABINOWITZ, LUBETKIN & TULLY, L.L.C.**
293 Eisenhower Parkway, Suite 100
Livingston, New Jersey NJ 07039
(973) 597-9100
Jonathan I. Rabinowitz
John J. Harmon
*Counsel for Jeffrey A. Lester, Chapter 7 Trustee*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>IMMUNE PHARMACEUTICALS, INC., et al.,<br><br>Debtors. | Case No. 19-13273 (VFP)<br><br>Hon. Vincent F. Papalia<br><br>Chapter 7<br>(Jointly Administered) |

**TRUSTEE'S OPPOSITION TO MOTION BY DISCOVER GROWTH FUND, LLC FOR RELIEF FROM THE AUTOMATIC STAY**

Jeffrey A. Lester, Chapter 7 Trustee (the "Trustee") for Immune Pharmaceuticals, Inc. ("Immune"), Immune Pharmaceuticals, Ltd. ("Ltd."), Cytovia, Inc. ("Cytovia"), Immune Oncology Pharmaceuticals, Inc. ("Oncology"), Maxim Pharmaceuticals, Inc. ("Maxim"), and Immune Pharmaceuticals USA Corp. ("USA" and, collectively with the foregoing entities, the "Debtor"), for his opposition to the motion (the "Motion") by Discover Growth Fund, LLC ("Discover") for relief from the automatic stay, respectfully alleges and asserts as follows:

**Relevant Background**

1.      On February 17, 2019 (the "Petition Date"), Immune filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"). [Docket No. 1]

2.      On February 22, 2019, Immune's subsidiary Ltd. filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, and on February 26, 2019, Cytovia, Oncology, Maxim and USA, who are also subsidiaries of Immune, filed voluntary petitions for relief under Chapter

1

11 of the Bankruptcy Code. The cases of all of the Debtors are jointly administered pursuant to the Court's Order entered on March 6, 2019. [Docket No. 36]

3. On February 25, 2019, Discover filed a motion for relief from the automatic stay [Dkt. No. 11] (the "Stay Relief Motion").

4. In the Stay Relief Motion, Discover addressed the Debtor's four assets, which are pharmaceutical drug lines in various stages of development, commonly referred to as Bert (the "Bert Assets"), Ceplene (the "Ceplene Assets"), NanoCyclo and Amiket (the "Miscellaneous Assets"). (*See* 2/25/2019 Dec. of John C. Kirkland, the relevant portions of which are annexed hereto as Exhibit **"A"**, at ¶53).

5. In the Stay Relief Motion, Discover acknowledged that the Ceplene Assets and the Miscellaneous Assets had no value. (*See* Exhibit A at ¶54-55).

6. In the Stay Relief Motion, Discover estimated the value of the Bert Assets at approximately $1 to 1.5 million. (*See* Exhibit A at ¶58).

7. On March 14, 2019, the Office of the United States Trustee appointed the Official Committee of Unsecured Creditors of Immune Pharmaceuticals, Inc., et al. (the "Committee") in the Debtors' bankruptcy cases. [Docket No. 49]

8. On March 19, 2019, the Debtor and the Committee each filed opposition to the Stay Relief Motion. [Docket Nos. 67 and 68]

9. In its opposition to the Stay Relief Motion, the Debtor indicated that immediately subsequent to the Petition Date, it received an offer to purchase the Bert Assets for $3 million, and that this offer increased to $4.5 million. (*See* 3/19/2019 Fiorino Dec., the relevant portion of which is annexed hereto as Exhibit **"B"**, at ¶41). On October 16, 2019, the Debtor's financial adviser filed a certification in support of the sale of the Bert Assets that specified that the Debtor received

2

a $3 million purchase offer for the Bert Assets on the Petition Date, and received a follow up $4.5 million purchase offer on February 28, 2019. (*See* 10/16/2019 Davis Dec., the relevant portion of which is annexed hereto as Exhibit **"C"**, at ¶5(k)).

10. On March 26, 2019, the Court held a hearing on the Stay Relief Motion. [Docket No. 101]

11. At the hearing, the Court refrained from granting relief from the stay at that time, and requested supplemental briefing on the following issues (i) whether Discover's claim is subject to subordination; (ii) whether Discover's collateral is declining in value; (iii) whether Discover had waived certain default and trigger events asserted by Discover; and (iv) the extent of Discover's secured claim before and after April 1, 2019. (*See* 3/26/2019 Tr., the relevant portions of which are annexed hereto as Exhibit **"D"**, at 32:17 - 33:19; 34:22 - 35:22).

12. On June 12, 2019, Discover filed a proof of claim number 37-1 (together with the amendments described hereinafter, the "Claim") against the Debtor, and on July 16, 2019, and September 27, 2019, Discover filed amended proofs of claim number 37-2 and 37-3[1], respectively, against the Debtor.

13. On July 1, 2019, the Debtor and the Committee commenced an adversary proceeding (the "Adversary Proceeding") by filing a complaint (the "Complaint") against Discover, asserting affirmative claims against Discover, seeking to reduce and subordinate the Claim and to transfer to the estate any lien securing the Claim. [Adv. Pro. Docket No. 1]

14. On August 2, 2019, Discover filed an Answer to the Complaint. [Adv. Pro. Docket No. 4]

---

[1] The Trustee expressly preserves the right to object to all of Discover's claims.

15. On February 27, 2020, the Debtor and the Committee filed the Partial Summary Judgment Motion to subordinate Discover's Claim to the same priority as that of claims of holders of common stock pursuant to 11 U.S.C. § 510(b), and to transfer to the estate any lien securing Discover's Claim pursuant to 11 U.S.C. § 510(c). [Adv. Pro. Docket No. 13]

16. On March 12, 2020, the Debtor, the Committee and Discover filed supplemental submissions in support of their respective positions on the Stay Relief Motion. [Docket Nos. 374-76]

17. On March 26, 2020, Discover filed a reply to the supplemental submissions from the Debtor and the Committee. [Docket No. 387]

18. On April 1, 2020, the Court held a hearing on, *inter alia*, the Partial Summary Judgment Motion, the continued Stay Relief Motion and a motion filed by Discover to convert the Debtors' cases to Chapter 7.

19. At the hearing, the Court granted Discover's motion to convert the Debtor's case to Chapter 7, and denied the Partial Summary Judgment Motion.

20. At the hearing, the Court found that Discover was adequately protected and did not grant Discover relief from the stay. The Court indicated it would hold a further hearing on the issue of stay relief after a chapter 7 trustee was appointed, but indicated the further hearing is "not just an adjournment. I'm saying [Discover is] adequately protected right now based on my review of what was advanced by Discover and what its collateral is." (*See* 4/1/2020 Tr., the relevant portion of which is annexed hereto as Exhibit **"E"**, at 52:22-24).

21. On April 2, 2020, the Court entered an Order granting Discover's motion to convert the Debtor's case to Chapter 7. [Docket No. 400]

22. On April 3, 2020, Jeffrey A. Lester (the "Trustee") was appointed as Chapter 7 Trustee for the Debtor and continues to serve as Trustee herein. [Docket No. 401].

23. As a result of the conversion, the Trustee succeeds to all the rights and claims of the pre-conversion Debtors including, without limitation, the claims against Discovery set forth in the Adversary Proceeding. Further, the Trustee is entitled, pursuant to Bankruptcy Rule 7025 and F.R.C.P. 25, to be substituted in as the Plaintiff. In that connection, the Trustee has filed a motion to be substituted for the named plaintiffs in the Adversary Proceeding. [Adv. Pro. Docket No. 39]

24. On April 20, 2020, the Court entered an Order denying the Partial Summary Judgment Motion. [Adv. Pro. Docket No. 37]

25. On May 4, 2020, the Trustee filed a motion for reconsideration of the Order denying the Partial Summary Judgment Motion, which remains pending before the Court. [Adv. Pro. Docket No. 40]

## Legal Argument

### I. Discover Must Prove the Validity and Amount of Its Lien as a Condition Precedent to Obtaining Relief from the Stay

### A. Legal Standard

26. It is well settled that a creditor seeking to lift the automatic stay has the burden of demonstrating the existence of a valid, perfected security interest in the collateral at issue. *In re McKenzie*, 737 F.3d 1034, 1038 (6th Cir. 2013); *In re Southern Illinois Railcar Co.*, 301 B.R. 305, 309 (Bankr. S.D. Ill. 2002).

27. In determining whether a creditor has met this burden, the court should consider a debtor's pertinent affirmative defenses to a creditor's alleged security interest, including the defense of claim subordination. *In re Poughkeepsie Hotel Assocs. Joint Venture*, 132 B.R. 287,

5

289 (Bankr. S.D.N.Y. 1991); *In re Mr. R's Prepared Foods, Inc.*, 251 B.R. 24, 28 (Bankr. D. Conn. 2000).

28. Affirmative defenses that can only be raised in bankruptcy court, including the affirmative defense of claim subordination, should receive "particular attention" from the court when adjudicating a stay relief motion because "[i]f the automatic stay is terminated and the movant allowed to foreclose, the estate would be deprived of these defenses in the nonbankruptcy forum." *Poughkeepsie*, *supra*, 132 B.R. at 292.

29. In the context of a stay relief motion, a court's consideration of a debtor's affirmative defense "is limited to whether the [objectors have] presented sufficient evidence of the bona fides of their claim for the court to deny the motion for relief from stay." *Resolution Trust Corp. v. Shehu (In re Shehu)*, 128 B.R. 26, 29 (Bankr.D.Conn.1991).

**B. Discover Has Failed to Establish the Validity of Its Lien**

30. Discover has failed to meet its burden of demonstrating the validity of its lien for the following reasons.

31. The Adversary Complaint filed by the Debtor and the Committee challenges the validity of Discover's lien on various grounds, including claims for subordination pursuant to 11 U.S.C. § 510(b) and (c), and a claim that Discover lacks a perfected lien in the Ceplene Assets.

32. Subordination pursuant to 11 U.S.C. § 510(b) and (c) are remedies that are only available in bankruptcy because subordination claims are core matters that fall within the exclusive jurisdiction of this Court. 28 U.S.C. § 157(b)(2)(K), (O); *In re CRD Sales & Leasing, Inc.*, 231 B.R. 214, 219 (Bankr. D. Vt. 1999); *In re M. Paolella & Sons, Inc.*, 85 B.R. 965, 969 (Bankr. E.D. Pa. 1988).

33. The Trustee, in his motion for reconsideration, has demonstrated the bona fides of the estate's claim against Discover for subordination.

34. Accordingly, Discover's motion for relief from the stay should be denied on this basis.

35. In addition, Discover has not established the validity of its lien to the extent the proceeds of the Bert Assets are ultimately determined to be the property of Immune Ltd. rather than Immune Inc.

36. Discover seeks relief from the stay under 362(d)(1) based on lack of adequate protection.

37. A determination of lack of adequate protection requires a finding that the collateral is declining in value. *See United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 370 (1988); *In re Elmira Litho, Inc.,* 174 B.R. 892, 902 (Bankr. S.D.N.Y. 1994).

38. The estate presently consists of $2,930,000 in proceeds from the sale of the Bert Assets. It is Discover's position that all other assets of the Debtor have no value.

39. The Ltd. bankruptcy in Israel has the remaining $3,000,000 from the Bert sale proceeds. The allocation of the Bert sale proceeds between Immune and Ltd. has yet to be determined by order of any court.

40. Discover has not submitted any documentation demonstrating it holds a lien on Ltd.'s assets.

41. If all of the Bert assets are ultimately allocated to Ltd. by a final order, Discover's lien as of the petition date is worth zero and its lien is worth zero today, as Discover itself has represented that all of the Debtor's other assets have no value. (*See* 3/12/2020 Dec. of John C.

Kirkland at ¶6). Thus, there is no diminution in value and no lack of adequate protection. This issue must be determined before stay relief can be considered.

**II. Stay Relief Should Be Denied Because Discover is Adequately Protected**

**A. Applicable Standard of Law**

42. "It is common ground that the 'interest in property' referred to by § 362(d)(1) includes the right of a secured creditor to have the security applied in payment of the debt upon completion of the reorganization; and that that interest is not adequately protected if the security is depreciating during the term of the stay." *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 370 (1988).

43. "If the basis of the stay relief is lack of adequate protection of an interest in property, the nature of the movant's interest defines the need for adequate protection, and the scope of the *prima facie* case [the movant is required to establish]." *In re Elmira Litho, Inc.*, 174 B.R. 892, 902 (Bankr. S.D.N.Y. 1994).

44. From what is the 'interest in property' being protected ? The short answer is from any impairment in value attributable to the stay. The stay does not cause, but it may forestall a creditor from preventing or mitigating, a decline in value. Some harm to collateral, however, may be unavoidable with or without the stay. Likewise, creditors may acquiesce in some harm to collateral for business or other reasons notwithstanding the stay. In these situations, and others which may arise, any impairment in value may not be attributable to the stay. Hence, not every decline in value must be recompensed, only those which, but for the stay, could be and probably would be prevented or mitigated. … What is the method of protection? The method of affording adequate protection, as noted above, will vary with the interest in property to be protected. In some cases, the debtor need do nothing, either because the value of the interest in property is not declining or because the decline in value is not attributable to the stay.

*In re Alyucan Interstate Corp.*, 12 B.R. 803, 808–09 (Bankr. D. Utah 1981); see also *Elmira Litho*, *supra*, 174 B.R. at 902 ("Accordingly, the secured creditor lacks adequate protection if the value of its collateral is declining *as a result of the stay*.") (emphasis added).

45. Where a secured creditor's collateral consists of funds in an account which the debtor cannot draw down at will, there is no risk of decline in value, and a creditor cannot show that it lacks adequate protection. *In re Lehman Bros. Holdings Inc.*, 439 B.R. 811, 834 (Bankr. S.D.N.Y. 2010) ("The funds unquestionably were secure, and there was no risk of withdrawal or any decline in value of the funds held by BOA.")

46. In accordance with this standard, an undersecured secured creditor is adequately protected if its collateral is not declining in value.

**B. Discover Is Not Entitled to Relief from the Stay Because Its Collateral Is Not Declining in Value**

47. Decline in value is determined by comparing the value of the collateral as of as of the date the stay relief motion was filed, with its value today. *Matter of Cont'l Airlines, Inc.*, 146 B.R. 536, 542 (Bankr. D. Del. 1992), *subsequently aff'd sub nom. In re Cont'l Airlines*, 91 F.3d 553 (3d Cir. 1996).

**1. Value of the Collateral as of the Date the Stay Relief Motion was Filed**

48. As of the Petition Date, Discover's collateral consisted of (i) the Bert Assets, (ii) the Ceplene Assets, and (iii) the Miscellaneous Assets.

49. Immediately subsequent to its bankruptcy filing, the Debtor received an offer to purchase the Bert Assets for $3 million. (*See* Fiorino Dec. at ¶41, Davis Dec. at ¶5(k)). Based on this $3 million offer, allocating the value of Immune and Ltd.'s respective interests in the Bert Assets equally results in each estate having a value of $1.5 million.

50. Discover's stay relief motion was filed on February 25, 2019, one week after the Petition Date.

51. In its stay relief motion, Discover acknowledged that the Ceplene Assets and the Miscellaneous Assets held by the Debtor have no value. (*See* 2/25/2019 Dec. of John C. Kirkland at ¶¶54-55, 3/12/2020 Dec. of John C. Kirkland at ¶6).

52. Accordingly, as of the date Discover filed its stay relief motion, the value of its collateral was approximately $1.5 million.

**2. Value of the Collateral as of the Present Date**

53. On October 21, 2019, the Court entered an Order (the "Sale Order") approving a sale of the Bert Assets for $6 million. Pursuant to the Sale Order and a memorandum of understanding entered into between the Debtor and the trustee in Ltd.'s bankruptcy case in Israel, $3 million of the sale proceeds were allocated to Immune, and $3 million were allocated to Ltd. (*See* 10/21/2019 Sale Order [Doc. 343] at ¶10).

54. The proceeds of the sale of the Bert Assets are being held in escrow by the Debtor's counsel.

55. The Ceplene Assets have no value according to Discover. (*See* 3/12/2020 Dec. of John C. Kirkland at ¶6). The Debtor's attempts to market the Ceplene Assets did not result in any consummated purchase offers other than a limited license, the Debtor did not fund any of its development costs, and the status of the intellectual property rights in the Ceplene Assets is unknown. Nonetheless, the Trustee has recently received one offer for the Ceplene Assets and the Miscellaneous Assets and expects to receive another offer shortly.

56. It is Discover's position that the Miscellaneous Assets have no value. (*See* 3/12/2020 Dec. of John C. Kirkland at ¶6).

### 3. There Has Been No Decline in the Value of Discover's Collateral Between the Date of its Stay Relief Motion and the Current Date

57. In light of the foregoing, the Bert Assets, and the proceeds of their sale, are the only assets of the Debtor which have had value at any time after Discover filed its stay relief motion.

58. The Bert Assets did not decline in value. Moreover, the Bert Assets have been sold and the sale proceeds are being held in escrow by Debtor's counsel, and have not declined in value.[2]

59. Discover cannot show any risk of decline in value of funds in escrow, and therefore cannot show a lack of adequate protection. *In re Lehman Bros. Holdings Inc.*, 439 B.R. 811, 834 (Bankr. S.D.N.Y. 2010).

60. Discover cannot show that the automatic stay is causing any decline in its collateral, and is not entitled to relief from the stay. *Alyucan*, *supra*, 12 B.R. at 808–09; *Elmira Litho*, *supra*, 174 B.R. at 902.

61. Moreover, on April 1, 2020, the Court expressly found that Discover was adequately protected by the $2.93 million in sale proceeds held in escrow by Debtor's counsel. (Apr. 1 Tr. at 51:17-19).

62. There has not been any decline in value in the Debtor's assets between April 1, 2020 and the current date, and therefore Discover cannot show a lack of adequate protection.

---

[2] The Trustee notes that the Debtor received $3 million for the sale of the Bert Assets, and that the Debtor's counsel is currently holding $2.93 million in escrow. As the Court is aware, the Debtor was authorized by the Court to use $35,000 from the sale proceeds to pay certain expenses, and was simultaneously required to make a $35,000 distribution to Discover as an adequate protection payment. Accordingly, Discover was adequately protected in the one instance in which the Debtor drew down on the sale proceeds.

63. In addition, Discover lacks a valid lien on the Ceplene Assets, and therefore cannot argue that the Ceplene Assets are declining in value as a basis for demonstrating lack of adequate protection.

64. As set forth in the Debtor's original and supplemental opposition to the Stay Relief Motion, 11 U.S.C. § 362(a)(3) prohibits any act to obtain possession or exercise control over property of the estate, and subsection (a)(4) of that statute prohibits any act to create, perfect or enforce a lien against property of the estate.

65. Accordingly, the automatic stay barred Discover from obtaining a lien on the Ceplene Assets on April 1, 2019. *See In re Isely*, 104 B.R. 673 (Bankr. D.N.J. 1989)(Court held that notwithstanding a statute providing the municipalities with liens on real estate, section 362(a)(4) bars the creation of any post-petition liens and thus, the post-petition lien of the municipalities could not become a lien on the real estate); *see also Makoroff v. City of Lockport*, 916 F.2d 890 (3rd Cir. 1990).

66. Further, as set forth in the Adversary Complaint, any lien of Discover in the Ceplene Assets is voidable on several grounds, including 11 U.S.C. §§ 544 and 549.

67. Thus, the Ceplene Assets are not included in the scope of Discover's collateral, and any decline in the Ceplene Assets is not a decline in the value of Discover's collateral.

68. In its supplemental reply in support of its Stay Relief Motion filed on March 26, 2020, Discover conceded that the Ceplene Assets are not included in the scope of its collateral, stating that the Debtor's grant of a license to the Ceplene Assets prior to March 31, 2019 "appears to have achieved its intended purpose, i.e. alienating Ceplene from the ambit of Discover's collateral." [Docket No. 387 at p. 4]

69. Accordingly, there is no lack of adequate protection because there is no decline in the value of Discover's collateral, and therefore Discover is not entitled to relief from the stay.[3]

---

[3] Discover's argument that it lacks adequate protection because its accruing post-petition interest will push its secured claim over the balance of sale proceeds is wrong as a matter of law, because under 506(b) Discover is only entitled to post-petition interest up to the value of its collateral, and the fact that a creditor's claim for post-petition interest will be capped is not a basis for lack of adequate protection. *See Timbers, supra*, 484 U.S. at 373.

13

## **CONCLUSION**

For the foregoing reasons, the Trustee respectfully requests that the Court deny the Motion, and grant such other relief as is just.

Respectfully submitted,

DATED: May 26, 2020      **RABINOWITZ, LUBETKIN & TULLY, L.L.C.**
*Counsel for Jeffrey A. Lester, Chapter 7 Trustee*

By: /s/ Jonathan I. Rabinowitz
      JONATHAN I. RABINOWITZ