**RABINOWITZ, LUBETKIN & TULLY, LLC**
293 Eisenhower Parkway, Suite 100
Livingston, N.J. 07039
(973) 597-9100
Jonathan I. Rabinowitz
Henry M. Karwowski
jrabinowitz@rltlawfirm.com
Attorneys for Jeffrey A. Lester,
Chapter 7 Trustee

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>IMMUNE PHARMACEUTICALS INC.,<br><br>Debtor. | Case No. 19-13273 (VFP)<br><br>Chapter 7<br><br>Hearing Date: June 2, 2020<br>                           at 10:00 A.M.<br><br>Oral Argument Requested |

**OPPOSITION OF JEFFREY A. LESTER, CHAPTER 7 TRUSTEE, TO MOTION
OF CERTAIN FORMER DIRECTORS AND OFFICERS OF DEBTOR FOR ENTRY
OF ORDER AUTHORIZING PAYMENT AND/OR ADVANCEMENT OF DEFENSE
COSTS UNDER DEBTOR'S DIRECTORS AND OFFICERS INSURANCE POLICY**

Jeffrey A, Lester, Chapter 7 Trustee (the "Trustee") for the bankruptcy estate of Immune Pharmaceuticals Inc. (the "Debtor"), by his attorneys, Rabinowitz, Lubetkin & Tully, L.L.C, hereby submits this Opposition to the Motion of Anthony Fiorino, M.D., Daniel Kazado, Daniel Teper, M.D., Jeffrey Paley, M.D., and John Neczesny, who are current or former directors and officers of the Debtor (collectively, the "Former Ds & Os"), for entry of an order authorizing Argonaut Insurance Company ("Argonaut") to pay and/or advance defense costs to the Former Ds & Os under a certain insurance policy. Thus, in opposition to the Motion, the Trustee respectfully represents as follows:

**PRELIMINARY STATEMENT**

1.  The Former Ds & Os, who are beneficiaries of a certain "Public Company Directors & Officers Insurance Policy" purchased by the Debtor and issued by Argonaut (the "Policy"), allege that they have incurred, and that they will continue to incur, costs in the defense of a certain lawsuit brought by Discover Growth Fund, L.L.C. ("Discover"). Motion (ECF 420) at 2. They maintain that Argonaut has requested that the Former Ds & Os seek "for the avoidance of doubt" entry of an order authorizing Argonaut to (i) reimburse their defense costs incurred to date; and (ii) pay or advance defense costs incurred in the future on an ongoing basis. Id. at 2, 6.

2.  As set forth below, the Former Ds & Os fail to establish that they are entitled to relief because: (i) the Motion suffers from several procedural and evidentiary infirmities; (ii) the proceeds of the Policy are property of the estate and are subject to the automatic stay; (iii) the interest of the Former Ds & Os in the proceeds should not be elevated above the interest of the estate; and (iv) any relief must be conditioned on strict payment amount limits and reporting requirements. Accordingly, the Trustee respectfully requests that this Court deny the Motion.

**ARGUMENT**

3.  The Former Ds & Os argue that Argonaut is required under the terms of the Policy to pay and advance their defense costs in Discover's action on the grounds that the Debtor only "potentially" has an interest in the proceeds of the Policy and that the estate's interest is subject to the contractual terms of the Policy. Motion (ECF 420) ¶¶ 22-28. Their position lacks merit, however, for the reasons set forth below.

**I.    The Motion Suffers from Several Procedural and Evidentiary Infirmities.**

4.  This Court need not address the merits because the Motion is for several reason improper on procedural and evidentiary grounds.

2

5.      First, a motion initiating a contested matter under Bankruptcy Rule 9014 must be served by non-electronic means, i.e., first class mail. D.N.J. LBR 5005-1(c)(1)(B). Here, the Former Ds & Os served its Motion only by email and electronic filing. Certification of Service (ECF 421).

6.      Second, the Former Ds & Os assert that they provided notice of the Motion to the Office of the United States Trustee, the Debtor, the Trustee, Argonaut, and "all other parties entitled to receive notice pursuant to Rule 2002 of the Bankruptcy Rules." Motion (ECF 420) ¶ 29. They fail to specify a particular subsection of Rule 2002, however. Insofar as they rely on subsection (a)(2), which addresses a proposed use of property of the estate other than in the ordinary course of business, that subsection requires that notice be provided by mail to not only the debtor and the trustee, but also to all creditors. Fed. R. Bankr. P. 2002(a)(2).

7.      Here, as set forth above, the Former Ds & Os failed to provide notice of the Motion by mail. Also, they failed to provide notice to all creditors.[1] Certification of Service (ECF 421). Creditors in this case would presumably wish to receive notice of this Motion, pursuant to which the Former Ds & Os seek payment from property of the estate.

---

[1] Although the Certificate of Service indicates that the Former Ds & Os served the Motion on counsel for the Official Committee of Unsecured Creditors, the conversion of the case to chapter 7 prior to the filing of the Motion resulted in the dissolution of the Committee. See, e.g., Official Comm. of Unsecured Creditors v. Constellation Enters., LLC (In re Constellation Enters., LLC), 587 B.R. 275, 281 (Bankr. D. Del. 2019) ("[T]he legal entity that was the [Official] Committee [of Unsecured Creditors] automatically dissolved and ceased to exist as of the conversion of the chapter 11 cases to chapter 7."); Official Unsecured Creditors' Comm. v. Rachles (In re Rachles, Inc.), 131 B.R. 782, 785 n.1 (Bankr. D.N.J. 1989) ("Moreover, it is commonly accepted that upon conversion the Creditors' Committee becomes largely inactive because the duties of the Trustee under section 704 of the Bankruptcy Code encompass the functions that would otherwise be undertaken by a Creditors' Committee, and it is costly for the estate to bear the burden of duplicative services.").

8.  Third, courts in this District strike certifications which are not based on personal knowledge or which contain legal argument. See, e.g., Sunoco, Inc. (R & M) v. MX Wholesale Fuel Corp., 565 F.Supp.2d 572, 576–77 (D.N.J. 2008) (striking attorney certification because it did not contain facts within personal knowledge of attorney); Cannon v. Cherry Hill Toyota, Inc., 190 F.R.D. 147, 157-58 (D.N.J. 1999) (disregarding certification of counsel because it contained factual and legal arguments and facts outside attorney's personal knowledge); see also Koch Materials Co. v. Shore Slurry Seal, Inc., 205 F.Supp.2d 324, 328 n.1 (D.N.J.) ("[S]tatements drafted by attorneys . . . are not evidence."), reconsideration denied, 209 F.Supp.2d 418 (D.N.J. 2002).

9.  Here, the Former Ds & Os rely solely upon the Certification of their counsel, who fails to explain how he has personal knowledge – and in fact, fails to state that he actually has personal knowledge – of the factual matters addressed in the Motion, including in particular about the identities of the Former Ds & Os and the respective terms of their service for the Debtor and about the execution of the Policy.  Certification of John E. Jureller, Jr. (ECF 420) ("Jureller Certif.") ¶¶ 5-6.  Also, counsel raises legal argument in his Certification.  Id. ¶ 7 n.4 (addressing in counsel's opinion "if and to what extent the proceeds of the Argonaut Policy are in any way property of Immune").

10. At the same time, the Former Ds & Os repeatedly cite in support of their Motion a certain "Argonaut Letter," in which Argonaut allegedly "acknowledged coverage to the Former D&Os under the Argonaut Policy and agreed to provide payment/reimbursement of the Former D&Os defense costs subject to reservation of rights."  Motion (ECF 420) at 2; ¶¶ 16, 25.  The Former Ds & Os fail to include a copy of the letter, however.

11. Therefore, the Motion lacks a proper evidentiary basis.

4

12. Accordingly, for any or all of the reasons, the Motion should be denied.

**II.   The Insurance Proceeds Are Property of the Estate
and Are Subject to the Automatic Stay.**

13. The Former Ds & Os maintain that in determining who can claim an interest in the proceeds of an insurance policy, "[some] cases focus less on the effect on the estate and more on the terms of the policy to determine if the proceeds are indeed property of the bankrupt." Motion (ECF 420) ¶ 22 (quoting In re GB Holdings, Inc., 2006 WL 4457350, at *2 (Bankr. D.N.J. Sept. 21, 2006)). Although the Former Ds & Os acknowledge that the Debtor "may potentially" have an interest in the proceeds of the Policy, they contend – in a footnote – that the issue is implicated only if (i) Discover amends its Complaint to add the Debtor as a party to its action; or (ii) the Former Ds & Os assert a claim against the Debtor for indemnification, "neither of which have occurred or are likely to occur given the current bankruptcy proceedings." Id. ¶ 23 n.3.

14. This argument fails because (i) insurance proceeds generally are property of the estate and are subject to the automatic stay; (ii) more specifically, "D & O" insurance proceeds are typically property of the estate and are subject to the automatic stay; and (iii) the Argonaut insurance proceeds here are property of the estate and are subject to the automatic stay.

**A.   Insurance Proceeds Are Property of the Estate
and Are Subject to the Automatic Stay.**

15. Bankruptcy Code section 362(a)(3) provides that the automatic stay applies to "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." The automatic stay is considered "one of the most fundamental protections granted the debtor under the Bankruptcy Code." Midlantic Nat'l. Bank v. NJDEP, 474 U.S. 494, 503, reh'g denied, 475 U.S. 1090 (1986); accord In re Krystal Cadillac Oldsmobile GMC Truck, Inc., 142 F.2d 631, 637 (3d Cir. 1998). As the legislative history of the Code provides, the

5

automatic stay also protects creditors because "[w]ithout it, certain creditors would be able to pursue their own remedies against the debtor's property," and thus, "[t]hose who acted first would obtain payment of the claims in preference to and to the detriment of other creditors." 1978 U.S.C.C.A.N. 5787, 5835. Accordingly, the Third Circuit has noted that "[w]ithout question, the scope of the automatic stay is broad." Maritime Elec. Co v. United Jersey Bank, 959 F.2d 1194, 1203 (3rd Cir. 1991).

16.     Bankruptcy Code section 541(a)(1) in turn defines "property of the estate" as "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). It includes proceeds of or from property of the estate. 11 U.S.C. § 541(a)(6). "[The Third Circuit has] emphasized that Section 541(a) was intended to sweep broadly to include all kinds of property, including tangible or intangible property, [and] causes of action[.]" Majestic Star Casino, LLC v. Barden Dev., Inc. (In re Majestic Star Casino, LLC), 716 F.3d 736, 750 (3d Cir. 2013) (quoting Westmoreland Human Opportunities, Inc. v. Walsh, 246 F.3d 233, 241 (3d Cir. 2001)). "[T]he term 'property' has been construed most generously and an interest is not outside its reach because it is novel or contingent or because enjoyment must be postponed." Id. (quoting In re Fruehauf Trailer Corp., 444 F.3d 203, 211 (3d Cir. 2006)). "It is also well established that the mere opportunity to receive an economic benefit in the future is property with value under the Bankruptcy Code." Id. at 750-51.

17.     In the Third Circuit, "[i]t has long been the rule . . . that insurance policies are considered part of the property of a bankruptcy estate." ACandS, Inc. v. Travelers Cas. & Sur. Co., 435 F.3d 252, 260 (3d Cir.) (citing Estate of Lellock v. Prudential Ins. Co. of Am., 811 F.2d 186, 189 (3d Cir. 1987)), cert. denied, 547 U.S. 1159 (2006).

18. "With limited exceptions, so are the rights to insurance proceeds." Intertek USA, Inc. v. Caribbean Petroleum Corp. (In re Caribbean Petroleum Corp.), 580 F. App'x 82, 88 (3d Cir. 2014) (citing In re Nutraquest, Inc., 434 F.3d 639, 647 n. 4 (3d Cir. 2006) ("The exception to this general rule arises when the debtor does not own the insurance proceeds, but just owns the policy. For example, when the debtor was a corporation, but the liability policy insured only the corporation's directors and officers (and would pay only to them), the liability proceeds were not property of the bankruptcy estate." (citing Louisiana World Exposition, Inc. v. Fed. Ins. Co. (In re Louisiana World Exposition, Inc.), 832 F.2d 1391, 1399–401 (5th Cir. 1987)))), cert. denied, 135 S.Ct. 1187 (2015).

19. As a result, "[t]he possession or control language of Section 362(a)(3) has consistently been interpreted to prevent acts that diminish future recoveries from a debtor's insurance policies." AcandS, 435 F.3d at 261.

### B. D & O Insurance Proceeds Are Property of the Estate and Are Subject to the Automatic Stay.

20. Consistent with this authority, the court in GB Holdings – essentially the only authority cited by the Former Ds & Os – held that property of the estate includes not only a directors and officers insurance policy which is purchased by the debtor and which names the debtor as an insured, but also the proceeds of the policy. GB Holdings, 2006 WL 4457350, at *2-3.

21. As the Former Ds & Os themselves observe, the court made certain observations about typical director and officer insurance policies and their treatment in bankruptcy cases. Motion ¶ 22 (citing GB Holdings, 2006 WL 4457350, at *2). After noting that "[s]uch policies typically provide direct protection to the corporation's directors and officers," that "[i]ndirect coverage is often afforded to the corporation for losses incurred indemnifying its principals," and

7

that "some policies provide direct protection to the company (sometimes referred to as 'entity coverage') for certain kinds of claims, *e.g.,* violations of securities law," the court recognized that "[s]ome cases have held that such proceeds are property of the estate either because the debtor owns the policy, the debtor is a named insured under the policy, or because the estate would simply benefit from including the proceeds." GB Holdings, 2006 WL 4457350, at *2 (quoting In re Eastwind Group, Inc., 303 B.R. 743, 746 (Bankr. E.D. Pa. 2004)).

22.  Among these cases is In re Jasmine decision, in which a district court in this District held that a chapter 7 trustee's authority over a bankruptcy estate extended to the proceeds of a directors and officers policy based on the estate's indemnification interest in the proceeds. Aetna Cas. & Sur. Co. v. Jasmine, Ltd. (In re Jasmine, Ltd.), 258 B.R. 119, 128-29 (D.N.J. 2000) ("[The chapter 7 debtor] had an indemnification interest in the proceeds, and the proceeds are property of the estate and subject to the authority of the trustee under these circumstances."); see also Homsy v. Floyd (In re Vitek, Inc.), 51 F.3d 530, 534 (5th Cir. 1986) ("Faced with the typical situation in which a debtor corporation's liability policies provide the debtor and thus the estate with direct coverage against third party claims, virtually every court to have considered the issue has concluded that the policies – and clearly the proceeds of those policies – are part of debtor's bankruptcy estate, irrespective of whether those policies also provide liability coverage for the debtor's directors and officers."); Wiscovitch-Rentas v. Liberty Mut. Ins. Co. (In re Fiddler, Gonzalez & Rodriguez, P.S.C.), 415 F.Supp.3d 297, 301 (D.P.R. 2019) (holding that directors and officers insurance policy and proceeds were subject to automatic stay because "the Policy is payable to [debtor] in some circumstances, including direct coverage for claims against [debtor] and coverage for any indemnifying payments by [debtor] to the D & O Defendants"); In re Sacred Heart Hosp. of Norristown, 182 B.R. 413, 419–20 (Bankr. E.D. Pa. 1995) ("[T]he Debtor's own

8

liability exposure is also covered by the D & O Policy. Proceeds available for the Debtor's liability exposure are not segregated from the Proceeds available to the directors and officers. Thus, the Debtor is indeed an insured and has a sufficient interest in the Proceeds as a whole to bring them into the estate.").

23. "In contrast, where a policy names only the directors or officers as insureds, the proceeds may not be considered property of the estate." GB Holdings, 2006 WL 4457350, at *2 (citing Louisiana World, 832 F.2d at 1394).

24. Finally, "[o]ther cases focus less on the effect on the estate and more on the terms of the policy to determine if the proceeds are indeed property of the bankrupt." Id. at *2 (quoting Eastwind, 303 B.R. at 746–47). For these courts, "[a] determinative factor appears to be the nature of the D & O policy." Ibid. For example, "where the policy provides the debtor with indemnity coverage that would potentially bring proceeds into the estate to avoid the diminution of estate assets, courts have concluded that such proceeds constitute property of the estate." Ibid. (citing In re Circle K Corp., 121 B.R. 257 (Bankr. D. Ariz. 1990)); see also International Heritage, Inc. v. Gilbert (In re International Heritage, Inc.), 239 B.R. 306, 310 (Bankr. E.D.N.C. 1999) (holding that automatic stay precluded action against debtor's officers because "[t]he debtor, International Heritage, Inc., and its officers are named insureds under an insurance policy" and "the debtor has an obligation to indemnify its officers in the event that the officers are subject to a monetary judgment in the Montana administrative proceeding," and thus, "[t]he insurance policy is property of the estate, and the estate will be depleted if the State of Montana recovers a monetary judgment against the debtor's officers").

25. Thus, for instance, in Metropolitan Mortgage & Secs. Co. v. Cauvel (In re Metropolitan Mortgage & Secs. Co.), the court held that the proceeds of certain directors and

officers insurance policies – under which the debtor was a named insured and pursuant to which the debtor could utilize proceeds to satisfy requests for indemnification made by officers and directors and to pay for costs for responding to requests made by regulatory agencies – constituted property of the estate subject to the automatic stay. 325 B.R. 851, 857 (Bankr. E.D. Wash. 2005). The court found that although realization of the debtors' legal interests was contingent upon meeting conditions established by the policies and that such interests were not yet in the form of monetary recovery, the interests were nevertheless property of the estate, as section 541 did not require the interest to be absolute, non-contingent, or reduced to a monetary amount. Ibid.

26. The court found further that satisfaction of the insurance companies' duty to pay claims brought against non-debtor co-insureds, including satisfaction of the defense costs being incurred by the co-insureds, would have rendered it impossible to satisfy the debtors' claims against the proceeds. Id. at 856. Thus, any litigation seeking monetary judgments or monetary settlements payable from the proceeds would have been acts to obtain property of the estate. Id. at 855. Similarly, to the extent third-party defendants in the litigation and arbitration proceedings requested reimbursement of defense costs from the insurance proceeds, such requests would have been acts to obtain property of the estate. Ibid.

27. Therefore, the court concluded that the proceeds constituted property of the estate "because the estate is worth more with them than without them and because the debtors hold claims payable from the proceeds." Id. at 857.

28. The court concluded further:

> The debtors and all other insureds have undivided, unliquidated interests in the identical asset, i.e., the policy proceeds. Continued diminution of those proceeds affects the debtors' interests in and rights to recover the proceeds. The stay prevents any action which affects the debtors' interests in the proceeds. This is consistent with and necessary to promote the fundamental bankruptcy principles of

> preserving estate property and ensuring ratable distribution to creditors.
>
> Under principles of insurance law, all entities or persons having an interest in the policy proceeds would engage in a race to judgment or settlement with the fleetest claimants realizing upon their interest while the slower claimants were deprived of their interest. Such a result is contrary to the fundamental principle of bankruptcy law that all of the debtors' interests in property are to be equitably distributed. The problem is worsened in this case by the fact that the cost of determining each claimant's interest in the policy proceeds may deplete the proceeds before all but the very fleetest claimants recover.

Ibid.; see also Maxwell v. Megliola (In re marchFIRST, Inc.), 288 B.R. 526, 532 (N.D. Ill. 2002) (enjoining shareholders from prosecuting class action against directors and officers on grounds that "since the funds available to the directors and officers to pay a judgment are the same funds available to the Debtors to indemnify them, a shortfall of funds would affect the administration of the estate" and that "because the Defendants have not delineated a dollar figure for damages in their complaint against the directors and officers, a judgment obtained by the Defendants in the District Court Action has the potential effect of leaving no funds available to pay a judgment obtained by the Trustee in the Trustee Action [against the officers and directors]"), aff'd, 293 B.R. 443 (N.D. Ill. 2003).

29. Applying this analysis in the case before it, the GB Holdings Court found that "the debtor is covered directly for losses arising from a securities claim against the debtor, and for losses incurred in providing indemnification to its directors and officers for any wrongful acts committed by them." 2006 WL 4457350, at *3. Therefore, the court concluded: "The bankruptcy estate rightly claims an interest in the policy proceeds." Ibid.

11

### C. The Argonaut Insurance Proceeds are Property of the Estate and Are Subject to the Automatic Stay.

30. Likewise, here, the Policy, which was purchased by and is owned by the Debtor, provides for the following types of coverage: (a) "Side A," which covers losses suffered by directors and officers arising for a claim arising from a wrongful act; (b) "Side B," which covers losses suffered by the corporate entity for indemnifying its directors and officers for wrongful acts; (c) "Side "C," which covers losses suffered by the corporate entity arising from a securities claim made against the corporate entity; and (d) Side "D," which provides for payment of investigative costs resulting from a shareholder derivative demand. Jureller Certif. Exh. B § 1.

31. Thus, although the Policy covers the Debtor's directors and officers for losses resulting from a wrongful act, the Policy also covers the Debtor for losses, including those incurred in providing indemnification to its directors and officers. It follows that the proceeds are property of the estate for the simple reasons that the Debtor is an owner and named beneficiary of the Policy and that the estate would benefit from the proceeds.

32. Consideration of the terms and nature of the Policy also support this conclusion. In short, even if the estate's interest in the proceeds is only "potential" at this point, it is still an opportunity to receive an economic benefit in the future, which is property of the estate according to the Third Circuit, and the estate would suffer adverse consequences if this Court permits Argonaut to make payments or advances from the proceeds to fund the defense costs of the Former Ds & Os. Put simply, as the defense costs exhaust the proceeds of the Policy, the estate's exposure to claims against the Debtor including indemnification claims by the Formers Ds & Os – even if they are at present only contingent – would increase. At the same time, insofar as the estate has

its own claims to assert against the Former Ds & Os and the Policy,[2] the estate's prospective recovery of such claims against the proceeds would decrease.

33. Put differently, if the defense costs and the amount of Discover's claims against the Former Ds & Os exceed the amount of $5 million, which is the maximum amount of coverage under the Policy, Jureller Certif. Exh. B at 1, an adverse result in the Discover suit would consume the proceeds entirely and leave the estate with no coverage against claims made against the Debtor and leave nothing for the estate to recover on its own claims against the Former Ds & Os.

34. Under these circumstances, when every dollar paid out on the Policy may equate to one less dollar for the estate, this Court should not allow the Former Ds & Os to dissipate if not "race" to exhaust the proceeds in contravention of the basic bankruptcy law axioms requiring preservation of estate property and equitable distribution of estate assets.

35. Accordingly, under any criteria, that is, whether this Court assesses the ownership the Policy, the named insureds, the benefit to the estate from including the proceeds, the terms and nature of the Policy, or any other factor, the proceeds of the Policy are property of the estate and are subject to the automatic stay.

### III. The Interest of the Former Ds & Os in the Insurance Proceeds Should Not Be Elevated Above the Interest of the Estate.

36. Relying solely on the GB Holdings decision, the Former Ds & Os submit further that notwithstanding any claim that the Debtor may have in the proceeds, "[t]he debtor's right to receive proceeds as well as the right of the directors and officers to the payment of defense costs, are subject to the contractual provisions and restrictions of the insurance policy." Motion (ECF 420) ¶ 24 (quoting GB Holdings, 2006 WL 4457350, at *3). They add: "The debtor's estate holds

---

[2] The policy would not prohibit recovery by the Trustee. Jureller Certif. Exh. B § III(C)(3).

its property interest in the proceeds subject to the contractual state law rights governing all of the parties who hold and [sic] interest in the proceeds." Ibid.

37. The Former Ds & Os' reliance on GB Holdings for this proposition is misplaced for a variety of reasons. First, the GB Holdings decision was unpublished, and in the almost 15 years since its issuance, it has never been cited by any court in this Circuit. In fact, it has been cited by only one court anywhere, and in that case, the court cited GB Holdings only for the elementary principle that bankruptcy court authority may be required for advancement of proceeds from a directors and officers insurance policy. FPSDA II, LLC v. Larin (In re FPSDA I, LLC), 2012 WL 6681794, at *14 (Bankr. E.D.N.Y. Dec. 26, 2012). Thus, no other court has adopted the GB Holdings Court's reasoning.

38. Second, in support of its decision that the debtor's right to receive proceeds was subject to the contractual terms of the policy at issue, the GB Holdings Court cited Jones v. GE Capital Mortgage Co. (In re Jones), which in turn cited First Fidelity Bank v. McAteer. 2006 WL 4457350, at *3. Neither decision, however, supports the premise that a debtor's interest under a directors and officers insurance policy like that here can somehow be considered subject to the interests of the directors and officers in the policy.

39. In McAteer, the court addressed whether the proceeds of a life insurance policy constituted the property of the estate of a chapter 13 debtor which owned the policy or the property of the creditor beneficiary of the policy. 985 F.2d 114, 115 (3d Cir. 1993). The court held that the proceeds were not property of the estate, on the basis that the debtor was simply the owner – and not the beneficiary – of the policy. Id. at 118-19. The court noted that the estate's legal and equitable interests in property rise no higher than those of the debtor. Id. at 117. Thus, if the

14

owner of a life insurance policy does not have an interest in its proceeds, the court noted further, the filing of a bankruptcy petition could not create one. Ibid.

40. In Jones, the court addressed whether a chapter 13 debtor or his mortgagee was entitled to receive hazard insurance proceeds as a result of damage to the debtor's home. 179 B.R. 450, 452 (Bankr. E.D. Pa. 1995). Citing McAteer, the court held that while the proceeds were property of the estate, the estate's interest in the proceeds was subject to a contractual provision in the mortgage which expressly vitiated the mortgagee's obligation to turn over the proceeds to the estate. Id. at 452, 455-56.

41. Here, in contrast, as noted above, the Debtor is a named insured under the Policy and the proceeds are property of the estate; thus, unlike the estate in McAteer, the Trustee does not seek an interest in the proceeds higher than that of the debtor. Instead, the Trustee merely seeks to preserve the estate's interest in the proceeds. Moreover, unlike the mortgage provision in Jones, no contractual provision in the Policy vitiates Argonaut's obligation to extend proceeds of the Policy to the Debtor under the terms of the Policy; on the contrary, as noted above, the Policy provides the Debtor with direct insurance coverage. Thus, McAteer and Jones do not support the argument of the Former Ds & Os that the estate does not have an interest in the Policy proceeds or that such interest is somehow only a limited one.

42. Finally, the GB Holdings Court's analysis was simply erroneous. In granting the debtor's motion to authorize the payment and advancement of defense costs on behalf of its directors and officers, the court found that the insurer was "obligated" to advance the costs. 2006 WL 4457350, at *4. While it recognized that amounts incurred in defense costs would reduce the limit of liability available to pay the debtor's potential claims under the policy, the court found that "that fact cannot elevate the debtor's interest in the policy proceeds above the interest of the

15

other insureds, the debtor's directors and officers." Ibid. The insurer's mere obligation to pay defense costs, however, did not serve to "contractually restrict" the debtor's own rights in the proceeds. Otherwise, the court failed to identify any contractual provisions or restrictions – such as those found in McAteer or Jones – to which the estate's rights were subject. To the contrary, the debtor as a named insured was entitled to the protection of its rights under the policy.

43.  Thus, if anything, the GB Holdings Court's determination actually had the effect of impermissibly elevating the interests of the directors and officers ahead of those of not only the debtor, but other creditors. Indeed, the decision essentially awarded the directors and officers with a lien or priority interest in the proceeds, when they would otherwise have had at best only a general unsecured claim against the estate. See, e.g., Christian Life Ctr. Litig. Defense Comm. v. Silva (In re Christian Life Ctr.), 821 F.2d 1370, 1373 (9th Cir. 1987) (holding that officers' indemnity and contribution claims for litigation costs were not an administrative expense, where litigation was based on pre-petition services and conduct). This result – in violation of the Bankruptcy Code's distribution scheme – was simply not proper.

44.  Accordingly, this Court should decline to follow the GB Holdings decision. Instead, it should deny the Motion pending resolution of the various claims against and of the Former Ds & Os and the Debtor. Alternatively, it should treat the interest of the Former Ds & Os in the insurance proceeds at best only *pari passu* with the interest of the estate.[3]

---

[3] Insofar as this Court treats the Motion as a "request" for relief from the automatic stay, this Court should deny such request. Under section 362(d)(1) of the Bankruptcy Code, a court may on request of a party in interest and after notice and a hearing grant relief from the automatic stay for cause. 11 U.S.C. § 362(d). The Third Circuit has recognized that the moving party bears the burden of proof on a motion for relief from the automatic stay. In re Ward, 837 F.2d 124, 128 (3d Cir. 1988). The Third Circuit has noted further that "[t]he automatic stay was designed 'to forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it; and in general, to avoid interference with the orderly interference with the orderly liquidation or rehabilitation of the debtor.'" Borman v. Raymark Indus., Inc., 946 F.2d 1031, 1036 (3d Cir. 1991) (quoting Ass'n of

**IV.     Any Relief Must Be Conditioned on Strict Payment and Reporting Requirements.**

45.     Finally, even assuming that this Court is for some reason inclined to grant relief in favor of the Former Ds & Os, it should grant only limited relief. The GB Holdings Court, in allowing the advancement of defense costs, noted that the modest amount sought would not "materially impede" the debtor's interest in the policy. 2006 WL 4457350, at *1, 4 ("This is particularly so where the requested authorization of $75,000 toward defense costs is relatively inconsequential as compared to the $15 million cap on recoveries under the policy." (footnote omitted)).

46.     Here, in contrast, the Former Ds & Os essentially seek unfettered access to the Policy proceeds. See Proposed Order Granting Certain Former Directors and Officers of Immune Pharmaceutical's Inc.'s Motion (ECF 420) (providing that "Argonaut is authorized to pay and/or advance the defense costs which will be incurred in the future by the Former D&Os"). Such access could not only "materially impede" the Debtor's interest in the proceeds; as noted above, it could extinguish the interest entirely. Therefore, this Court at the very least should condition any relief on strict payment amount limits and reporting requirements.

---

St. Croix Condominium Owners v. St. Croix Hotel Corp., 682 F.2d 446, 448 (3d Cir. 1982)). As the legislative history of the Code provides, the automatic stay protects creditors also because "[w]ithout it, certain creditors would be able to pursue their own remedies against the debtor's property," and thus, "[t]hose who acted first would obtain payment of the claims in preference to and to the detriment of other creditors." 1978 U.S.C.C.A.N. 5787, 5835. Thus, "[t]he classic situation in which relief from the stay is accorded is where the moving party is a *secured* party whose security is in jeopardy." In re Ronald Perlstein Enters., Inc., 70 B.R. 1005, 1009 (Bankr. E.D. Pa. 1987). See also Emplexx Software Corp. v. AGI Software, Inc. (In re AGI Software, Inc.), 199 B.R. 850, 861 (Bankr. D.N.J. 1995) (observing that "[a] party seeking relief from the automatic stay pursuant to § 362(d) must be [a] secured creditor of the Debtor" and that "[t]here is no statutory requirement that unsecured creditors receive adequate protection"). Here, for the reasons set forth above, the Former Ds & Os, who are mere alleged unsecured creditors, have failed to meet their burden of proving cause for relief from the automatic stay to enforce their alleged interest in the insurance proceeds.

**WHEREFORE**, the Trustee respectfully requests that this Court deny the Motion of the Former Ds & Os.

                                            **RABINOWITZ, LUBETKIN & TULLY, LLC**
                                            Attorneys for Jeffrey A. Lester, Chapter 7 Trustee


                                            By:   /s/ Jonathan I. Rabinowitz
                                                      JONATHAN I. RABINOWITZ

DATED: May 26, 2020