

DALE E. BARNEY
Director

Gibbons P.C.
One Gateway Center
Newark, New Jersey 07102-5310
Direct: (973) 596-4557 Fax: (973) 639-6234
dbarney@gibbonslaw.com

May 29, 2020

VIA ECF

Hon. Vincent F. Papalia, USBJ
United States Bankruptcy Court
Martin Luther King, Jr. Federal Building
50 Walnut Street, 3d Floor
Newark, NJ 07102

RE:   Immune Pharmaceuticals, Inc., Case No. 19-13273 (Jointly Administered)
      Discover Growth Fund, LLC's Motion for Relief from Stay

Dear Judge Papalia:

We are counsel to Discover Growth Fund, LLC ("Discover") in the captioned chapter 11 cases and with respect to the Motion of Discover Growth Fund for Relief From the Automatic Stay [Doc 11] ("Motion"). This letter shall serve as Discover's reply to the Trustee's Opposition to the Motion of Discover Growth Fund, LLC for Relief from the Automatic Stay [Doc 470] ("Opposition") filed by chapter 7 trustee Jeffrey A. Lester Trustee. This reply supplements Discover's prior pleadings filed on the Motion, including Discover's March 26, 2020 reply to the supplemental briefing filed by Immune[1] and the Committee on the Motion.

The Opposition starts with the false premise that Discover has not demonstrated that its lien is valid. Opposition, ¶ 31. Like the Debtor and the Committee, the Trustee wraps himself in the Complaint filed in Adv. Pro. No. 19-02033 (VFP) ("Adversary") in an effort to distract this Court from the fact that the Trustee now bears the burden of demonstrating that Discover's security interest is adequately protected. 11 U.S.C. § 362(g). The Trustee's "defenses" to Discover's valid lien, based upon its undisputable loan to Immune under the Debenture, rely on the 11 U.S.C. § 510 subordination claims set forth in the Debtors' and Committee's two summary judgment motions in the Adversary. Discover has demonstrated the specious nature of those claims, at a bare minimum to the extent of Discover's claim for $2 million in principal, interest and attorneys' fees, leading the Court to deny those motions.

The Trustee's claim that he "has demonstrated the bona fides of the estate's claim against Discover for subordination" in his motion for reconsideration of this Court's denial of the second summary judgment motion is nonsense. Opposition, ¶ 33. As

---

[1] Capitalized terms used herein shall have the meaning ascribed in Discover's Supplemental Memorandum in Further Support of Motion of Discover Growth Fund, LLC for Relief from the Automatic Stay dated March 12, 2020 [Doc 374] ("Discover Supp.") unless otherwise defined.

GIBBONS P.C.

May 29, 2020
Page 2

demonstrated in Discover's opposition to the reconsideration motion, the Court clearly perceived significant and potentially dispositive distinctions between the 11 U.S.C. § 510(b) authorities and the facts of this case. Nothing about the motion for reconsideration should preclude the Court's granting the Motion, permitting Discover to resort to its cash collateral, and stopping the accrual of now chapter 7 administrative expenses as the now-estate representative carries on the Debtors' and the Committee's crusade to deprive Discover of its rights. As **first lien secured creditor, Discover should not be forced to fund the administrative expenses of the estate.**

As to adequate protection, the plain fact is that the Trustee cannot demonstrate the same, at least in the long run. While Your Honor stated during the April 1, 2020 hearing[2] on the Motion that you believed that Discover was then adequately protected by the $2.93 million in the escrowed net proceeds of Bertilmumab to Alexion (Apr. 1 Tr. 51:8-19), Discover's secured claim continues to accrue interest and attorneys' fees. Interest accrued at the Debenture's 10% non-default rate totals $329,316.20 as of May 31, 2020 and attorneys' fees and expenses total $852,251.37 as of May 28,2020. Your Honor observed at the April 1, 2020 hearing that you likely would not allow all of Discover's fees as reasonable (Apr. 1 Tr. 52:6-16), but, even with that proviso, Discover's allowable fees, interest and principal have exceeded or soon will exceed the $2.93 million.

In granting Discover's motion to convert these cases, Your Honor observed that you hoped that "cooler heads will prevail" following the appointment of the Trustee. Apr. 1 Tr. 50:19. Nevertheless, the Trustee appears to be intent upon pursuit of the mechanical – and wrong – reading of the 11 U.S.C. § 510(b) authorities that this Court rejected at the April 1 hearing, as well as the other meritless claims asserted by the Committee and the Debtors in the Adversary. As such, it is clear that Discover will continue to accrue significant costs in its ongoing campaign to vindicate its rights. Any adequate protection that existed on April 1 will soon evaporate, if it hasn't already.

Like the Committee, the Trustee argues that the Motion should not be decided while the Adversary is pending, but "intoning the pendency of [an] adversary proceeding" is insufficient to defend the Motion. *In re Wile*, 310 B.R. 514, 519 (Bankr. E.D. Pa. 2004). While the Court has discretion to consider the pendency of the Adversary, where, as here, it is clear that Discover has a minimum secured claim that now exceeds or soon will exceed the value of the Collateral held by the Debtors/Trustee, and that the Trustee is incapable of providing adequate protection, stay relief is appropriate.

---

[2] A copy of the transcript of that hearing ("Apr. 1. Tr.") is attached to the Declaration of Dale E. Barney etc. dated May 26, 2020 filed as Doc 42-1 in the Adversary Proceeding.

2645446.1 099998-00014

GIBBONS P.C.

May 29, 2020
Page 3

The Trustee intones the specter of losing the bankruptcy law claims in the Adversary will be lost if the Motion is granted, as did the Committee, citing *In re Poughkeepsie Hotel Assocs. Joint Venture*, 132 B.R. 287 (Bankr. S.D.N.Y. 1991). However, this argument again ignores the fact that the Adversary sets forth claims other than the Plaintiffs' specious subordination arguments. The Complaint also seeks millions of dollars of damages from Discover allegedly flowing from Discover's claimed bad acts. In the unlikely event that the Trustee proves that case, his damage claims would make the estate whole. Discover's right to stay relief now should not be frustrated simply to preserve the Plaintiffs' thin gruel subordination claims. In any event, as indicated in Discover's response to the Trustee's motion to be substituted as plaintiff in the Adversary, on March 23, 2020, Discover served the Debtors and the Committee with "Defendant's Offer of Judgment to Plaintiffs" pursuant to Fed. R. Bankr. P. 7068 and Fed. R. Civ. P. 68 ("**Offer of Judgment**"). The Trustee now appears to be concerned that he will fare no better than the result proposed in the Offer of Judgment in the Adversary Proceeding and will thus be liable for Discover's costs incurred in the Adversary after service of the Offer of Judgment. Rule 68(d) is clear that "[i]f the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree *must* pay the costs incurred after the offer was made." Thus, payment of costs is mandatory.

Further, the Trustee now takes the position – without any evidence – that Discover's lien may not extend to the $2.93 million sale proceeds if the Bertilimumab assets are ultimately determined to have been assets of Ltd. Opposition, ¶ 41. The Trustee ignores the fact that the Court's order authorizing the split of the proceeds of the Alexion sale between the Debtors and the Israeli trustee does not provide any finding that the $2.93 million was property of Ltd., and, in fact, the Court overruled Discover's objection to that split, in part, because it was impossible to unwind the tangled title issues regarding the assets that were sold.

The Opposition insinuates that none of the Bertilimumab assets were property of Immune. However, a simple review of the IP Security Agreement between Discover and Immune demonstrates that the patents and applications that comprise the "Bertilimumab Patent Family" that Immune pledged to Discover as Collateral were licensed from (i) MedImmune Ltd., (ii) Cambridge Antibody Technology Limited and (iii) Hadasit Medical Research Service and Development Ltd., (iv) plus one "not assigned" patent, in addition to the assets "filed under Immune Pharma Ltd (Owner)." Declaration of John C. Kirlkand, etc. dated February 12, 2020, filed in opposition to the Debtors' and the Committee's first summary judgment motion as Doc 9-4, Exhibit 3, pp. 5-7. Given the uncertainty of untangling the Ltd. and Immune split of the Bertilimumab proceeds, this Court ruled that the split of the Alexion proceeds was "rough justice" that avoided the consumption of the sale proceeds in litigating any ownership disputes.

GIBBONS P.C.

May 29, 2020
Page 4

The split of the sale proceeds between Immune and Immune Pharmaceuticals, Ltd. ("Ltd.") was represented to this Court by the Debtors as being a fair, if rough, approximation of the relative value of the sale assets owned by, respectively, Immune and Ltd. Based on that representation, the value of Immune's share of the sale assets is and was $3 million, and now $2.93 million. As such, the Trustee's suggestion that the US proceeds of the sale could be "allocated" to Ltd. so that Discover's lien is worth "zero" (Opposition, ¶ 41) has no support in the record and is directly contradicted by both the representations of Debtors' counsel and the evidence adduced to date.

Indeed, when the chapter 11 cases were filed, the Debtors' representatives were claiming that the Bertilimumab/Anti-Eotaxin assets were worth tens of millions of dollars, to Discover and to Debtors' counsel. Both of the Debtors' principal representatives during the Chapter 11 Cases, Rabin and Fiorino, admitted during their Fed. R. Bankr. P. 2004 examinations taken in connection with the Motion that the Debtors' assets have declined since the Petition Date. Discover relies upon its prior pleadings filed on the Motion for the details of that testimony. Accordingly, it is clear that the value of the Collateral has declined since the Motion was filed.

Accordingly, Discover has demonstrated, as is its burden, that its Collateral value has declined and that Immune's estate has no equity in the Collateral. Discover's proof of claim filed in these cases is *prima facie* evidence of the validity of the claim. Fed. R. Bankr. P. 3002(f) ("A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim.") As to the amount of the claim, the $14.85 million face amount of the claim is predicated upon a straightforward mathematical calculation based on a formula set forth in the Debenture. Declaration of John C. Kirkland, etc. dated March 22, 2019 and filed in support of the Motion as Doc 77-1, ¶¶ 10-13.

Even at the claim's minimum calculation, Discover is not protected. Discover's minimum claim was $2,851,260.45 as of January 31, 2020. JCK Dec., ¶ 5. With additional interest and fees, the minimum due from Immune to Discover to **$3,181,567.57** (including interest as of May 31, 2020 and attorneys' fees and costs through May 28, 2020, both of which continue to accrue.) That amount significantly exceeds the funds escrowed with Debtors' counsel from the Alexion sale. The estate's remaining assets appear to have little cash value. As a result, the estate has no equity in its sole valuable asset, the escrowed $2.93 million.

The Trustee can neither provide nor demonstrate the existence of adequate protection. The estate has no equity in the escrowed funds, and the balance of the estate's assets have no apparent, and certainly no significant, value at all. Exposure to the marketplace is the best indicator of value. Exposure to the marketplace has demonstrated that the remaining assets have no appreciable value.

GIBBONS P.C.

May 29, 2020
Page 5

As such, the Trustee's remaining argument that Discover is adequately protected is predicated on the specious notion that the Collateral value has not declined. As demonstrated above, that notion is false – moreover, the argument fails to address the fact that the Discover's secured claim continues to grow and eliminate any equity cushion that once existed. Accordingly, *United States Association of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 488 U.S. 365 (1988) mandates that the Trustee provide adequate protection to Discover, which he cannot. Fiorino and Rabin testified under oath that values have declined, which has been proven by the Debtors' failed marketing efforts, which resulted, at best, in a plan to give away assets. The Trustee's revelation that he now has expressions of interest in the remaining assets remains as speculative as the Debtors' proposals to swap those assets for stock in another microcap pharma company.

Instead, the Trustee argues that the automatic stay is not causing the value of Discover's collateral to decline, and the fact that the $2.93 million is escrowed and presently out of the estate's reach means that it will not decline. Opposition, ¶¶ 42-46. Again, this argument ignores the fact that Discover's claim likely exceeds, and certainly will exceed, the escrowed funds given that the Trustee appears intent upon continuing the Plaintiffs' litigation against Discover. While Discover is hopeful, and believes that the Trustee is hopeful, that the planned mediation with Chief Judge Kaplan will be successful, there is no guaranty. The fact remains that Discover is not adequately protected, and is entitled to resort to its Collateral now to cut its losses.

The Opposition engages in an exercise in attempting to value the Collateral on the date that the Motion was filed, and at the present, in an effort to demonstrate that there has been no decline in value. Opposition, ¶¶ 48-56. This exercise starts with the false assumption that Bertilimumab was worth only $3 million immediately after the petition date, that Immune's share was worth only $1.5 million, and that the other assets were valueless. For that last proposition, the Trustee misstates the Declaration of John C. Kirkland, etc. dated February 25, 2019 ("February 25 Dec.") filed in support of the Motion [Doc 11-3], ¶¶ 54-55, as if Kirkland opined therein as to the value of the other assets. He did not. Instead, the cited paragraphs of that declaration describe what Fiorino recounted to Kirkland regarding Fiorino's perception of the value of the other assets.

Moreover, the $3 million offer is an unreliable basis upon which to value Bertilimumab, particularly as it was sold for $6 million mere months later. As such, the proposition that the Collateral was worth only $1.5 million in February 2019 should be disregarded. As to the present value of the Collateral, it is clear that it is $2.93 million, plus whatever pittance the Trustee manages to realize from the remaining assets. Equally clear is the testimony and statements of Fiorino and Rabin that the Collateral was worth $10 million

2645446.1 099998-00014

GIBBONS P.C.

May 29, 2020
Page 6

or more (February 25 Dec., ¶ 56), and that the values have declined since the petition date. Any equity cushion that may have existed is rapidly evaporating or has evaporated. The decline in the value of the Collateral, combined with the lack of adequate protection, entitles Discover to relief from the automatic stay.

C.    Conclusion.

These bankruptcy cases have dragged on for far too long, resulting only in damage to Discover and the accumulation of millions of dollars of chapter 11 administrative claims that will never be paid. Discover has been denied resort to its cash collateral for far too long, and the continued escrow of those funds while the Trustee continues the Debtors' and the Committee's crusade against Discover will only cause Discover to incur further significant losses. It is high time that the Motion be granted before further destruction of value occurs.

Respectfully submitted,

/s/ Dale E. Barney

Dale E. Barney
Director

Enc.
Cc:    All parties in interest (via ECF/Email)
       Jonathan I. Rabinowitz, Esq.
       Morris Bauer, Esq.
       John Mairo, Esq.

2645446.1 099998-00014