| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY | |
| **RABINOWITZ, LUBETKIN & TULLY, LLC**<br>293 Eisenhower Parkway, Suite 100<br>Livingston, N.J. 07039<br>(973) 597-9100<br>Jonathan I. Rabinowitz<br>Henry M. Karwowski<br>jrabinowitz@rltlawfirm.com<br>Attorneys for Jeffrey A. Lester, Chapter 7 Trustee | Order Filed on December 8, 2021<br>by Clerk<br>U.S. Bankruptcy Court<br>District of New Jersey |
| In re:<br><br>IMMUNE PHARMACEUTICALS INC., *et al.*,<br><br>Debtors. | Case No. 19-13273 (VFP)<br><br>Chapter 7<br><br>Jointly Administered |

## ORDER APPROVING SETTLEMENT AND MUTUAL RELEASE AGREEMENT

The relief set forth on the following pages, numbered two (2) through fourteen (14), is hereby **ORDERED**.

**DATED: December 8, 2021**

_____
**Honorable Vincent F. Papalia**
**United States Bankruptcy Judge**

Page (2)
Debtor:      Immune Pharmaceuticals Inc., *et al.*
Case No.:    19-13273 (VFP)
Caption:     Order Approving Settlement and Mutual Release Agreement

---

**THIS MATTER** having been presented to this Court upon the Motion of Jeffrey A. Lester, Chapter 7 Trustee (the "Trustee") for the bankruptcy estates of Immune Pharmaceuticals Inc. (the "Debtor") and its subsidiaries (collectively with Immune, the "Debtors"), for entry of an order approving pursuant to Bankruptcy Rule 9019 and Local Bankruptcy Rule 9019-3 a certain Settlement and Mutual Release Agreement (the "Settlement Agreement") by and among the Trustee on behalf of the bankruptcy estates, Discover Growth Fund, LLC ("Discover"), certain former directors and officers of Immune (the "Former Directors and Officers"), and Argonaut Insurance Company (the "Insurer"); and this Court, after due deliberation thereon and good cause appearing therefor, hereby makes and issues the following findings of fact, conclusions of law, and order:

A.  <u>Background and Applicable Standard</u>

1. In February 2019, Discover called a default under a Securities Purchase Agreement (the "Securities Agreement") and a Senior Secured Redeemable Convertible Debenture dated October 9, 2018 (the "Debenture"), pursuant to the terms of which Discover purchased the Debenture, which was convertible into common stock, in exchange for $2 million in cash and a $3 million promissory note. The Securities Agreement granted to Discover a first lien on and security interest in Immune's assets. Immune and the other Debtors filed chapter 11 petitions on February 17, 2019 and shortly thereafter. The cases were subsequently converted to chapter 7 by Order dated April 2, 2020. Since then, the parties have been engaged in extensive litigation. For example, the Trustee was substituted as plaintiff in an adversary proceeding against Discover commenced by the Debtors and the Official Committee of Unsecured Creditors to subordinate Discover's secured claim under Bankruptcy Code section 510(b). Also, the Trustee has prepared

Page (3)
Debtor: Immune Pharmaceuticals Inc., *et al.*
Case No.: 19-13273 (VFP)
Caption: Order Approving Settlement and Mutual Release Agreement

---

a draft complaint against Immune's former directors, officers, and attorneys for breach of fiduciary duty and related claims; the draft is based on a similar complaint filed by Discover against the Former Directors and Officers in the U.S. District Court for the District of New Jersey.

2. The parties have now agreed to settle these claims and litigation and all disputes between and among them; the proposed settlement includes, among other terms, the payment of an aggregate amount of $4 million to Discover, the payment of $2.1 million to and for the benefit of the Debtors' estates, and a release of all claims.

3. In determining whether to approve a settlement under Rule 9019, courts rely on four factors: (1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation and the expense, inconvenience, and delay involved; (4) and the paramount interest of the creditors. Myers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996).

4. In applying the factors, "[t]he Bankruptcy Court need not probe the merits of all claims or conduct a 'mini-trial' before approving the settlement; rather, avoiding litigating the issues is one of the main advantages of settlement." Stanziale v. U.S. Risk Ins. Group, Inc. (In re NovaPro Holdings, LLC), 815 F. App'x 655, 658 (3d Cir. 2020). Instead, the court need only canvas the issues to determine whether the settlement falls above the "lowest point in the range of reasonableness"; and under normal circumstances, the court should defer to the trustee's judgment so long as there is a legitimate business justification. In re ID Liquidation One, LLC, 555 F. App'x 202, 207 (3d Cir. 2014) (quoting In re Capmark Fin. Grp. Inc., 438 B.R. 471, 515 (Bankr. D. Del. 2010)); Martin, 91 F.3d at 395.

Case 19-13273-VFP    Doc 707    Filed 12/08/21    Entered 12/09/21 14:07:08    Desc Main
Document    Page 4 of 14

Page (4)
Debtor:     Immune Pharmaceuticals Inc., *et al.*
Case No.:   19-13273 (VFP)
Caption:    Order Approving Settlement and Mutual Release Agreement

B.  Probability of Success on the Merits.

(1)  Subordination of Discover's Claim Under Section 510(b).

5.  The Trustee seeks to subordinate the entirety of Discover's secured claim under section 510(b).  Am. Compl. (Adv. Pro. No. 19-02033 ECF 75) ¶¶ 137-48.  Under section 510(b), a claim for damages arising from the purchase of a security must be subordinated to all claims or interests that are senior or equal to the claim or interest represented by such security.  11 U.S.C. § 510(b).

6.  The Trustee has argued that the Debenture issued to Discover is a security based on the plain language of sections 510(b) and 101(49)(A)(v), the language in the applicable agreements, and because Discover did not seek repayment of a fixed debt over time but rather the benefits of stock ownership with the possibility of receiving a higher return on investment.

7.  Under S.E.C. v. W.J. Howey Co., 328 U.S. 293 (1946) and Reves v. Ernst & Young, 494 U.S. 56 (1990) and their progeny, however, the Debenture may not be a security, based on the motivations of the parties, the plan of distribution of the instrument, and the reasonable expectation of the investing public, and because it involved a "one time business transaction between sophisticated parties."  Further, Immune's public filings characterized the Debenture as a secured credit transaction, and Immune's former officers Anthony Fiorino and Gary Rabin testified that the Debenture was a secured debt, unless and only to the extent that it was converted.  Brief in Opposition to Plaintiff's Second Motion for Partial Summary Judgment (Adv. Pro. No. 19-02033 ECF 22) at 8 ¶ 16 (citing transcripts).  Also, courts distinguish between debt and equity claims, and here, Discover's claim arises from breach of a debt instrument itself, and it is not a claim for conversion or stock purchase rights.  Official Comm. of Unsecured Creditors v. Am. Capital Fin.

Case 19-13273-VFP    Doc 707    Filed 12/08/21    Entered 12/09/21 14:07:08    Desc Main
Document    Page 5 of 14

Page (5)
Debtor:      Immune Pharmaceuticals Inc., *et al.*
Case No.:    19-13273 (VFP)
Caption:     Order Approving Settlement and Mutual Release Agreement

Servs. (In re Mobil Tool Int'l. Inc.), 306 B.R. 778, 782 (Bankr. D. Del. 2004) (holding that once investors exchanged stock for a promissory note, "they removed the variable nature of their investments and placed themselves in the position of general creditors").

8. Finally, this Court itself has previously noted that the plain language of section 510(b) is not entirely clear.

9. Thus, Discover has a probability of success on this claim. It follows that this factor weighs in favor of the settlement.

(2) Claims Against Former Directors and Officers.

10. The fiduciary duties of a corporate director or officer extend to creditors when the debtor is in the "zone of insolvency." Wasserman v. Halperin (In re Classica Group), 2006 Bankr. LEXIS 2599, at *20 n.7 (Bankr. D.N.J. Sept. 29, 2006). Under New Jersey law, directors of a corporation must discharge their duties "in good faith and with that degree of diligence, care, and skill which ordinarily prudent people would exercise under similar circumstances in like positions." Frost v. Adiletta (In re Teleservs. Group, Inc.), 2009 Bankr. LEXIS 5533, at *26-27 (Bankr. D.N.J. Jan. 15, 2009) (quoting N.J.S.A. 14A:6-14), aff'd in part and remanded in part, 2009 U.S. Dist. LEXIS 110200, at *20 (D.N.J. Nov. 24, 2009). Although the "business judgment rule," ordinarily would protect fully informed corporate decisions made in good faith, it does not apply to grossly negligent acts; acts tainted with fraud, self-dealing, or unconscionable conduct; or decisions which lack a business purpose or result from an obvious and prolonged failure to exercise oversight or supervision. Classica, 2006 Bankr. LEXIS 2599, at *23-24 (citing PSE&G Shareholder Litig. v. Codey (In re PSE&G Shareholder Litig.), 173 N.J. 258, 276-77 (2002);

Page (6)
Debtor:     Immune Pharmaceuticals Inc., *et al.*
Case No.:   19-13273 (VFP)
Caption:    Order Approving Settlement and Mutual Release Agreement

Resolution Trust Corp. v. Hovnanian, 1994 U.S. Dist. LEXIS 19359, at *20 (D.N.J. Oct. 13, 1994)).

11. Here, the Trustee asserts that the former Directors and Officers of the Debtors who are parties to the Settlement Agreement breached their fiduciary duty by causing Immune to enter into convertible debentures and other obligations after it had become insolvent, failing to authorize and register sufficient common shares to enable conversion of the Debenture, and negotiating to transfer corporate assets including Ceplene and Bertilimumab to insiders. Am. Compl. (Adv. Pro. No. 21-01230 ECF 8).

12. The former Directors and Officers dispute the claims and raise affirmative defenses, including that they relied in good faith upon the advice of Immune's former legal counsel, Lowenstein Sandler LLP, that the Certificate of Incorporation contains an exculpatory clause eliminating liability, and that they are protected by the business judgment rule.

13. The Insurer has agreed to pay certain proceeds under the applicable insurance policy coverage to fully and finally settle all potential claims against the Former Directors and Officers of the Debtors. Any potential claims against the Debtors' former lawyers will be preserved and they may result in further recovery for the estates. The Trustee's claims raise significant factual disputes and complex legal issues and the outcome is uncertain. Given the proposed settlement payment, this factor militates in favor of the settlement.

    (3)    <u>Securities Fraud Allegations Against Discover.</u>

14. Immune, by certain of its former directors, officers and attorneys, raised various accusations against Discover as an affirmative defense against Discover's claim of a default under the Debenture and Discover's other claims against Immune, including that Discover made false

Case 19-13273-VFP    Doc 707    Filed 12/08/21    Entered 12/09/21 14:07:08    Desc Main
Document    Page 7 of 14

Page (7)
Debtor:     Immune Pharmaceuticals Inc., *et al.*
Case No.:   19-13273 (VFP)
Caption:    Order Approving Settlement and Mutual Release Agreement

statements of material fact, or failed to disclose material facts, concerning the financing agreements. See 15 U.S.C. § 77q(a); 15 U.S.C. § 78j(b); 17 CFR § 240.10b-5.

15. It is probable that this allegation against Discover lacks merit for several reasons. First, it "fails to allege any specific misrepresentation or omission," and as such, "the claim fails under Rule 9(b)." ScripsAm., Inc. v. Ironridge Glob. LLC, 119 F. Supp. 3d 1213, 1243 (C.D. Cal. 2015).

16. Second, Discover's conduct in connection with the Debenture was neither deceptive nor manipulative because all of the terms were set forth in the written agreements between the parties and the material terms were publicly disclosed by Immune in its SEC filings. ScripsAm., 119 F.Supp.3d at 1243 ("[T]he manner in which the adjustment mechanism was to operate was fully disclosed in the parties' agreement and stipulation, which included a merger clause that cut off any right to rely on prior oral representations; [defendant] thus did not conceal the adjustment mechanism from [plaintiff].").

17. Third, in selling the shares of Immune that it received for converting a portion of the Debenture, Discover states that it took steps to minimize the negative impact of selling into the public market, including directing trades to alternative trading systems to avoid disclosing its selling strategies. Such selling of shares obtained at a discount does not constitute market manipulation. GFL Advantage Fund, Ltd. v. Colkitt, 272 F.3d 189, 207 (3d Cir. 2001); ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 106 (2d Cir. 2007) (holding that purchasing a convertible security, even when coupled with selling, is not inherently manipulative).

Page (8)
Debtor:     Immune Pharmaceuticals Inc., *et al.*
Case No.:   19-13273 (VFP)
Caption:    Order Approving Settlement and Mutual Release Agreement

(4)     Dealer Registration Allegations Against Discover.

18.     Immune, by its former directors, officers, and attorneys, alleged also that Discover was required to register as a dealer under the Securities Exchange Act. 15 U.S.C. § 78o(a)(1). The facts and law do not support this allegation, however.

19.     A "dealer" does not include a person who buys or sells securities for its own account, "but not as a part of a regular business." 15 U.S.C. § 78c(a)(5)(B). The plain language of the statute confirms that Discover is not a dealer. The primary meaning of the term "regular" is "usual; normal; customary" or "confirming to or governed by an accepted standard of procedure or convention." Dictionary.com (2021), New Oxford American Dictionary 1470 (3rd ed. 2010). The term "regular business" as used in section 5(B) means "the regular business of providing dealer services to others . . ., such as soliciting investor clients, handling investor clients' money and securities, [and] rendering investment advice to investors." Chapel Invs., Inc. v. Cherubim Interests, Inc., 177 F. Supp. 3d 981, 990 (N.D. Tex. 2016). These types of services "distinguish the activities of a dealer from those of a private investor or trader." In re Sodorff, 50 S.E.C. 1249, 1992 WL 224082, at *5 n.27 (Sept. 2, 1992). Here, as an institutional investor, Discover does not engage in any of these activities, and therefore, it is not a dealer required to register.

20.     Whereas an investor or trader may buy securities from issuers at substantial discounts and resell them into the public market for a potentially significant profit, a dealer buys and sells securities from its customer and to its customer. See C.H. Meyer, Law of Stock Brokers and Stock Exchanges § 43-a, at 33-34 (Supp. 1933). "Dealers are distinguished from investors and traders because they have customers and derive their income from marketing securities for sale to customers or from being compensated for services provided as an intermediary or market-

Case 19-13273-VFP    Doc 707    Filed 12/08/21    Entered 12/09/21 14:07:08    Desc Main
Document    Page 9 of 14

Page (9)
Debtor:      Immune Pharmaceuticals Inc., *et al.*
Case No.:    19-13273 (VFP)
Caption:     Order Approving Settlement and Mutual Release Agreement

maker." See Topic No. 429 Traders in Securities; see also XY Plan, Network, LLC v. United States S.E.C., 963 F.3d 244, 248 (2d Cir. 2020) (noting that brokers and dealers "effect securities transactions for customers, for which they typically charge a commission or other transaction-based fee").

21. Here, Discover did not purchase Immune's stock from customers, but instead, acquired it at a discounted price when it converted a portion of the Debenture that it acquired directly from Immune. Also, Discover did not sell Immune's stock to customers, but instead, sold only into the public market through an institutional brokerage account. Because it did not provide "dealer" services to customers, Discover did not act as a dealer.

22. Finally, use of the plain language "part of" a regular business in the Act demonstrates that "a dealer must be engaged in the securities business, and be buying and selling for his own account." Sodorff, 1992 WL 224082, at *5 (emphasis added). Otherwise, if an entity which only buys and sells securities could be a dealer, the statute would refer to "all or part of" rather than "part of" a business. See, e.g., 11 U.S.C. § 1322(b)(8) (referring to "all or part of" a claim); 18 U.S.C. § 1955(a) (referring to "all or part of" a business). "A person who buys and sells securities for his own account in the capacity of a trader or individual investor is generally not considered to be engaged in the business of buying and selling securities and consequently, would not be deemed a dealer." Chapel Invs., 177 F. Supp. 3d at 990. See also National Council of Savings Institutions (S.E.C. No-Action Letter), 1986 WL 67129, at *2 (July 27, 1986) (describing the list of factors that make someone a trader rather than someone "engaged in the business" of buying and selling securities as a dealer).

23. Thus, it is probable that the dealer registration allegation lacks merit.

Case 19-13273-VFP    Doc 707    Filed 12/08/21    Entered 12/09/21 14:07:08    Desc Main
Document    Page 10 of 14

Page (10)
Debtor:     Immune Pharmaceuticals Inc., *et al.*
Case No.:   19-13273 (VFP)
Caption:    Order Approving Settlement and Mutual Release Agreement

24. Accordingly, for all of these reasons, analysis of the probability of success and the risks of litigation supports the settlement.

C. <u>Difficulties in Collection.</u>

25. Difficulty in collection is not a significant factor in this case because the Insurer has comprehensively insured the potential liability of the former Directors and Officers to the Debtors' estates under the Policy. In addition, the Trustee seeks only to avoid Discover's lien on funds already in the estate or on future recoveries from the Debtor's former law firm; hence, it does seek not an affirmative recovery from Discover, which is an institutional investment fund in any event.

26. To the extent that the Policy does not cover any and all potential liability of the former Directors and Officers, including liability for conduct not protected under the business judgment rule, or for individual liability in the Avoidance Actions, the Trustee would face possible difficulties in the enforcement and collection of any judgment from out-of-state litigants in particular. Thus, to the extent that this is the case, this factor favors settlement.

D. <u>The Complexity, Expense, Inconvenience, and Delay Associated with Litigation.</u>

27. The complexity, expense, inconvenience, and delay associated with litigation militate in favor of approval of the settlement. The litigation at issue involves complex factual and legal issues. Also, this case has been pending for over two and a half years, during which the estates have engaged in costly, protracted litigation, in the section 510(b) subordination adversary proceeding in particular. Thus, litigation has already proven expensive, especially for bankruptcy estates that currently have only *de minimis* unencumbered assets. Further, the pending adversary proceedings will require substantial and costly discovery. In the absence of the settlement, the

Case 19-13273-VFP    Doc 707    Filed 12/08/21    Entered 12/09/21 14:07:08    Desc Main
Document    Page 11 of 14

Page (11)
Debtor:      Immune Pharmaceuticals Inc., *et al.*
Case No.:    19-13273 (VFP)
Caption:     Order Approving Settlement and Mutual Release Agreement

estates would only continue to incur significant expense, and it may well be years before all of the pending actions, including anticipated appeals, are concluded. In contrast, if the settlement is approved, the actions will be concluded with finality, and the proceeds generated from the settlement will help fund the remaining administration of these Chapter 7 estates.

E.     The Paramount Interest of Creditors.

28.    Discover is the first position secured creditor of the Debtors' estate. Under the Settlement Agreement, its claim will be reduced to $4 million and satisfied in full and its lien on the Debtors' remaining assets will be released. Following the payment of Discover's $4 million claim, these assets will include the $2.1 million recovered from the Insurer on account of the estates' alleged claims against the directors and officers, a projected recovery of between $600,000 and $1 million from the Immune Pharmaceuticals Ltd. insolvency estate in Israel, and the estates' claims against the Debtors' former attorneys, Lowenstein Sandler LLP.

29.    If the settlement is approved, all parties to the Settlement Agreement will release their claims against the Debtors' estates and each other, and as a result, all of the litigation involving such claims will cease. If the settlement is not approved, the Debtors' estates would be compelled to investigate and prosecute the estates' actions, which would take substantial time, effort and money. And at this point, the Debtors' estates have limited resources to pay for the continued litigation and with no certainty of any success. Meanwhile, the settlement provides a certainty of proceeds to be available for distribution to the creditors of the Debtors' estates, without undertaking the costs, expense, time-delay, and uncertainty of future litigation. Thus, this factor favors settlement.

Page (12)
Debtor: Immune Pharmaceuticals Inc., *et al.*
Case No.: 19-13273 (VFP)
Caption: Order Approving Settlement and Mutual Release Agreement

F. <u>Conclusion.</u>

30. Therefore, based on the four <u>Martin</u> factors, consisting of the risk and lack of certainty of success in litigation; the possible difficulties in collection; the complexity, expense, inconvenience, and delay associated with litigation; and the paramount interests of creditors, the proposed settlement represents the best possible outcome for the Debtors' estates and easily falls within the lowest range of reasonableness required for such a settlement.

31. Accordingly, approval of the Settlement Agreement is appropriate.

**WHEREAS** this Court having considered any papers filed in opposition; and this Court having found that due and proper notice of the Motion was provided; and this Court having held and heard arguments at a hearing on the Motion; and this Court having found good cause for the relief sought in the Motion and that the relief sought is just and proper and in the best interests of the Debtors' estates, creditors, and all parties in interest; it is hereby

**ORDERED** that the Trustee's Motion is granted; and it is

**ORDERED** that the Settlement Agreement, a copy of which is attached to the Trustee's Motion, is hereby approved in all respects, and the Trustee is hereby authorized and directed to take all actions necessary to consummate the settlement set forth in the Settlement Agreement, including without limitation, making the $3,120,000 Debtor-Discover Settlement Payment and the $880,000 Insurer-Discover Settlement Payment, both as defined in the Settlement Agreement, to Discover in the manner set forth in the Settlement Agreement and delivering the releases to the Debtor Released Parties as set forth in the Settlement Agreement; and it is

**ORDERED** that Discover shall have in the Bankruptcy Cases as defined in the Settlement Agreement an allowed secured claim in the amount of $4,000,000 pursuant to 11 U.S.C. § 506(a),

| | |
|---|---|
| Page (13) | |
| Debtor: | Immune Pharmaceuticals Inc., *et al.* |
| Case No.: | 19-13273 (VFP) |
| Caption: | Order Approving Settlement and Mutual Release Agreement |

to be satisfied by the Debtor-Discover Settlement Payment and the Insurer-Discover Settlement Payment as defined in the Settlement Agreement; and that following the full and final payment of said payments to Discover, Discover shall withdraw the Discover POC as defined in the Settlement Agreement; and it is

**ORDERED** that any person or entity who has held, holds, or could hold or assert any claim, action, or cause of action of any kind, both known and unknown, against any of the Parties as defined in the Settlement Agreement, including but not limited to Discover, any directors or officers of the Debtors, the Trustee, or the Debtors or their bankruptcy estates, except governmental agencies, is permanently enjoined, restrained, and barred from filing, commencing, conducting, asserting, or continuing in any manner, directly, indirectly, or derivatively, any suit, action, claim, demand, or other proceeding (including, without limitation, any proceeding in any judicial, arbitral, administrative, or other forum) against any of the Parties, including but not limited to Discover, any directors or officers of the Debtors, the Trustee, or the Debtors or their bankruptcy estates, based upon, arising from, or attributable to the acts or omissions of the Former Director and Officer Defendants as defined in the Settlement Agreement in their capacity as directors or officers of the Debtors or in any way related to the Debtors or the Litigation Matters as defined in the Settlement Agreement, or against the Insurer in connection with the directors or officers of the Debtors, the Debtors, the 2018 Transaction as defined in Section 3.C of the Settlement Agreement, or the Litigation Matters as defined in the Settlement Agreement. Except as otherwise provided in the Settlement Agreement, this Order shall not, however, impact, impair, or affect any rights that an insured may have under the Policy as defined in the Settlement Agreement or pursuant to any other arrangement among an insured and the Insurer. For the

| Page (14) | |
|---|---|
| Debtor: | Immune Pharmaceuticals Inc., *et al.* |
| Case No.: | 19-13273 (VFP) |
| Caption: | Order Approving Settlement and Mutual Release Agreement |

avoidance of doubt, this Order does not release, impair, limit or otherwise affect any right, claim or cause of action that Discover may have against any third party individual or entity that is not a party to the Settlement Agreement and that is an insured under any insurance policy issued by the Insurer that is not the Policy.